MARTIN A. MUCKLEROY, ESQ.
Nevada Bar No. 009634
MUCKLEROY LUNT, LLC
6077 S. Fort Apache, Ste 140F
Las Vegas, NV 89148
Phone: (702) 907-0097
Direct: (702) 534-6272
Fax: (702) 938-4065
martin@muckleroylunt.com

*Attorneys for Plaintiff*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

|  |  |
|---|---|
| THEODORUS STROUS, in his capacity as a shareholder of SCIO DIAMOND TECHNOLOGY CORP. brings this action derivatively on behalf of SCIO DIAMOND TECHNOLOGY CORP., and as a Class Action on behalf of himself and all other Adamas shareholders who are similarly situated | Case No. 2:22-cv-00256-JCM-EJY |
| Plaintiff, | **VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BERNARD MCPHEELY, KARL LEAVERTON, GERALD MCGUIRE, LEWIS SMOAK, ADAMAS ONE CORP. and JOHN G. GRDINA | |
| Defendants, | |
| and | |
| SCIO DIAMOND TECHNOLOGY CORP., | |
| Nominal Defendant. | |

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

Plaintiff Theodorus Strous ("Plaintiff" or "Strous"), brings both: (a) a derivative action in his capacity as a shareholder of Scio Diamond Technology Corp ("Scio" or the "Company"), for the benefit of nominal defendant Scio: (a)(i) against certain of Scio's directors and/or officers, Bernard McPheely, Karl Leaverton, Gerald McGuire, and Lewis Smoak for breaches of their non-exculpable fiduciary duties and other serious misconduct; and (a)(ii) against Adamas One Corp. ("Adamas"), John Grdina, and Gerald McGuire for their misconduct that has harmed Scio (collectively, the "Derivative Action"); and (b)(1) a direct class action, in Plaintiff's capacity as a shareholder of Adamas on behalf of himself and all others similarly situated against Adamas, John Grdina, and Gerald McGuire for breaches of their fiduciary duties and other misconduct (the "Class Action"). The Derivative Action and the Class Action are collectively referred to as the "Action".

Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Scio and/or Adamas with the U.S. Securities and Exchange Commission ("SEC") and the State of Nevada, State of Minnesota, press releases, news reports, publicly available filings in lawsuits, and matters of public record.

**NATURE AND SUMMARY OF THE ACTION**

1.      The Derivative Action is brought for the benefit of Scio, based on wrongdoing committed from at least June 2019 (and most likely prior to) through the present (the "Relevant Period") by Defendants Bernard McPheely ("McPheeley"), Karl Leaverton ("Leaverton"), Gerald

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

McGuire ("McGuire"), Lewis Smoak ("Smoak") (collectively, the "Scio Individual Derivative Defendants", and together with Scio, the "Scio Derivative Defendants"), and Adamas, John Grdina ("Grdina"), and McGuire. Grdina and McGuire are collectively referred to as the "Adamas Individual Derivative Defendants" and together with Adamas, the "Adamas Derivative Defendants".

2.    The breaches of fiduciary duty by the Scio Individual Derivative Defendants, including the duties of loyalty, care and candor were in large part in connection with the transaction in which Adamas acquired substantially all of the assets of Scio in exchange for cash (assumption and payment of debt) and Adamas stock (the "Adamas Transaction"), to be paid to Scio, pursuant to an Amended Asset Purchase Agreement dated January 31, 2019 ("Amended Agreement"), and as represented in Scio's Final Proxy Statement dated May 17, 2019 ("Scio Final Proxy Statement") and other Adamas Transaction documents, and Scio's SEC filings. As part of the Adamas Transaction, Scio had the right to make requests to Adamas to register 900,000 of the Adamas shares received by Scio (for the benefit of its shareholders) in certain time intervals and on a graduated basis. Shareholder approval by Scio shareholders was required to consummate the Adamas Transaction. The Special Meeting to approve the Adamas Transaction was set for June 7, 2019, and then unbeknownst to Scio shareholders was reconvened in August 2019.  According to public sources, shareholder approval was obtained.

3.    The Adamas Transaction purportedly closed on October 17, 2019, according to the Form S-1 Preliminary Prospectus/Registration Statement filed by Adamas with the SEC on May 31, 2022 (the "Preliminary Prospectus/Registration Statement"), which ultimately became the operative Registration Statement. Adamas filed a series of Preliminary Prospectus with the SEC indicating that Adamas  sought SEC approval of the  registration of certain shares of Adamas,

selling some of those shares in an Initial Public Offering ("IPO") and trading on a national exchange. On November 14, 2022, Adamas filed a Notice of Effectiveness and Registration of Securities with the SEC. The Final Prospectus was filed by Adamas with the SEC on December 6, 2022, and on December 9, 2022, certain Adamas shares began trading publicly on NASDAQ. On December 14, 2022, Adamas announced the closing of the IPO. Adamas filed its first periodic filing on Form 10K with the SEC on January 13, 2023.

4.     The Scio Individual Derivative Defendants have  repeatedly breached their fiduciary duties in the aftermath of the Scio shareholder vote on June 7, 2019,  purportedly approving the Adamas Transaction by Scio shareholders. They have abandoned Scio and its shareholders, egregiously violating the duty of care by providing no oversight whatsoever. Scio had the right to make comments in connection with the substance of the Registration Statement and Final Prospectus filed by Adamas on May 31, 2022 and December 6, 2022, respectively, according to the Amended Registration Of Rights Agreement dated January 31, 2019. The Scio Individual Derivative Defendants have disappeared and have taken steps to cut their ties with Scio. The only Scio Individual Derivative Defendant who has not disappeared is McGuire and that is because he has been the current Chief Operating Officer ("COO") of Adamas since September 1, 2019, and received a signing bonus in the form of Adamas shares.

5.     The Scio Individual Derivative Defendants also have violated the duty of candor by utterly failing to keep Scio shareholders up to date concerning the Adamas Transaction and other important events. For example, the Scio Individual Derivative Defendants caused and/or permitted Scio to distribute the Adamas shares pro rata to the Scio shareholders in September 2019 and then hid (and continue to hide) the pro rata distribution from Scio shareholders. The Scio shareholders are still in the dark about their individual personal stakes in Adamas stock. The Scio

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

Individual Derivative Defendants also failed to exercise Scio's right to request Adamas to make a good faith effort to register the 900,000 Adamas shares in allotments of 300,000, 300,000, and 300,000 shares. Not knowing that the pro rata distribution had even occurred has caused Scio and Scio shareholders to fail to exercise their rights under the Amended Agreement (and supporting Adamas Transaction documents) and protect their interests and financial stake in Adamas. In fact, the last communication from the Scio Individual Derivative Defendants concerning the Adamas stock to be received by Scio in the Adamas Transaction was set forth in the Scio Final Proxy Statement on May 17, 2019, representing to Scio shareholders that "the Board intends to hold [the Adamas shares] indefinitely in order to permit the stockholders to benefit from the business going forward" and that "[t]he Board intends to consider all options available to [Scio] regarding its future business, including in active business activities."

6.     The Scio Individual Derivative Defendants violated the duty of loyalty by permitting and/or causing the amount of Adamas shares received by Scio for the benefit of Scio shareholders in the Adamas Transaction reduced from 900,000 shares to 800,000 shares pursuant to a Second Addendum dated February 3, 2020 (the "Second Addendum"), four months after the Adamas Transaction purportedly closed on October 17, 2019. Again, Scio shareholders were kept in the dark about the secret reduction that the Scio Individual Derivative Defendants had permitted and/or caused until the filing of the Adamas Preliminary Prospectus/Registration Statement with the SEC on May 31, 2022, where the Second Addendum was included as a publicly filed exhibit for the first time, finally disclosing to Scio shareholders well over two years after the Second Addendum was executed that the shares had been reduced to 800,000. Although there is mention of three tranches of 300,000, 300,000 and 200,000 in the Registration of Rights Section of the draft Form S-1's filed by Adamas with the SEC on November 5, 2021, December 23, 2021 and April

13, 2022, there was no mention that the 900,000 Adamas shares had been reduced to 800,000 through a Second Addendum or any other document. The earlier draft Form S-1s mention that there is a February 3, 2020, amendment without any further explanation tying it to any reduction in shares or what the amendment even was. Even the May 31, 2022 Preliminary Prospectus/Registration Statement contained no further information about how and why the reduction occurred. The Scio Individual Derivative Defendants have never informed Scio shareholders that Scio and Scio shareholders stake in Adamas had been reduced, yet Scio was purportedly a party to the Second Addendum.

7.     According to the Second Addendum, this reduction in Adamas shares was made retroactive to the date of the Amended Agreement, January 31, 2019. The "Second Addendum" was signed by Grdina on behalf of Adamas and McGuire purportedly on behalf of Scio as Scio's CEO, while McGuire was simultaneously serving as Adamas COO and a director of Scio, a prima facie conflict and breach of fiduciary duties in the Derivative Action as a Scio Individual Derivative Defendant. The Scio Individual Derivative Defendants permitted and/or caused Scio to be represented by McGuire, who was obviously conflicted by simultaneously serving as Adamas COO as of September 2019 (and received a signing bonus of Adamas shares) and as Scio's CEO.

8.     During the Relevant Period Scio suffered a number of adverse events engineered by the Scio Individual Derivative Defendants: (i) On August 9, 2019, the SEC entered an order that the Scio Individual Derivative Defendants voluntarily accepted, revoking Scio's registration of its shares. The reason for the SEC order was because Scio had failed to file quarterly reports (Form 10-Q's) after the fiscal quarter ended on December 31, 2016,  and annual reports (Form 10-K's) after the fiscal year ended March 31, 2016; (ii) Intentionally caused Scio to have its corporate status revoked in Nevada on or about September-October 2019 and failed to put the assets of Scio

into a trust in violation of Nevada corporate law (NRS 78.175(5)) and, upon information and belief, the Scio Individual Derivative Defendants dissolved Scio and failed to hold a shareholder vote on dissolution and/or failed to provide notice to Scio shareholders of the dissolution, a violation of Nevada corporate law (NRS 78-580(3)); (iii) failed to notify Scio shareholders that  a pro rata distribution had been made to each of the Scio shareholders of Adamas stock pursuant to the Adamas Transaction; (iv) caused or permitted Adamas to reduce the Adamas shares Scio had already received from Adamas from  900,000 to 800,000, at least four months after the Adamas Transaction closed; (v) failed to timely request, and may not have requested at all, registration of the Adamas stock received by Scio in the Adamas Transaction; (vi) failed to inform Scio shareholders comments made by Scio in connection with the Adamas Preliminary Prospectus/Registration and Final Prospectus, if any; and (vii) Scio was sued by Best & Flanagan, LLC, who represented Scio in the Adamas Transaction, for outstanding legal fees. The Scio Individual Derivative Defendants caused and/or permitted Scio to have a default judgment entered against it. Scio failed to file an answer or otherwise respond to the Best & Flanagan complaint. McGuire appeared on behalf of Scio and the Court informed him that as a non-lawyer he was not permitted to represent a corporate entity such as Scio and that the Court was treating it as a failure to appear. Ultimately, the default judgment was satisfied.

9.     As part of the Adamas Transaction, all of the Scio Individual Derivative Defendants had their personal secured debt satisfied as part of the Adamas Transaction. Even the Scio Individual Derivative Defendants concede that they "have an interest in the [Adamas Transaction] that is different than  the average [Scio] shareholder." The Adamas Preliminary Prospectus/Registration Statement also discloses a $125,000 note payable on demand to "certain individuals affiliated with Scio" that was satisfied. No information was included identifying those

6
VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

"certain individuals affiliated with Scio."

10. The Adamas Derivative Defendants are being sued by Scio, in part, based on the same secret reduction in Adamas stock achieved pursuant to the Second Addendum. The amount of the Adamas shares received by Scio (ultimately for the benefit of its shareholders) was reduced by 100,000 shares, a reduction of over 11%, a material amount, damaging Scio and its shareholders who had already received the 900,000 shares pursuant to the Amended Agreement and other Adamas Transaction documents, including representations in the Adamas Preliminary Prospectus/Registration Statement and Final Prospectus. According to Adamas, it delivered the 900,000 shares of Adamas stock to Scio on September 17, 2019, well before the signing of the Second Addendum on February 3, 2020. Given the pro rata distribution of Adamas stock in September 2019, this raises troublesome issues about the source of the 100,000 shares.

11. Adamas, Grdina and McGuire are also defendants in the Class Action, being sued by Plaintiff and all other Scio shareholders who are also now Adamas shareholders who received Adamas stock pursuant to the Adamas Transaction, (the "Class"). Excluded from the Class are all Scio Individual Derivative Defendants and Adamas Class Action Defendants (collectively "Defendants"), Defendants' family members and/or entities controlled by Defendants and/or Defendants' family members, and all heirs, assigns and successors.

12. In their capacity as Adamas shareholders, Plaintiff and the Class were left in the dark by the Adamas Class Action Defendants that they had received a pro rata distribution of Adamas stock until after the original complaint was filed in this matter on February 10, 2022, although they had a duty to do so. Individual Class Action Defendant (and Scio Individual Derivative Defendant) McGuire emailed Plaintiff's counsel on March 8, 2022, prior to retaining representation, to inform Plaintiff's counsel that the Adamas shares had already been distributed

to Scio shareholders on a pro rata basis back in September 2019. This is the first time that Plaintiff could have discovered that Scio shareholders had received a pro rata distribution of Adamas stock and were now Adamas shareholders, too. To date, the Adamas Class Action Defendants, other than McGuire's email to Plaintiff's counsel in February 2022, have never informed Plaintiff and the Class that they are Adamas shareholders, although Plaintiff and the Class have been Adamas shareholders since September 2019. To this day, the Class remains uninformed about the pro rata distribution to Scio shareholders.

13.     Once Plaintiff and the Class received a pro rata distribution of Adamas stock pursuant to the Adamas Transaction, the Adamas Class Action Defendants had a duty to inform Scio stockholders that they were also Adamas shareholders (as did the Scio Individual Derivative Defendants). Instead, they did nothing. Nor did the Class Action Defendants ever communicate the reduction in shares to Plaintiff and the Class that occurred in February 2020, which was first discovered by Plaintiff's counsel upon review of the Preliminary Prospectus/Registration Statement issued by the Class Action Defendants on May 31, 2022. The Second Addendum appeared as an  exhibit to the Preliminary Prospectus/Registration Statement. Earlier drafts of the Preliminary Prospectus/Registration Statement failed to attach the Second Addendum as an exhibit, although the earliest draft was filed with the SEC on November 5, 2021. None of the exhibits listed in the earlier draft S-1s were attached until the Preliminary Prospectus/Registration Statement was filed with the SEC on May 31, 2022. The Class Action Defendants have had no communications with Plaintiff and the Class until the public filing of the initial draft Form S-1 on November 5, 2021, well after they became Adamas shareholders in September 2019 and the February 3, 2020, Second Addendum. In fact, the only reason Plaintiff and the Class had access to even this information is because Adamas intended to go public and was required to file with the

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

SEC.

14.    In the process of going public, Adamas issued public filings that misrepresented the status of the Action and service issues as described below.

15.    As a measure of value, the 900,000 Adamas shares based on the IPO price of $4.50 per share is $4,050,000. Plaintiff and the Class have not received anything for their Adamas shares. Instead, the 900,000 shares were reduced to 800,000 shares with no notice whatsoever to Plaintiff and the Class.

## **JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and  all Defendants, including the Scio Individual Derivative Defendants, Adamas Derivative Defendants and the Adamas Class Action Defendants and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17.    The  Court  has  jurisdiction  over  each defendant  because  each defendant  is either  a  corporation  that  does  sufficient  business  in  this  District  or  is  an  individual  who  has sufficient minimum contacts with this District so as to render the  exercise of jurisdiction by this court permissible under traditional notions  of fair play and substantial justice. Further, the Scio Individual Derivative Defendants and the Adamas Individual Derivative Defendants misconduct has harmed Scio, a Nevada Corporation. The Adamas Class Action Defendants have engaged in breaches of fiduciary duties and other serious misconduct in the District. Adamas is also a Nevada corporation.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because  nominal defendant Scio and defendant Adamas are incorporated under Nevada state law and  many of the

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

acts and practices complained of herein occurred in this District.

19.     Further, Sections 10.10(a) and 10.10(b) of the Amended Agreement have express choice of law and forum clauses, respectively, mandating application of Nevada law, and personal jurisdiction and venue in Nevada in any action "arising out of or based upon" the Amended Agreement and the rest of the Adamas Transaction documents.

## PARTIES

**Plaintiff**

20.     Plaintiff is a current stockholder of Scio common stock and has continuously held Scio common stock since prior to 2014. Plaintiff is also a shareholder of Adamas and has continuously held Adamas common stock since sometime in September 2019. Plaintiff is a citizen and resident of a foreign country, Portugal.

**Nominal Defendant**

21.     Nominal Defendant Scio is a Nevada corporation which maintained its corporate headquarters at 411 University Ridge, Greenville, SC 29601, Currently, Adamas also lists its corporate headquarters at 411 University Ridge, Greenville, SC 29601. According to its public filings, Scio creates high quality, single-crystal, lab-grown diamonds in a variety of types and colors, including Type IIa diamonds that are finished for fine jewelry or diamond materials that are sliced and shaped for industrial applications. Scio has developed proprietary technology through which high-quality, Type IIa, single-crystal diamond materials are produced using a chemical vapor deposition ("CVD") process (the "Diamond Technology"). Scio's primary mission is to become the worldwide leader in the production and sale of high-quality manufactured gemstones.

**Scio Individual Derivative Defendants**

22.     Defendant McPheely serves as non-executive chairman of the Scio Board and has served in that capacity since June 23, 2014. In 2012, McPheely retired as President of Hartness International after more than 35 years of service. From 2000-2002 he was chairman of PMMI and as of 2016 was still on the Board of Directors of Dorner Manufacturing Corp. McPheely is a graduate of the Thunderbird Graduate School of International Management and received his undergraduate degree from Albion College. Upon information and belief, Defendant McPheely is a citizen of South Carolina.

23.     Defendant Leaverton serves as non-executive director of the Board and has served in that capacity since June 23, 2014. From 2003 through the present, he has been a Managing Member, Principal of Blakely Management Company. Serves on the Board of Directors of Awesome Financial Future from 2013 through the present. From 2008 through the present, Leaverton has served as Managing Member of YJ Aviation LLC. He was Chairman of the Board of 7mb Technologies Inc. from October 2013 through January 2018. From October 2010 through October 2017, Leaverton was a Partner of Hollywood Hill Vineyards. He was Chairman of SNW Asset Management LLC from July 2013 through April 2017. Leaverton served as President and CEO of Seattle-Northwest Securities Corporation from April 2012 to July 2013. From 2005 through 2012 he was a Member at CZI Aviation Management, LLC. He also was Regional Director at RBC Wealth Management from 1993 through 2009. From 2006 through 2009, he was President, Private Client Group, RBC Wealth management, at which time he was terminated. According to Mr. Leaverton's LinkedIn profile, he does not even disclose his directorship at Scio or any association with the Company at all, although his LinkedIn profile covers the time frame that he was a Director of Scio.  He earned a BS in Chemical Environmental Science from the University

11
VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

of Puget Sound and completed the course work for a BA in Economics. He earned a Master of Science degree in Infrastructure Management from Stanford University. Upon information and belief, Defendant Leaverton is a citizen of Washington.

24.   Defendant Smoak serves as a non-executive director of the Board of the Company and has served in that capacity since June 23, 2014. Smoak is a founding partner of the law firm Ogletree, Deakins, Nash, Smoak & Stewart and has served on several boards including as Chairman for Supermarket Radio Network; Zumar, LLC; and Consumer Transparency, LLC. Upon information and belief, Defendant Smoak is a citizen of South Carolina.

25.   Defendant McGuire has served as Scio's President, Chief Executive Officer and a director of Scio since July 11, 2014. McGuire's experience is in the semiconductor industry, and he served as Sr. VP and GM of the Low-Voltage and Mid Power Analog Business Unit at Fairchild Semiconductor from 2010 to 2013. Prior, he was employed for 23 years at Analog Devices in various roles and from 2007 to 2010 was VP/GM of Analog Devices Digital Signal Processing business. Defendant McGuire is currently serving as Adamas COO and began employment with Adamas on September 1, 2019, well before the Second Addendum was signed. McGuire has been the COO of Adamas since September 1, 2019. According to the Preliminary Prospectus/Registration Statement and Final Prospectus, McGuire served as Scio's CEO from June 14, 2014 until its acquisition in September 2019. McGuire has received hundreds of thousands of shares of Adamas stock since becoming Adamas COO. Upon information and belief, Defendant McGuire is a citizen of South Carolina. Defendant McGuire is also an Adamas Individual Derivative Defendant and Adamas Class Action Defendant.

**Adamas Derivative Defendants and Adamas Class Action Defendants**

26.   Defendant Adamas was incorporated in Nevada on September 6, 2018, for the

12

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

purpose of acquiring existing technology to seek to efficiently and effectively produce man-made socially and Eco-friendly diamonds. Adamas' stated activities were to center on the acquisition of patented Diamond Technology that can be used to produce finished diamonds for retail jewelry, rough unfinished diamond materials for wholesale and industrial use. At the time of the Proxy Statements, (the Scio Preliminary Proxy Statement and the Scio final Proxy Statement are collectively referred to as the "Proxy Statement."), Adamas represented that it was in the initial phase of purchasing and commercializing the Diamond Technology and its goal is to become a preferred manufacturer of single crystal diamond and a leading global supplier of diamond materials for multiple applications. Adamas hoped to further shape the evolution of various markets for products and to leverage the technical foundation of the Diamond Technology by expanding into strategic partnerships with select industry leaders with distribution channels already in place to capture high value application opportunities.

27.     Defendant Grdina was the sole officer and director of Adamas at the time of the Adamas Transaction. He continues to have a majority interest in Adamas. Prior to founding Adamas, Grdina was the founder of AMMO, Inc. (OTCQB: POWW), a publicly traded and SEC reporting issuer, where he served from 2016- 2019. From 2012 through 2015 he was a director and executive officer of NOHO, Inc., a publicly traded and SEC reporting issuer. Grdina was the founder and former CEO of Club Jenna, Inc., which was sold to Playboy Enterprises in 2006. While at Playboy Enterprises from 2006 to 2009, he was a Senior Vice President and the President of Production at Playboy responsible for all aspects of Television and Video Production. After serving as a Senior Vice President for Playboy, he went on to create the celebrity blogging sensations TheDirty.com and Kikster.com. Grdina has a checkered past and a long history with law enforcement and regulatory agencies over the last 30 years. Grdina is the founder of Adamas,

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

1  its largest stockholder and has been the President, CEO and Chairman of the Board since
2  September 2018 and admits that Grdina has significant influence over Board approval.

3              **RELEVANT NON-PARTIES**

4      28.    Wavecrest Securities, LLC ("Wavecrest') provides investment banking services.
5  The Company specializes in capital raising, mergers and acquisitions, financial analytics, and
6  restructuring advisory services. It was incorporated in 2011 and is located at 830 3rd Avenue, New
7  York, NY 10022. Wavecrest acted as the "boutique investment banking firm" that the Scio
8  Individual Derivative Defendants caused Scio to use to pursue strategic alternatives, ultimately
9  resulting in the Adamas Transaction.

10     29.    Best & Flanagan, LLC is a Minnesota based law firm who represented Scio in the
11 Adamas Transaction and thereafter sued Scio for failure to pay its legal fees in connection with
12 the Adamas Transaction. A default judgment was initially entered against Scio and was ultimately
13 satisfied by Scio.

**FIDUCIARY DUTIES OF THE SCIO INDIVIDUAL DERIVATIVE DEFENDANTS AND
THE ADAMAS INDIVIDUAL CLASS ACTION DEFENDANTS**

18     30.    Each Scio Individual Derivative Defendant, by virtue of his/her position as a
19 director and/or officer, owed to Scio and to its stockholders the fiduciary duties of loyalty, candor
20 and care. Similarly, Adamas Individual Class Action Defendants, Grdina, and McGuire, by virtue
21 of his/her position as a director and/or officer of Adamas, owed to Plaintiff and the Class in their
22 capacity as Adamas shareholders the fiduciary duties of loyalty, candor and care.  The Scio
23 Individual Derivative Defendants were and are required to act in furtherance of the best interests
24 of Scio and its stockholders so as to benefit all stockholders equally and not in furtherance of their
25 personal interests or benefit. Similarly, the Adamas Individual Class Action Defendants were and

26
27
28

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

are required to act in furtherance of the best interests of Adamas and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interests or benefit.

31.     The Scio Individual Derivative Defendants, because of their positions of control and authority as directors and/or officers of Scio, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Scio, each Scio Individual Derivative Defendants had knowledge of material non-public information regarding Scio and failed to disclose that information to its own shareholders.

32.     Similarly, the Adamas Individual Derivative Defendants, because of their positions of control and authority as directors and/or officers of Adamas, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Adamas, each Adamas Individual Class Action Defendants had knowledge of material non-public information regarding the Adamas Transaction, including hiding the distribution of the Adamas shares and secretly reducing the amount of shares from 900,000 to 800,000 that Scio had already received from Adamas on September 17, 2019, and failed to disclose that information to its own shareholders, Plaintiff and the Class until well over two years later.

33.     To discharge their duties, both the Scio Individual Derivative Defendants and Adamas Individual Class Action Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of Scio and Adamas, respectively. By virtue of such duties, the Scio Individual Derivative Defendants and Adamas Individual Class Action Defendants, respectively, were required to, among other things:

    a.   Exercise good faith to ensure that the affairs of Scio or Adamas (as the case may

15

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

be) were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. Exercise good faith to ensure that Scio and Adamas, respectively, were operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations, and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

c. Exercise good faith in supervising and ensuring the timely preparation, filing, and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of Scio or Adamas (as the case may be);

d. Refrain from unduly benefitting themselves and other Scio insiders and Adamas insiders, respectively, at the expense of Scio or Adamas, respectively;

e. Exercise good faith to ensure that Scio's and Adamas' respective communications with the public and with its stockholders are made with due candor in a timely and complete fashion; and

f. When put on notice of problems with business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence on behalf of Scio or Adamas, respectively.

34.     Scio also has by-laws, a Code of Conduct and corporate governance guidelines, all of which impact the duties and responsibilities of Scio's officers and directors including the Scio Individual Derivative Defendants. The Code of Conduct states in pertinent part:

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

## SCIO'S CODE OF CONDUCT

**Expectations**

Our Code of Conduct serves as an active reference, describing how we expect our employees, Board members, partners and business associates to conduct themselves in doing business for or with Scio Diamond Technology Corporation (Scio Diamond). …

**Making Ethical Decisions**

We all take pride in our work and in the choices we make on behalf of Scio Diamond. These choices may be more difficult to make when we encounter ethical challenges. Our Code helps us recognize and resolve these challenges. When faced with a difficult ethical decision, ask yourself the following questions to determine whether the action you are contemplating is appropriate:

• Am I adhering to the letter and spirit of our Company's policies and all applicable laws and regulations?
• Is my action consistent with Scio Diamond's values and the principles set forth in our Code?
• Would I be acting in the best interests of Scio Diamond, my coworkers and our customers?
• What would my family, friends or neighbors think of my action?
• Would I want my action reported on the front page of a newspaper or on the Internet? …

**Following Our Code**

We take the guidelines in our Code seriously and strive to follow them conscientiously at all times. Please note that violations of the law, Scio Diamond policy or our Code may lead to disciplinary action, up to and including termination. In addition, such violations may result in civil or criminal consequences for both the persons involved and Scio Diamond. …

**Accurate Records**

When it comes to preparing Scio Diamond's corporate records, honesty and transparency are our guides. Each of us has a responsibility to ensure that the information contained in all of our business records — including our time cards, expense reports, sales records, purchase orders and production records — is full, fair, accurate, timely and understandable. We accomplish this by only providing information that is completed in accordance with our internal control procedures. If you are unsure how to represent information in a Scio Diamond report or document, refer to the Employee Handbook or contact your manager, CEO or CFO.

Our commitment to acting ethically and honestly requires that we engage in legitimate and authorized business transactions. We may never make a false representation on behalf of Scio Diamond, whether verbally or in writing. In

17
VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

addition, we must not hide Scio Diamond funds, mischaracterize Company transactions, create unrecorded fund accounts or knowingly allow similar illegal activities to occur. …

**Records Retention**
Properly creating, maintaining and destroying records are important aspects of keeping accurate business records. We must retain all Scio Diamond records in conformity with the guidelines set forth in our records retention schedules, as well as U.S. and local laws. These records retention schedules dictate the length of time companies must keep business records, as well as the way in which these records are to be destroyed.

If you are notified by a Company lawyer that you possess records relevant to anticipated or pending litigation, an investigation or audit, follow the guidelines set forth in that notification. Do not destroy, alter or conceal any covered documents (including computer files, e-mails and disks) in response to or in anticipation of any such Company notification, government proceeding or lawsuit. …

**What is a Conflict of Interest?**
A conflict of interest occurs when personal interests interfere with, or appear to interfere with, our ability to make objective judgments in the best interest of Scio Diamond. Avoiding actual or apparent conflicts of interest creates and sustains the trust of our customers and other business partners, our fellow employees and the public, so it is critical for all of us to be vigilant in this area. While it is impossible to address every situation where a conflict of interest may arise, the following sections address the most common scenarios.

**Personal Gain from Corporate Opportunities**
During the course of our employment at Scio Diamond, we may learn about business opportunities in which we are personally interested. We may not pursue or direct a third party to pursue any opportunity we learn about in connection with our employment or through the use of Company property or information, unless we have obtained written approval from the Company Legal department.

**Doing Business with Family Members**
We must be cautious when one of our immediate family members works for a company with which Scio Diamond does or intends to do business. If you find yourself in such a situation and your job involves making business decisions in relation to that company, you must disclose the situation immediately to your manager, your supervisor, or the Company Legal department.

**Investing in Outside Businesses**
A conflict of interest may arise if you or a family member holds a financial interest in a privately owned enterprise with which Scio Diamond does business or competes. The potential for a conflict of interest in this situation generally depends

on the size of your investment, your role at Scio Diamond and the business relationship between Scio Diamond and the other company. You must obtain prior written approval from the Company Legal department before making such an investment.

**Outside Employment**

We must be careful to ensure that our outside interests and activities do not conflict with our obligations to Scio Diamond. Since outside employment may make us appear biased or harm our ability to make decisions in the best interest of Scio Diamond, we may not be employed by, work as a consultant for, or be affiliated with a Scio Diamond competitor, customer or supplier without prior written approval from the Company Human Resources department and Legal department.

**Securities Trading**

During the course of our employment at Scio Diamond, we may come to know information about our Company or our business partners before it is disclosed to the public. This information is often called "inside" or "material, nonpublic" information. According to securities laws, information is considered "material" if it would influence an investor to buy, sell or hold the securities of the company about which the information relates. Information is "nonpublic" until it has been publicly disclosed and a sufficient amount of time has passed for the securities market to absorb the information.

Because we work for a U.S. company that is publicly traded, we are obligated to understand and comply with the laws that relate to the use of inside information. In general, these laws state that we may not buy or sell a company's stock if we hold inside information about that company. This practice, which is known as "insider trading," violates both our Code and the law. Some common examples of "inside" information may include discussions of mergers and acquisitions; changes in a company's senior management or executive structure; or sensitive corporate financial information.

We are also prohibited from "tipping" or sharing such information with a family member or friend who then buys or sells a security based upon that information. In such a situation, the person disclosing the information may be liable for violating securities laws, even if he or she did not personally make a trade.

In addition, the Board of Directors, Company Officers and any employees in possession of non-public information will strictly adhere to any trading "blackout" window as published by the CFO.

**Fraud and Theft**

By working for Scio Diamond, we have made a commitment to each other, our Company and our shareholders to protect and use our Company's assets appropriately and for business purposes. Such assets include physical property, intellectual property, information technology and our Company's reputation. Scio

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

Diamond will promptly investigate, and where appropriate, prosecute reported incidents of fraud or theft of its assets. You should promptly report any suspected theft, loss or abuse of Company assets to your manager or supervisor, or InnovateHR or Legal Counsel.

**Physical Assets**
We all work hard to create and manage our Company's physical assets. These assets include Scio Diamond's products, money, facilities, vehicles and equipment. We must safeguard this highly valuable property and protect it at all times. We each have a personal responsibility to ensure that we use our Company's assets only to promote Scio Diamond's business interests.

**Intellectual Property**
Scio Diamond's intellectual property is at least as valuable as our physical assets, if not more so, and we must protect it carefully. Intellectual property (or "IP") includes patents, trademarks, copyrights and trade secrets, as well as technical data and software developed under or used in support of customer contracts.

In general, Scio Diamond retains exclusive ownership of the IP in any idea, process, trademark, invention or improvement we conceive in relation to our work with our Company. Our obligation to protect intellectual property continues even after our employment ends. A "trade secret" is information that generally is not known or reasonably ascertainable by the public and gives Scio Diamond a competitive advantage. …

**Statements to the Media and Investment Analysts**
It is important for Scio Diamond to provide the public with accurate and consistent information regarding our operations. We may only make public statements regarding issues or matters for which we are authorized spokespersons. If a member of the media contacts you about a Scio Diamond matter, refer him or her to either the Director of Public Relations or the Chief Executive Officer. If an analyst approaches you, you should refer him or her to either the Director of Investor Relations, the Chief Financial Officer or the Chief Executive Officer.

35.     The Company's Amended and Restated Bylaws (the "Bylaws") call for an annual meeting and that the business and affairs of the Company shall be managed by its Board of Directors.

36.     The Company also has Corporate Governance Guidelines which are intended to provide a structure within which the Company's directors and management can pursue Scio's objectives for the benefit of its stockholders. The Guidelines also provide that the Board serves as

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

the ultimate decision-making body of the Company, with a few exceptions, and selects and oversees senior management who is charged with running the day-to-day operations of the Company. The Board also has responsibility to monitor and manage potential conflicts of interest and to ensure the integrity of financial information. The Code of Conduct, Bylaws, and Corporate Governance Guidelines were all adopted by the Scio Individual Derivative Defendants, who made up a majority of the Scio Board. As the misconduct alleged throughout illustrates, the Scio Individual Derivative Defendants have violated numerous provisions of the duties and responsibilities mandated to be followed by the Board.

37.     Unlike Scio, at the time of the filing of the Amended Complaint, Adamas had no Code of Conduct or Corporate Governance Guidelines. Adamas does have by-laws that mandate annual meetings and that the business of Adamas shall be managed by its Board of Directors:

> SECTION 2.1     ANNUAL MEETINGS. Annual meetings of the stockholders shall be held each year on a date and time designated by the Board of Directors. In the absence of such designation, the annual meeting shall be held on the second Tuesday of July each year at 10:00 a.m. At the annual meeting, the stockholders shall elect by vote a Board of Directors and transact such other business as may properly be brought before the meeting.

38.     The Adamas by-laws provide that the business affairs of Adamas shall be managed by its Board of Directors:

> SECTION 3.1     GENERAL POWERS. The business of the Corporation shall be managed by its Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things not otherwise required by statute, by the Articles of Incorporation or by these Bylaws to be exercised or addressed by the common stockholders.

## BACKGROUND

39.     Led by Scio Individual Derivative Defendant McPheely, the Scio Individual

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

Derivative Defendants (other than Defendant McGuire who was already acting CEO), took control of Scio in mid-2014 in a proxy fight. McPheely dubbed the campaign "Save Scio." During their tenure, Scio has gone from a publicly traded company that timely filed its quarterly and annual reports with the SEC, kept its corporate status in Nevada current and had ownership of valuable intellectual property with a prior market capitalization of approximately $50 million, to one that : (i) secretly ceased production in October 2017; (ii) had the registration of its shares revoked by the SEC in August 2019 for failing to timely file its periodic reports as required by the federal securities laws; (iii) had its corporate status in Nevada revoked and/or dissolved in violation of Nevada law; (iv) sold off all of its assets in the Adamas Transaction; (v) agreed to a reduction of 100,000 shares of the 900,000 Adamas shares Scio received (for the benefit of its shareholders) in the Adamas Transaction in February 2020 after the Adamas Transaction closed in October 2019 and Scio had already received the 900,000 Adamas shares back in September 2019; (vi) failed to exercise Scio's right to comment on the Preliminary Prospectus/Registration Statement;(vi) were sued by Best & Flanagan for its legal fees associated with the Adamas Transaction and had a default judgment entered against it. Scio is now worth virtually nothing, but for the 900,000 Adamas shares (purportedly 800,000 based on the February 2020 secret reduction).

40.     With Scio's financial condition and performance deteriorating because of the actions of the Scio Individual Derivative Defendants, according to the Proxy Statements and at the direction of the Board, Scio management formally began considering strategic alternatives in the Spring of 2017. As represented in the Proxy Statements, at that time Scio engaged a boutique New York investment banking firm, Wavecrest, who had aided the Scio Individual Derivative Defendants in the Save Scio campaign and whose principals owned shares of Scio stock. Wavecrest allegedly helped Scio develop and shop a special investment vehicle and consider

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

various license agreements. As set forth in the Proxy Statements, through Wavecrest, the Company had introductory discussions with purportedly 14 companies in the diamond industry. The investment structure, a Special Purpose Vehicle, SPV, was designed to raise $1.7 million in 15 units, to provide working capital for the Company. Participants in the SPV would receive discounted and a guaranteed supply of lab-grown diamonds. The Proxy Statement indicated that two of the discussions advanced, but ultimately did not result in an agreement.

41.     According to the Proxy Statements, in the fall of 2017, Scio also considered a strategic licensing deal with a diamond producer, but ultimately decided that the licensing would not provide the necessary capital for Scio's plans. Throughout the fall of 2017 and early 2018, Scio also considered debt restructuring. Scio entertained proposals from at least 3 groups, groups who proposed Scio equipment and IP as security. Unfortunately, Scio could not find a solution which would both replace its secured lenders and provide the necessary working capital.

42.     Scio continued evaluating potential strategic options. The Proxy Statements represented that during late 2017 and 2018, Scio had serious discussions with 6 different groups. Three of these six groups performed some level of due diligence of Scio. One group was an investment group with extensive experience in advanced crystalline materials, ultimately, they were unable to raise capital to execute a deal. The proposed terms were $5.5 million in cash and capped royalties for sales of Scio's proprietary growers.

43.     According to the Proxy Statements, the second group was a public company involved in advanced materials. After discussions of IP strategies and the industrial market, it was represented that the public company was not able to put in a timely offer. According to the Proxy Statements, the third group, Adamas, is an investment group with experience in turning around distressed companies. On November 30, 2018, Scio's Board, a majority of which consisted of the

23

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

Scio Individual Derivative Defendants, approved the deal with Adamas, and the definitive agreements were returned executed on December 5, 2018. The Amended Agreement and ancillary documents were entered into effective January 31, 2019 and filed with the SEC on February 7, 2019.

## THE ADAMAS TRANSACTION

44.     On December 11, 2018, the Scio Individual Derivative Defendants caused Scio to file a Form 8-K with the SEC announcing a proposed transaction with Adamas whereby Adamas would purchase all of Scio's assets, including the intellectual property, in exchange for cash and stock valued at $5.8 million. With regard to the transaction, the Form 8-K stated:

> 1.10     Entry into a Material Definitive Agreement.
>
> The Company has entered into an Asset Purchase Agreement, dated as of November 30, 2018, with Adamas One Corp., a Nevada corporation ("Adamas"), pursuant to which Adamas has agreed to purchase all of the assets of the Company in exchange for the following consideration:
> 1.     Satisfaction of all outstanding secured debt of the Company in the total amount of approximately $3.3 million over the eighteen (18) months following closing.
> 2.     Issuance to the Company of 350,000 shares of Adamas common stock, with a guaranteed minimum resale price for the Company of $2.00 per share, to be used to settle unsecured debt of the Company in excess of $3,000,000.
> 3.     **Issuance to the Company of 900,000 of Adamas common stock** to be distributed to shareholders of the Company upon liquidation of the Company. The shares will be registered with the Securities and Exchange Commission, pursuant to a Registration Rights Agreement entered into between the Company and Adamas, and subject to lockup/leakout provisions which will allow the shareholders to sell such shares over the two year period following closing, on a graduated basis.
> **Consummation of the transaction, and distribution of the Adamas common stock, are subject to satisfaction of numerous conditions, including, but not limited to,** shareholder approval by the Company, **filing and effectiveness of a registration statement for the Adamas shares to be distributed to Company shareholders** and other conditions. The Company will be providing additional information in connection with the shareholder meeting to be held to approve the transaction. (Emphasis added).

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

The Form 8-K was signed by Defendant McGuire on December 10, 2018.

45.     Purportedly, the  Asset Purchase Agreement ("Agreement") provided for all of the Company's secured debt to be paid from the cash portion of the transaction with 350,000 shares converted into cash at a minimum $2.00 per share (or $700,000) to be used to settle the unsecured debt and 900,000 shares of Adamas stock to be ultimately distributed to Scio shareholders. Conditions to consummation of the transaction included, but not limited to, Scio shareholder approval and the filing and effectiveness of a registration statement for the 900,000 Adamas shares that were to be distributed to Scio shareholders.

46.     Suspicious trading in Scio stock occurred on November 28, 2019, two days prior to Scio signing the deal. Trading volume was almost 800,000 shares, well above the average volume of approximately 25,000-30,000 shares per day. The only persons who knew the deal was going to be signed were the Scio Individual Derivative Defendants, other Scio officer and/or directors, Wavecrest, and the Adamas Individual Derivative Defendants. No other explanation for the unprecedented trading volume in Scio stock is plausible other than it was the result of insider trading.

47.     On February 7, 2019, the Scio Individual Derivative Defendants caused the Company to file a Form 8-K issued in connection with the proposed transaction with Adamas. The terms of the Adamas Transaction had substantially changed to the detriment of Scio shareholders. The Form 8-K stated:

**Entry into a Material Definitive Agreement.**

The Company has entered into an Amended Asset Purchase Agreement, dated as of February 4, 2019, with Adamas One Corp., a Nevada corporation ("Adamas"), pursuant to which Adamas has agreed to purchase all of the assets of the Company in exchange for the following consideration:

25

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

1. Satisfaction of all outstanding secured debt of the Company in the total amount of approximately $3.55 million over the eighteen (18) months following closing.

2. Issuance to the Company of a total of 1,250,000 shares of Adamas common stock. 350,000 of such shares will be sold by the Company in a private sale within 20 days after Closing with a guaranteed minimum resale price for the Company of $2.00 per share, to be used to settle unsecured debt of the Company in excess of $3,000,000.

3. **The remaining 900,000 of Adamas common stock will be held by the Company for an undetermined time, in the discretion of the Board.** The shares will be subject to a Registration Rights Agreement entered into between the Company and Adamas, and subject to lockup/leakout provisions which will allow their sale over a two year period following Closing, on a graduated basis. (Emphasis added).

4. Assumption of certain limited liabilities of the Company.

This Amended Asset Purchase Agreement amends and supersedes the Asset Purchase Agreement entered into between the parties dated as of November 30, 2018, in its entirety. Consummation of the transaction is subject to satisfaction of numerous conditions, including, but not limited to, shareholder approval by the Company and other conditions. The Company will be providing additional information in connection with the shareholder meeting to be held to approve the transaction.

The Form 8-K was signed by Scio Individual Defendant McGuire.

48.    The terms of the transaction had been changed dramatically. Instead of the 900,000 shares being distributed to shareholders and Adamas's obligation to have the shares registered with the SEC as a condition of closing, the shares were to be "held by the Company for an undetermined time, in the discretion of the Board." The obligation of registering the shares with the SEC prior to consummation of the transaction had disappeared.

49.    That same day, the Scio Individual Derivative Defendants caused the Company to file the Scio Preliminary Proxy Statement with the SEC reiterating the same terms as set forth in the Form 8-K. It also contained additional information about the Adamas Transaction. The Scio

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

Preliminary Proxy Statement disclosed for the first time that the Scio Individual Derivative Defendants were part of a group that had invested in secured debt of the Company and would be paid back (except for interest) as part of the cash consideration to be received in the Adamas Transaction. Further, the Scio shareholders were no longer going guaranteed to receive their pro rata portion of the 900,000 Adamas shares which were mandated by the Agreement to be registered with the SEC prior to the Adamas Transaction being consummated.

50.     Now that Adamas stock was no longer required to be distributed to shareholders and registered with the SEC as a condition of closing, the terms concerning the registration by Adamas of the 900,000 shares also changed. The Scio Preliminary Proxy Statement  represented that the registration of the 900,000 Adamas shares was to be done in stages if requested by Scio as follows: (i) Adamas to file registration statement for 300,000 shares 90 days after Scio's request; (ii) At Scio's request, Adamas to file a new registration statement to cover another 300,000 shares no less than 9 months after the first registration statement; and (iii) At Scio's request, Adamas to file a new registration statement to cover the remaining 300,000 shares no less than 15 months after the first registration statement. As to the Lock-Up/Leakout Provisions, up to 20% of the Adamas stock can be disposed of between months 9 and 18 months after closing; up to 50% of the Adamas stock can be disposed of between months 18 and 24 after closing; and up to 100% of Adamas stock can be disposed of after month 24.

51.     Further, instead of liquidating Scio after the 900,000 shares were distributed to the Company as part of the Amended Agreement, the Scio Preliminary Proxy Statement now disclosed that "[t]he Board intends to consider all options available to the Company regarding its future business, including engaging in active business activities." The Scio Preliminary Proxy Statement also disclosed some shocking news for the first time that "[t]he Company currently conducts no

27

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

active production operations and has not conducted active production since October 2017." The vote for shareholder approval of the Adamas Transaction was set for March 8, 2019. No shareholder vote was conducted on March 8, 2019.

52.     On May, 17, 2019, the Company filed the Scio Final Proxy Statement. The shareholder vote was rescheduled for June 7, 2019. Included with the Scio Final Proxy Statement was the representation that under Nevada law the Board had the right to remain private and independent if it determined that it was in the best interests weighing a number of different factors. It was further disclosed the identity of the officers and directors who held the secured debt, which includes all four of the Scio Individual Derivative Defendants. Thus, the only shareholders who were guaranteed cash compensation as part of the Adamas Transaction were Company insiders, the four Scio Individual Derivative Defendants. The shareholders received no cash and Scio received 900,000 shares of Adamas stock for the benefit of its shareholders. The vote on the Adamas Transaction purportedly took place at the meeting on June 7, 2019, and then it was reconvened in August 2019, and the shareholders purportedly approved the Adamas Transaction with it closing in October 2019, according to Adamas. No information has ever been publicly disclosed by the Scio Individual Derivative Defendants concerning the results of the shareholder votes, nor have they caused Scio to disclose it. Rather, it was first disclosed in a lawsuit buried in Minnesota state court brought by Scio's counsel, Best & Flanagan, retained by the Scio Individual Derivative Defendants on behalf of Scio to represent it in the Adamas Transaction. That lawsuit was filed November 25, 2020, more than a year after the Adamas Transaction purportedly closed. None of this material information has ever been communicated to Scio shareholders (and Plaintiff and the Class) by the Scio Individual Derivative Defendants and Adamas Class Action Defendants except for the recent filing of the Adamas Preliminary Prospectus/Registration Statement with the

SEC on May 31, 2022, approximately three years later, and the Final Prospectus recently filed in December 2022. In other words, Scio shareholders have been completely in the dark about the Company other than its last SEC filing in August 2019 of the SEC order revoking the registration of Scio's shares at the request of the Scio Individual Derivative Defendants. In fact, after the Adamas Transaction had been publicly announced but prior to its closing, Adamas stated that the 900,000 shares needed to be priced at a minimum at $4.00 per share to be registered and publicly traded on an exchange and that would be no problem. Ultimately, they were priced at $4.50 per share.

### SCIO BOARD MEMBERS AND THE CFO RESIGN

53.    After the signing of the Amended Agreement on January 31, 2019, two of the six Scio Board members resigned. Scio filed a Form 8-K on February 13, 2019, announcing that "on February 7, 2019, Scio Diamond Board of Directors formally acknowledges the resignations of Ben Wolkowitz and Bruce Likely form the Board …" This left the four Scio Board members who are  the Scio Individual Derivative Defendans in this Action.

54.    Subsequently, on May 31, 2019, Scio filed a Form 8-K disclosing that the Company had received a letter of resignation from Jonathan Pfohl, CFO, dated May 6, 2019. This left Scio Individual Derivative Defendant McGuire as the remaining officer of Scio.

### SCIO HAS THE REGISTRATION OF ITS SECURITIES VOLUNTARILY REVOKED BY THE SEC

55.    Beginning on June 29, 2016, Scio began missing the scheduled filing dates for its periodic reports required by the SEC, the Form 10-Qs and Form 10-Ks. On June 29, 2016, the Scio Individual Derivative Defendants caused Scio to file Form 12b-25, Notification of Late Filing in

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

connection with its Form 10-K for Fiscal Year ended March 31, 2016. The Company filed its Form 10-K late on July 14, 2016.

56.     The Company timely filed its Form 10-Q for the first quarter ending June 30, 2016, on August 15, 2016. It did not timely file its Form 10-Q for the second quarter ended September 30, 2016. On November 14, 2016, the Scio Individual Derivative Defendants caused the Company to file a Form 12b-25, Notification of Late Filing in connection with its Form 10-Q for the second quarter ended September 30, 2016. It was subsequently untimely filed on November 23, 2016. The Company timely filed its Form 10-Q for the third quarter ended December 31, 2016, on February 14, 2017. This would be the last periodic report ever filed by the Company.

57.     The Scio Individual Derivative Defendants filed Form 12b-5, Notification of Late Filing in connection with its: (i)  Form 10-K for Fiscal Year ended March 31, 2017 (filed Form 12b-25 on June 30, 2017); (ii) Form 10-Q for first quarter ended June 30, 2017 (filed Form 12b-25 on August 14, 2017); (iii) Form 10-Q for second quarter ended September 30, 2017 (filed Form 12b-25 on November 15, 2017); and (iv) Form 10-Q for third quarter ended December 31, 2017 (filed Form 12b-25 on February 15, 2018). The Company never filed the periodic reports (or any subsequent periodic reports).

58.     On August 9, 2018, subsequent to the Adamas Transaction, the SEC issued an Order in *In the Matter of Scio Diamond Technology Corp.,* Administrative Proceeding File No. 3-19327, revoking registration of the Company's securities pursuant to its authority under Section 12(j) of the Exchange Act (the "Revocation Order'). The Revocation Order stated in pertinent part:

> On the basis of this Order and Respondent's Offer, the Commission finds that:
> A. Scio Diamond Technology Corp., a Nevada corporation based in Greenville, South Carolina (CIK No. 0001488934), purports to have developed technology to manufacture singlecrystal, lab-grown diamonds. The common stock

1
2

of Scio has been registered under Section 12(g)2 of the Exchange Act since October 2011. It is currently quoted on OTC Link ("SCIO"), operated by OTC Markets Inc.

3
4
5
6

B. Scio has failed to comply with Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder, while its common stock was registered with the Commission in that it has not filed an Annual Report on Form 10-K since July 14, 2016 for the period ended March 31, 2016 or periodic or quarterly reports on Form 10-Q for any fiscal period subsequent to its fiscal quarter ending December 31, 2016. …

7
8

In view of the foregoing, the Commission finds that it is necessary and appropriate for the protection of investors to impose the sanction specified in Respondent's Offer.

9
10
11

Accordingly, it is hereby ORDERED, pursuant to Section 12(j) of the Exchange Act, that registration of each class of Respondent's securities registered pursuant to Section 12 of the Exchange Act be, and hereby is, revoked. The revocation is effective as of August 9, 2019.

12
13
14
15
16

59.    The Scio Individual Derivative Defendants downplayed the Company's loss of the registration of its shares, with Scio Individual Derivative Defendant McGuire commenting, "[t]he deregistration has no impact on shareholders' ownership of Scio or their interests in the [Adamas Transaction]."

17
18
19

**SCIO SHAREHOLDERS ARE NEVER TOLD THAT THEY RECEIVED A PRO RATA DISTRIBUTION OF ADAMAS SHARES IN SEPTEMBER 2019 PURSUANT TO THE ADAMAS TRANSACTION**

20
21
22
23
24

60.    According to the Adamas Preliminary Prospectus/Registration Statement filed with the SEC on May 31, 2022, Adamas issued 1.5 million shares of Adamas stock to Scio, and HG, on September 17, 2019, with 900,000 of those shares for the benefit of Scio shareholders in connection with the Adamas Transaction.

25
26
27

61.    On May 17, 2019, three weeks prior to the shareholder vote to approve the Adamas Transaction scheduled for June 7, 2019, the Scio Individual Derivative Defendants caused Scio to

28

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

issue its Final Proxy Statement indicating to Scio shareholders that "the Board intends to hold [the 900,000 Adamas shares] indefinitely in order to permit the stockholders to benefit from the business going forward" and that "[t]he Board intends to consider all options available to [Scio] regarding its future business, including in active business activities." There was no indication by the Scio Individual Derivative Defendants that three months later in the latter part of September 2019 (and prior to the October 17, 2019, closing) that Scio shareholders would receive a pro rata distribution of the 900,000 Adamas shares. To date, Scio shareholders have never been informed that they received a pro rata distribution of Adamas stock by either the Scio Derivative Defendants or the Adamas Class Action Defendants. This information was only discovered on March 8, 2022, subsequent to the filing of this Action, when Scio Individual Derivative Defendant (and Adamas Individual Class Action Defendant) McGuire emailed Plaintiff's counsel prior to seeking representation and informed Plaintiff's counsel that the Adamas shares had been distributed sometime in September 2019. The failure to inform the Scio shareholders (and subsequently the Class) of the pro rata distribution is a breach of fiduciary duty by both the Scio Individual Derivative Defendants and the Adamas Class Action Defendants.

62.     Further, the Scio Individual Derivative Defendants caused or permitted Scio to fail to seek registration of the Adamas shares pursuant to the Amended Registration of Rights Agreement requesting Adamas to seek registration with the SEC of the Adamas shares. Without knowledge that they were now individual Adamas shareholders, Scio shareholders were unaware that they could exercise their rights under the Amended Registration of Rights Agreement to request to have the shares registered.

**THE 900,000 SHARES OF ADAMAS STOCK RECEIVED IN THE ADAMAS TRANSACTION WAS SECRETLY REDUCED TO 800,000 SHARES**

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

63.     Unbeknownst to the Scio shareholders (and Plaintiff and the Class), on February 3, 2000, Adamas Individual Derivative Defendant Grdina (and Adamas Individual Class Action Defendant), and Scio Individual Derivative Defendant McGuire (and Adamas Individual Class Action Defendant) entered into the Second Addendum. The Second Addendum provided for a reduction of the 900,000 Adamas shares already received by Scio in September 2019 and purportedly distributed to shareholders later that month to 800,000 shares, a reduction of 100,000, or over 11%, a substantial amount.

64.     Section 2.06 of the Amended Agreement stated as follows:

"Section 2.06 Purchase Price. The aggregate purchase price for the Purchased Assets shall be (i) the cancellation of the Secured Debt, plus (ii) the issuance of one million two hundred fifty thousand (1,250,000) shares of Buyer's common stock (the "Shares") to Seller, with nine hundred thousand (900,000) of such Shares subject to the terms of the [Amended] Registration of Rights Agreement …, (iii) the assumption of the Assumed Liabilities ((i), (ii), and (iii) collectively, the "Purchase Price").

65.     Pursuant to the Second Addendum, Section 2.06 now reads:

Section 2.06 Purchase Price. The aggregate purchase price for the Purchased Assets shall be (i) the cancellation of the Secured Debt, plus (ii) the issuance of one million two hundred fifty thousand (1,250,000) shares of Buyer's common stock (the "Shares") to Seller, with eight hundred thousand (800,000) of such Shares subject to the terms of the [Amended] Registration of Rights Agreement …, (iii) the assumption of the Assumed Liabilities ((i), (ii), and (iii) collectively, the "Purchase Price")."

66.     The Second Addendum made the reduction retroactive to the execution of the Amended Agreement on January 31, 2019. It was signed by Adamas Individual Derivative Defendant (and Adamas Individual Class Action Defendant) on behalf of Adamas and Scio Individual Derivative Defendant (and Adamas Individual Class Action Defendant) McGuire on behalf of Scio as Scio CEO, while serving simultaneously serving as Adamas COO, a prima facie

conflict. Where the 100,000 shares came from is a mystery given that the Adamas shares had already been distributed to Scio and its shareholders in September 2019.

67.     Contrary to the representation in the Second Addendum that McGuire was acting as Scio CEO when he executed the Second Addendum, according to the Adamas Preliminary Prospectus/Registration Statement and Final Prospectus, McGuire was only Scio CEO (and President)  from June 2014 "until its acquisition by our company in September 2019". Thus, McGuire was not CEO when he signed the Second Addendum.

68.     The Second Addendum was first disclosed to Scio shareholders and the Class on May 31, 2022, well over two years after it was executed, when Adamas filed the Adamas Preliminary Prospectus/Registration Statement. It appeared there as an exhibit for the first time. No other disclosure privately or publicly has been made.

## SCIO HAS ITS CORPORATE STATUS IN NEVADA REVOKED AND/OR DISSOLVED IN VIOLATION OF NEVADA CORPORATE LAW

69.     According to publicly available Nevada state records, Scio's corporate status (its charter) was revoked when it failed to file its annual filing on September 30, 2019. Based on NS 78.175(2), Scio's charter was revoked "[o]n the first day of the first anniversary of the month following the month in which the filing was required, the charter of the corporation is revoked and its right to transact business has been forfeited." Its most likely that the revocation took place in October 2019.

70.     Nevada corporate law also provides that where the charter is revoked, the assets of the corporation must be put into a trust and held by the directors. NS 78.175(5) provides in pertinent part:

> If the charter of a corporation is revoked and the right to transact business
> is forfeited as provided in subsection 2, **all the property and assets of the**

34

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

**defaulting domestic corporation must be held in trust by the directors of the corporation** … [Emphasis added).

71.     With the revocation taking place in approximately October 2019 (and the Second Addendum signed in February 2020 several months subsequent to the revocation), the remaining assets (if any) and the Adamas shares still held by Scio as of October 2019 were required to be placed in trust and held by the Scio Individual Derivative Defendants, thereby thwarting the hidden reduction pursuant to the Second Addendum, notwithstanding McGuire's conflict and lack of authority to execute the Second Addendum on behalf of Scio, as the Company's CEO.

72.     Alternatively, and upon information and belief, Scio was dissolved. Under Nevada corporate law: (i) the Board must recommend the dissolution to the stockholders; and (ii) provide notice to shareholders. NRS 78.580(3) provides in pertinent part:

> If the corporation has issued stock, the directors must recommend the dissolution to the stockholders. … Unless the dissolution is to be approved by written consent pursuant to NRS 78.320, the corporation shall notify each stockholder, whether or not entitled to vote on dissolution, of the proposed dissolution and the stockholders entitled to vote must approve the dissolution. If the dissolution is approved by written consent pursuant to subsection 2 of NRS 78.320, the corporation shall notify each stockholder whose written consent was not solicited of the dissolution , in writing, not later than 10  days after the effective date of the dissolution.

73.     The Scio Individual Derivative Defendants failed to comply with NRS 78.580(3) and never provided notice to Scio shareholders as mandated by the statute.

74.     Once a company is dissolved pursuant to NRS 78.580 the directors become trustees with the following duties pursuant to NRS.590: (i) full power to prosecute and defend suits, actions, proceedings and claims of any kind or character by or against the corporation, (ii) to enable the corporation gradually to settle and close its business; (iii) to collect its assets; (iv) to collect and discharge its obligations; (v) to dispose of and convey its property; (vi) to distribute its money

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

and other property among the stockholders …

75.      The Scio Individual Derivative Defendants have failed miserably. They caused and/or permitted the Company to have a default judgment entered against it and was unrepresented during those proceedings. The Scio Individual Derivative Defendants also permitted the secret reduction of Adamas shares from 900,000 shares to 800,000 shares pursuant to the Second Addendum.

## SCIO GETS SUED BY ITS OWN LAW FIRM AND HAS A DEFAULT JUDGMENT ENTERED AGAINST IT

76.      On November 25, 2020, the Company's former law firm sued the Company for failure to pay its legal fees, including those that incurred in connection with the Adamas Transaction. The case is docketed as *Best & Flanagan LLP v. Scio Diamond Technology Corporation,* Case No. 27-CV-20-15599 (Dist. Ct. 4th Jud. Dist. Minn).

77.      The *Best & Flanagan* Complaint alleges that the Company owed the law firm over $700,000 as of November 1, 2019, and that the parties had entered into a settlement agreement (the "Settlement Agreement") and a security agreement (the "Security Agreement") that same day.

78.      Under the Settlement Agreement, the Company agreed to pay $133,000 by November 25, 2019. The Security Agreement secured the payment and as part of the collateral securing the debt was the 900,000 shares of Adamas stock. According to the *Best & Flanagan* Complaint, on or about December 10, 2019, the Company paid $75,000, leaving a balance of $58,000, the amount requested by the lawsuit. The *Best & Flanagan* Complaint also alleged that the Adamas Transaction closed on August 29, 2019.

79.      The Scio Individual Derivative Defendants failed to answer or otherwise respond to the *Best & Flanagan* Complaint and a default judgment was entered against the Company.

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Although Scio had not answered or otherwise responded to the Best & Flanagan Complaint, Scio Individual Derivative Defendant McGuire appeared in court. Being a non-lawyer, the Court instructed McGuire that a corporation had to be represented by an attorney. In a footnote to the Order for Judgment entered on January 7, 2021, the Court wrote: "The Court informed Mr. McGuire that a corporation must be represented by an attorney in legal proceedings. … Since no attorney appeared at the hearing on behalf of the Defendant, the Court can treat this as a failure to appear." (Citations omitted). Ultimately, on or about June 25, 2021, Scio satisfied the judgment by paying the law firm the remaining balance of $58,000 and also attorneys' fees and interest making the total paid $63,455.50. None of this has ever been publicly disclosed by the Scio Individual Derivative Defendants or the Adamas Class Action Defendants, Scio, or anybody else. The only place this information was found was in the obscure lawsuit brought in Minnesota state court by Best & Flanagan. It has never been widely disseminated. Where the Scio Individual Derivative Defendants got the funds to satisfy the default judgment against the Company is unknown since the funds were not paid until June 2021, almost two years after the Adamas Transaction purportedly closed. By June 2021, the only real asset the Company and Scio shareholders purportedly held was the 900,000 shares of Adamas stock. The secret reduction and hidden pro rata distribution were both undisclosed as of June 2021.

21
22
23

**THE ADAMAS CLASS ACTION DEFENDANTS MISREPRESENT THE STATUS OF THE ACTION AND SERVICE OF THE VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT**

24
25
26
27

80.     The initial Complaint in the Action brought derivative claims solely against the Scio Derivative Defendants. Plaintiff filed an Amended Complaint adding the Adamas Derivative Defendants and Adamas Class Action Defendants and alleging both derivative claims by Scio

28

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

against the Scio Derivative Defendants and class claims on behalf of the Scio shareholders in their capacity as Adamas shareholders against the Adamas Class Action Defendants. In connection with their public filings with the SEC, the Adamas Class Action Defendants made certain representations concerning this Action and status on service of process.

**MISSTATEMENTS CONCERNING STATUS OF LITIGATION AND SERVICE**

81.    On December 6, 2022, Adamas filed its Final Prospectus and represented as follows:

The following are among the misstatements and omissions in the Registration Statement/Final Prospectus filed by Adamas One with the SEC on December 6, 2022:

**December 6, 2022, Registration Statement/Final Prospectus: Risk Factors (p.7), states:**

> Investing in our common stock involves a high degree of risk. You should carefully consider the risks highlighted in the section titled "Risk Factors" beginning on page 14 of this prospectus before making an investment decision. Some of these risks include the following:

> The former stockholders of Scio or the SEC may bring action for possible omissions from Scio's proxy statement for the special meeting of stockholders held to approve the asset sale transaction between Scio and our company.

**December 6, 2022, Registration Statement/Final Prospectus: Risks Related to Legal and Regulatory Matters (p.15), states:**

> The former stockholders of Scio or the SEC may bring action for possible omissions from Scio's proxy statement for the special meeting of stockholders held to approve the asset sale transaction between Scio and our company.

**December 6, 2022 Registration Statement/Final Prospectus (p.28) states:**

> **The former stockholders of Scio or the SEC may bring action for possible omissions from Scio's proxy statement for the special meeting of stockholders held to approve the asset sale transaction between Scio and our company.**

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

On January 31, 2019, we entered into an Amended Asset Purchase Agreement with Scio, which was subsequently amended February 3, 2020, pursuant to which we acquired substantially all of the assets of Scio. Scio filed its definitive proxy statement with the SEC on May 17, 2019, for a special meeting of the stockholders to obtain stockholder approval of the sale transaction. The transaction was approved by a majority of the Scio stockholders voting in person or by proxy at the special meeting of stockholders held commencing on June 7, 2019 and reconvening on August 6, 2019. The former stockholders of Scio or the SEC may be able to bring an action for monetary damages or recission based on possible omissions from such proxy statement, such as audited financial statements. While financial statements were filed, it is our understanding that Scio did not have the funds to pay for an audit. We believe any such claims made against our company would likely be without merit given that the proxy statement was filed by Scio and not our company and that we acquired only the assets and certain liabilities of Scio and did not assume any and all liabilities of Scio. We would defend any such claims vigorously. If a former stockholder of Scio or the SEC were to bring a claim, however, it could divert the attention of our management, which could have a material adverse effect on our business, results of operations, financial condition, and prospects.

**December 6, 2022, Registration Statement/Final Prospectus: Legal Proceedings (p.65), states:**

We have been made aware of the filing of a stockholder derivative complaint and class action complaint filed on behalf of Scio and the named plaintiff and for other Adamas One shareholders similarly situated against the Company, Messrs. Grdina and McGuire and other former Scio directors as defendants alleging, among other things, breach of various fiduciary duties, conflicts of interest, and other misconduct relating to the acquisition of the Scio assets by us and seeking redress. We have not been served with the lawsuit as of the date of this prospectus and if and when served, intend to vigorously defend such action.[1]

**December 6, 2022, Registration Statement/Final Prospectus:** Financial Statements, Note 13 **(F-28) Subsequent Events.** No Scio/Adamas lawsuit disclosed but events into November and complaint was served on 10-6-22.

82.     The statements above from the December 6, 2022, Registration Statement/Final Prospectus misrepresents that a Scio/Adamas lawsuit is a mere risk, when in fact it was already filed prior to December 6, 2022, and the statement concerning "Legal Proceedings" above about

---

[1] This was the first time the active lawsuit was disclosed to Scio/Adamas shareholders.

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

not being served is incorrect. Adamas was served on October 6, 2022, through its Chief Operating Officer Gerald McGuire (See attached). Indeed, Adamas filed several Preliminary Prospectuses after being served on October 6, 2022, none of which mentioned the Action until the December 6, 2022, filing. In fact, Wilbert Wong, purportedly an attorney working in Adamas' legal Department contacted Plaintiff's counsel to seek a 30-day extension to respond to the Amended Complaint.

### DEFENDANT GRDINA FAILS IN HIS ATTEMPTS TO AVOID SERVICE

83.    Prior to attempting service, an investigation was performed. The preliminary investigation revealed several addresses for Grdina, a cell phone number, and automobiles owned by Grdina. The writ service report on serving Grdina states:

> On November 1, 2022, at 10:05 a.m., an attempt was made to serve John Grdina at the Headquarters of Adamas One Corp., 17767 N Perimeter Drive, Suite Bll5, Scottsdale, Arizona 85255. During this attempt, the door to suite B114 was locked and blinds covered the window next to the door preventing anyone from seeing inside the unit. No one answered the door. There was no signage on the door or outside the door indicating if the suite was occupied. Additionally, the "marquee sign" at the front of the building at 17767 N Perimeter Drive, Scottsdale, Arizona 85255, had no listing for any business in suite B115.

> On November 1, 2022, at 10:45 a.m., during an attempt to serve John Grdina at his reported secondary address, 16000 N 80th Street, Suite C, Scottsdale, Arizona 85255, this was found to be the location of Choice Motor Group LLC, (a boutique motor vehicle dealership in Scottsdale that specializes in pre- owned luxury, exotic and classic automobiles) telephone number (602) 569-2222. The mechanic, Steve (LNU), indicated he takes care of John Grdina's vehicles and is a personal friend of Mr. Grdina. At the time of this attempt, Steve was servicing a Mercedes that was owned by Mr. Grdina. Steve was not sure when Mr. Grdina would be around. An attempt was made to contact Mr. Grdina on his cell phone, (480) 361-2669 to arrange a meeting, there was no answer to the call. Steve then sent a text to Mr. Grdina.

> On November 1, 2022, at 11:15 a.m., an attempt was made to serve John Grdina at his reported residence, 10015 E. Adele Court, Scottsdale, Arizona 85255. During the attempt no vehicles were observed at the residence, and no one answered the

40
**VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT**

door at the residence. The residence has a "Ring Doorbell" and cameras covering the outside and anyone that approaches the residence.

On November 3, 2022, at 9:30 a.m., an attempt was made to serve John Grdina at Adamas One Headquarters, 17767 N Perimeter Drive, Suite Bl15, Scottsdale, Arizona 85255. During this attempt the door was locked, and Mr. Grdina was not located at the business, nor any of his vehicles we observed to be at the location.

On November 5, 2022, Saturday, to locate and serve John Grdina, a check was made at the following locations without locating Mr. Grdina:

> 10:10 a.m. Grdina's residence, 10015 E. Adele Court, Scottsdale, Arizona 85255

> 2:25 p.m.   16000 N 80th Street, Suite C, Scottsdale, Arizona 85255

On November 7, 2022, at 9:00 a.m., an attempt was made to serve John Grdina at the Headquarters of Adamas One. No one was at the office. Note, Adamas appears to have moved out of 17767 N Perimeter Drive, Suite Bl15, Scottsdale, Arizona 85255, or only uses the office for certain occasions.

On November 11, 2022, at 7:30 a.m., an attempt was made to serve John Grdina at his residence, 10015 E. Adele Court, Scottsdale, Arizona 85255. During this attempt no one answered the door at the residence, and none of Grdina's vehicle[s] [were] observed.

On November 14, 2022, at 11:05 a.m., during conversation with Steve at Choice Motor Group, Steve indicated he had talked with Grdina and informed him about the legal documents. Also learned from Steve that Grdina has obtained a new Ford F-150 Raptor, truck. The truck was at Choice Motor and was pointed out by Steve. The vehicle displayed California plate BW44W56.

On November 14, at 11:20 a.m., service was attempted at Grdina's residence, 10015 E. Adele Court, Scottsdale, Arizona 85255, and no one could be located at the residence.

On November 29, 2022, at 10:45 a.m., during an attempt to serve John Grdina at his reported residence, 10015 E. Adele Court, Scottsdale Arizona 85255, there was a package at the front door addressed to Erin Naas a/k/a Erin Elizabeth Naas-Grdina at the address. The door was answered by a Hispanic female who identified herself as Rosa Cruse De Perales. Ms. De Perales verified the John Grdina lived at the residence, and that she was employed … as a housekeeper by Mr. Grdina. Ms. De Perales stated Mr. Grdina would be back in a couple of hours. Ms. Perles took the papers and said she would give the[m] to Mr. Grdina. Ms. Perales was observed to

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

go to the back door of the residence and was overheard speaking with a male. Immediately, a vehicle occupied by a white male came from the rear of the residence and departed at a high rate of speed. Due to the speed of the vehicle, we were unable to identify the driver, but it is believed to have been driven by Mr. Grdina.

During investigation at Choice Motor Group, a business card on display indicated one of the employees to be Jim Grdina, Choice Motor Credit. This is believed to be Mr. Grdina's brother James Raymond Grdina.

Additional phone calls were placed to Grdina's cell phone xxxxxx2669, on November 14, 2022, and November 15, 2022, and there was no answer.

84. Defendant Grdina appears to be a skilled artisan at avoiding service. On May 3, 2022 the Arizona Court of Appeals issued its decision in Power Glob. Trading Co. v. Grdina, 1 CA-CV-0475 (Ariz. Ct. App. May 5, 2022), affirming the trial court's default judgment finding that Defendant Grdina was properly served and rejecting Grdina's argument that service of process was defective. Representing Grdina was Greenberg Taurig LLP, Adamas' counsel in going public. (See attached). Plaintiff's position is that the November 29, 2022 service was proper service.

## DERIVATIVE ALLEGATIONS

85. Plaintiff brings this action derivatively in the right and for the benefit of Scio to redress injuries suffered, and to be suffered, by Scio as a direct result of breaches of fiduciary duty and other misconduct by the Scio Individual Derivative Defendants and serious wrongdoing by the Adamas Derivative Defendants.

86. Scio is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

87. Plaintiff will adequately and fairly represent the interests of Scio in enforcing and prosecuting its rights.

88. Plaintiff has continuously been a stockholder of Scio at all times relevant to the

42

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

1   wrongdoing complained of and is a current Scio stockholder.

2

3   **DEMAND FUTILITY ALLEGATIONS**

4   89.     Plaintiff incorporates by reference and re-alleges each and every allegation stated

5   above as if fully set forth herein.

6   90.     A pre-suit demand on the Board of Scio is futile and, therefore, excused.  Upon

7   information and belief, at the time the Verified Stockholder Derivative Complaint was filed, the

8   Scio Board consisted of the following four directors, all of whom are Scio Individual Derivative

9

10  Defendants: McPheely, Leaverton, Smoak and McGuire.  Plaintiff only needs to adequately allege

11  demand futility as to at least two of the four directors on the Board at the time this derivative action

12  was commenced. Here, the entire Board is infected.

13

14  91.     At the time of the shareholder vote to approve the Adamas Transaction on June 7,

15  2019, two of the six Scio directors had resigned, as well as the CFO. On February 7, 2019, the

16  Scio Individual Derivative Defendants acknowledged the resignation of Scio directors Wolkowitz

17  and Likely. Jonathan Pfohl, the CFO, resigned on May 6, 2019. With Scio ceasing operations in

18  October 2017, the only four remaining in the Company were the Scio Individual Derivative

19  Defendants. No one else was left to engage in the misconduct, but for the Scio Individual

20  Derivative Defendants.

21

22  92.     Under Nevada corporate law when a company has its charter revoked, it is the board

23  of directors who are charged with creating a trust for the assets and by law become trustees.

24  Alternatively, when a company is dissolved under Nevada corporate law, the board is mandated

25  to first approve the dissolution, provide notice to the shareholders and, in some cases, hold a

26  shareholder vote to approve the dissolution. The Scio Individual Director Defendants knowingly

27

28

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

failed to comply with Nevada corporate law.

93.    Further, hiding the pro rate distribution of Adamas stock to Scio shareholders and the secret share reduction, whereby Scio and Scio shareholders had the total amount of Adamas shares reduced from 900,000 to 800,000 could only have been accomplished with the participation of the Scio Individual Derivative Defendants. The secret share reduction was memorialized in the Second Addendum executed by Scio Individual Director Defendant McGuire, who was simultaneously serving as Adamas CFO when he signed the Second Addendum on behalf of Scio as Scio CEO, a prima facie conflict. The Lock-Up/Leak Out Provisions were also amended to the detriment of Scio and its shareholders in connection with the Adamas Preliminary Prospectus filed with the SEC on May 31, 2022. Again, it was executed by McGuire this time as Scio President while serving as Adamas COO another prima facie conflict.

94.    Additionally, the Company was sued by its own law firm that represented it in the Adamas Transaction and had a default judgment entered against it, and had a non-lawyer, Scio Individual Derivative Defendant McGuire, unsuccessfully attempt to represent the Company in those proceedings.

95.    All of the above in ¶¶ 92-94 had to be performed by the Scio Individual Derivative Defendants or by their acquiescence. There was no one else who could have engaged in the misconduct on behalf of the Company except for the Scio Individual Derivative Defendants. A full listing of the Scio Individual Derivative Defendants transgression is set forth below in ¶ 96.

96.    Demand is excused as futile as to all four of the Scio Individual Derivative Defendants  because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their actions in knowingly or recklessly and in bad faith; (i) withholding from Scio shareholders the results of the shareholder vote on the Adamas Transaction, shareholder

approval of which was a prerequisite to consummation of the Adamas Transaction, (ii) withholding from Scio shareholders whether the Adamas Transaction ever closed, (iii) closing the Adamas Transaction without informing Scio shareholders, (iv) breaching their fiduciary duties by: (a) not requesting Adamas register the 900,000 Adamas shares with the SEC post-closing in a timely fashion as part of the Amended Agreement and not informing Scio shareholders; (b) secretly distributing of the 900,000 shares of Adamas stock received by Scio on September 17, 2019; and (c) agreeing to and hiding the Second Addendum from Scio shareholders reducing the 900,000 Adamas shares to 800,000 shares and causing and/or permitting the Lock-Up/Leak Out Provision to be amended to the detriment of Scio and its shareholders; (v) not informing Scio and/or the Scio shareholders how their investment in the 900,000 shares of Adamas stock was performing, (vi) not informing Scio shareholders whether the Scio Individual Derivative Defendants secured debt was ever satisfied; (vii) not informing Scio shareholders whether the unsecured debt was ever satisfied; (viii) not communicating any financial information to Scio shareholders concerning Scio or Adamas post-closing of the Adamas Transaction; (ix) voluntarily permitting the Company's registration of its publicly traded shares with the SEC revoked; (x) causing and/or permitting the Company's corporate status in Nevada to be revoked and failing to place Scio assets in trust and act as trustees and/or dissolving the Company without a shareholder vote and/or providing notice of the dissolution all in violation of a board's responsibilities pursuant to Nevada corporate law, (xi) engaging in related party transactions by buying diamonds from the Company for their own use; (xii) having made no attempt to contact shareholders after the Company's registration of its shares were revoked in August 2019 with any plans for the Company going forward; (xiii) causing the Company to have a default judgment entered against it and then paying over $60,000 to satisfy the default judgment and having Scio Individual Derivative Defendant McGuire, a non-lawyer,

unsuccessfully appear in those proceedings and without informing Company shareholders; (xiv) failed to exercise Scio's right to comment on the Registration Statement and Final Prospectus before they were filed.

97.     The Scio Individual Derivative Defendants admittedly also engaged in related party transactions.  According to the Scio Final Proxy Statement, in May 2017 (just five months prior to ceasing operations), the Company initiated an Add-On Notes offering in which the Scio Individual Derivative Defendants participated, collectively purchasing $165,000 of secured debt that ultimately was paid back in the Adamas Transaction. The Scio Individual Derivative Defendants concede that "[t]hese individuals therefore have an interest in the ["Adamas"] [T]ransaction that is different from the average shareholder." This lack of independence also infects their ability to field a demand. In addition, McGuire is COO of Adamas leaving no doubt about his lack of independence.

98.     As a result of the foregoing, the Scio Individual Derivative Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and accordingly excused.

99.     The Scio Individual Derivative Defendants conduct described herein and summarized above was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Scio Individual Derivative Defendants can claim exculpation from their violations of duty pursuant to the Company's bylaws. As all four of the Scio Individual Derivative Defendants make up the entire Company Board face a substantial likelihood of liability, they are self-interested in the actions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. In fact, all four Scio Individual Derivative Defendants actively participated in the

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

misconduct and/or by their acquiescence of the misconduct. Thus, any demand upon the Scio Individual Derivative Defendants would be futile.

100.    The acts complained of herein constitute violations of fiduciary duties owed by Scio officers and directors, and these acts are incapable of ratification.

101.    The Scio Individual Derivative Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Scio. If there is a directors' and officers' liability insurance policy covering the Scio Individual Derivative Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Scio Individual Derivative Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Scio Individual Derivative Defendants were to sue themselves or certain of the officers of Scio, there would be no directors' and officers' insurance protection. Accordingly, the Scio Individual Derivative Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Scio Individual Derivative Defendants is futile and, therefore, excused.

102.    If there is no directors' and officers' liability insurance, then the Scio Individual Derivative Defendants will not cause Scio to sue the Scio Individual Derivative Defendants named herein. If they did, they would face uninsured individual liability. Accordingly, demand is futile and excused.

103.    For the reasons noted above, none of the four current members of the Board could consider a demand with disinterestedness and independence. Accordingly, a demand on the Board

is futile and excused.

## **CLASS ACTION ALLEGATIONS**

104.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of a proposed Class defined as:

> All Scio shareholders who became Adamas shareholders pursuant to the Adamas Transaction.

105.     Excluded from the Class are: (a) the Scio Individual Derivative Defendants, Adamas Derivative Defendants and Adamas Class Action Defendants (collectively "Defendants"), Defendants' family members and/or entities controlled by any Defendant and/or Defendants' family members, and all heirs, successors or assigns, and any of Adamas and/or Scio officers, directors and employees; their affiliates and affiliates' of their officers, directors and employees; (b) Plaintiff's Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude  themselves from the Class.

106.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims. Class members are also readily ascertainable from the records of Scio and/or Adamas.

107.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The precise number of members of the proposed class is unknown to Plaintiff at this time, but, based on information and belief and publicly available reports, members of the Class ("Class Members") number at the very least in the of thousands  of people. Therefore, the Class is so numerous that joinder of all members

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

would be impracticable. All Class Members may be notified of the pendency of this action based on stock records maintained by Adamas and/or Adamas' agent.

108. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This Class Action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including:

a. Whether the Adamas Class Action Defendants withheld from Plaintiff and the Class that they had become Adamas shareholders in September 2019 via the secret distribution;

b. Whether the Adamas Individual Class Action Defendants breached their fiduciary duties to plaintiff and the Class by failing to keep Plaintiff and the Class informed about Scio and/or Scio shareholders' investment in Adamas stock when they became Adamas shareholders (which they did not even know about to this day);

c. Whether the Adamas Class Action Defendants engaged in self-dealing by reducing the number of Adamas shares received by Scio and its shareholders from 900,000 to 800,000 as provided for by the Second Addendum;

d. Whether the Second Addendum and amended Lock-Up/Leak Out Provision are null and void because Adamas Individual Class Action Defendant McGuire had a direct conflict, rendering both not arms-length transactions;

e. whether Plaintiff and the Class have been damaged and, if so, the extent of such damages; and

f. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to, injunctive relief.

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

109.    The Adamas Class Action defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

110.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of Class Members because, among other things, Plaintiff and the other Class Members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on his own behalf and on the behalf of other Class Members, and no defense is available to the Adamas Class Action Dfendants that is unique to Plaintiff.

111.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of other Class Members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

112.    **Predominance and Superiority—Federal Rule of Civil Procedure 23(b)(2) and (3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Adamas Class Action Defendants  and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and other Class Members are relatively small compared to the

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for the Class Members to individually seek redress for the Class Action Defendants' wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court .

113.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met as the Adamas Class Action Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

**<u>COUNT I</u>**

**Against the Scio Individual Derivative Defendants for Breach of Fiduciary Duties**

114.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

115.   Each Scio Individual Derivative Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Scio's business and affairs.

116.   Each of the Scio Individual Derivative Defendants violated and breached his fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

117.   The Scio Individual Derivative Defendants' conduct set forth herein was due to their bad faith and intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Scio Individual Derivative Defendant intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Scio.

51

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

118.    The Scio Individual Derivative Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein, rendering them personally liable to the Company for breaching their fiduciary duties.

119.    The Scio Individual Derivative Defendants had actual or constructive knowledge that as a result of their actions in knowingly or recklessly and in bad faith; (i) withholding from Scio shareholders the results of the shareholder vote on the Adamas Transaction, shareholder approval of which was a prerequisite to consummation of the Adamas Transaction, (ii) withholding from Scio shareholders whether the Adamas Transaction ever closed, (iii) closing the Adamas Transaction without informing Scio shareholders, (iv) breaching their fiduciary duties by: (a) not requesting Adamas register the 900,000 Adamas shares with the SEC post-closing in a timely fashion as part of the Amended Agreement and not informing Scio shareholders; (b) secretly distributing of the 900,000 shares of Adamas stock received by Scio on September 17, 2019; and (c) agreeing to and hiding the Second Addendum from Scio shareholders reducing the 900,000 Adamas shares to 800,000 shares and causing and/or permitting the Lock-Up/Leak Out Provision to be amended to the detriment of Scio and its shareholders; (v) not informing Scio and/or the Scio shareholders how their investment in the 900,000 shares of Adamas stock was performing, (vi) not informing Scio shareholders whether the Scio Individual Derivative Defendants secured debt was ever satisfied; (vii) not informing Scio shareholders whether the unsecured debt was ever satisfied; (viii) not communicating any financial information to Scio shareholders concerning Scio or Adamas post-closing of the Adamas Transaction, (ix) voluntarily permitting the Company's registration of its publicly traded shares with the SEC revoked; (x) causing and/or permitting the Company's corporate status in Nevada to be revoked and failing to place Scio assets in trust and act as trustees and/or dissolving the Company without a shareholder vote and/or providing notice

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

of the dissolution all in violation of a board's responsibilities pursuant to Nevada corporate law, (xi) engaging in related party transactions by buying diamonds from the Company for their own use; (xii) having made no attempt to contact shareholders after the Company's registration of its shares were revoked in August 2019 with any plans for the Company going forward; (xiii) causing the Company to have a default judgment entered against it and then paying over $60,000 to satisfy the default judgment and having Scio Individual Derivative Defendant McGuire, a non-lawyer, unsuccessfully appear in those proceedings and without informing Company shareholders; (xiv) failing to exercise Scio's right to provide comments to the Registration Statement and Final Prospectus prior to their filing. These actions were not a good-faith exercise of prudent business judgment and/or inaction by the Scio Individual Derivative Defendants to protect and promote the Company's corporate interests.

120.    As a direct and proximate result of the Scio Individual Derivative Defendants' breaches of their fiduciary obligations, Scio has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Scio Individual Derivative Defendants are liable to the Company.

121.    Plaintiff on behalf of Scio has no adequate remedy at law.

## <u>COUNT II</u>

### Against Scio Individual Derivative Defendants for Unjust Enrichment

122.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

123.    By their wrongful acts and violations of law that they made and/or caused to be made, the Scio Individual Derivative Defendants were unjustly enriched at the expense of, and to the detriment of, Scio.

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

124.     Plaintiff, as a shareholder and a representative of Scio, seeks restitution from the Scio Individual Derivative Defendants' and seeks an order from this Court for restitution — including from any insider sales, benefits, and payment of debt—obtained by the Scio Individual Derivative Defendants due to their wrongful conduct and breach of fiduciary duties.

125.     Plaintiff on behalf of Scio has no adequate remedy at law.

## COUNT III

**Against the Adamas Class Action Defendants for Breach of Fiduciary Duties**

126.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein. Each of the Adamas Derivative Defendants owed to Plaintiff and the Class the duty to exercise candor, good faith, and loyalty in connection with Plaintiff and the Class Members investment in Adamas stock.

127.     Each of the Adamas Class Action Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

128.     The Adamas Class Action Defendants' conduct set forth herein was due to their bad faith and intentional or reckless breach of the fiduciary duties they owed to Plaintiff and the Class, as alleged herein. The Adamas Class Action Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Plaintiff and the Class.

129.     The Adamas Class Action Defendants failed to correct and/or rectify any of the wrongs described herein, rendering them personally liable to Plaintiff and the Class for breaching their fiduciary duties.

130.     The Adamas Class Action Defendants  had actual or constructive knowledge that as a result of their actions in knowingly or recklessly and in bad faith: (i) failing to inform Plaintiff and the Class that they were Adamas shareholders pursuit to the secret distribution; (ii) failing to

inform Plaintiff and the Class concerning the Second Addendum and amended Lock-Up/Leak Out Provisions; (iii) entering into the Second Addendum and amending the Lock-Up/Leak Out Provisions to the detriment of Plaintiff and the Class; and (iv) providing no information to Plaintiff and the Class concerning the performance of Adamas. As a direct and proximate result of the Adamas Class Action Defendants' breaches of their fiduciary obligations, Plaintiff and the Class have sustained and continue to sustain significant damages. As a result of the misconduct alleged herein, the Adamas Class Action Defendants are liable to Plaintiff and the Class.

131.    Plaintiff and the Class have  no adequate remedy at law.

## COUNT IV

**Against the Adamas Derivative Defendants for Breach Contract and Conspiracy on Behalf of Scio**

132.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

133.    The Adamas Derivative Defendants entered into the Amended Agreement containing a provision that the Amended Agreement was the entire agreement unless amended by both parties. With knowledge that Adamas Individual Defendant McGuire was conflicted due to his position as Adamas COO, the Adamas Derivative Defendants amended the Amended Agreement in violation of the entire agreement provision.

134.    The Adamas Derivative Defendants conspired with the Scio Individual Derivative Defendants to enter into the the Second Addendum and amended Lock-Up/Leak-Out Provisions to the detriment of Scio and its shareholders.

135.    Scio was harmed as a result of the Adamas Derivative Defendants.

136.    Plaintiff on behalf of Scio has no adequate remedy at law.

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND CLASS ACTION COMPLAINT

## COUNT V

### Against the Adamas Derivative Defendants for Unjust Enrichment

137.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

138.    By their wrongful acts and violations of law that they made and/or caused to be made, the Adamas Derivative Defendants were unjustly enriched at the expense of, and to the detriment of Scio and its shareholders.

139.    Plaintiff seeks injunctive relief from the Adamas Derivative Defendants for an order from this Court including, but not limited to, declaring null and void the Second Addendum and amended Lock-Up/Leak Out Provisions —obtained by the Adamas Derivative Defendants due to their wrongful conduct.

140.    Plaintiff on behalf of Scio has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Scio, demands judgment as follows:

A. Declaring that Plaintiff may maintain the Derivative Action on behalf of Scio and that Plaintiff is an adequate representative of the Company;

B. Declaring that Plaintiff may maintain the Class Action on behalf of Plaintiff and the Class and that Plaintiff is an adequate representative of the Class;

C. Declaring that the Scio Individual Derivative Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Scio;

D. Declaring that the  Adamas Class Action Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Plaintiff and the Class;

E. Declaring that the Scio Individual Derivative Defendants have wrongfully harmed Scio

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

and its shareholders;

F.  Declaring that the Adamas Individual Derivative Defendants have wrongfully harmed Scio and its shareholders;

G.  Declaring that the Adamas Class Action Defendants have wrongfully harmed Plaintiff and the Class;

H.  Determining and awarding to Scio the damages sustained by it as a result of the violations set forth above from each of the Scio Individual Derivative Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

I.  Determining and awarding to Scio the damages sustained by it as a result of the violations set forth above from each of the Adamas Derivative Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

J.  Determining and awarding to Plaintiff and the Class the damages sustained by them as a result of the violations set forth above from each of the Adamas Class Action Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

K.  Directing Scio and the Scio Individual Derivative Defendants to take all necessary actions to maximize shareholder value by declaring a special dividend of any monies recovered by Scio in the Derivative Action;

L.  Determining and awarding to Scio the damages sustained by it as a result of the violations set forth above from each of the Adamas Derivative Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

M.  Awarding Scio injunctive relief from the Scio Individual Derivative Defendants and the Adamas Derivative Defendants, and each of them including, but not limited to, declaring the Second Addendum and amended Lock-Up/Leak Out Provisions null and void

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

N.  Awarding Scio and/or Plaintiff and the Class the costs and disbursements of the Action, including reasonable attorneys' and experts' fees, costs, and expenses; and

O.  Granting such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: January 20, 2023                    Respectfully submitted,

                                    _/s/ Martin A Muckleroy_____
                                    Martin A. Muckleroy
                                    State Bar #9634
                                    **MUCKLEROY LUNT, LLC**
                                    6077 S. Fort Apache Rd., Ste 140
                                    Las Vegas, NV 89148
                                    Telephone: 702-907-0097
                                    Facsimile: 702-938-4065
                                    Email: martin@muckleroylunt.com


                                    **EVANGELISTA WORLEY, LLC**
                                    James Evangelista
                                    Stuart J. Guber
                                    500 Sugar Mill Rd, Bldg. A, Ste. 245
                                    Atlanta, GA 30350
                                    Telephone: 404-205-8400
                                    Facsimile: 404-205-8395
                                    jim@ewlawllc.com
                                    stuart@ewlawllc.com

VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
CLASS ACTION COMPLAINT

# CERTIFICATE OF SERVICE

1
2
3          I hereby certify that on the 20th day of January, 2023, I personally served a true and correct

4    copy of the foregoing VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE

5    COMPLAINT AND CLASS ACTION COMPLAINT on all parties by causing a true and correct
6
7    copy to be filed with the court's CM/ECF system, which should automatically send a copy to all

8    counsel of record.
9
10
11   Dated: January 20, 2023                    _____ */s/ Martin A Muckleroy* _____

12                                              Martin A. Muckleroy
                                                State Bar #9634
13                                              **MUCKLEROY LUNT, LLC**
                                                6077 S. Fort Apache Rd., Ste 140
14                                              Las Vegas, NV 89148
                                                Telephone: 702-907-0097
15                                              Facsimile: 702-938-4065
                                                Email: martin@muckleroylunt.com
16
17
18
19
20
21
22
23
24
25
26
27
28                                    59
              VERIFIED SECOND AMENDED STOCKHOLDER DERIVATIVE COMPLAINT AND
                                CLASS ACTION COMPLAINT