Mary E. Bacon, Esq.
(NV Bar No. 12686)
SPENCER FANE LLP
300 S. Fourth Street, Suite 950
Las Vegas, NV 89101
Telephone: (702) 408-3400
Facsimile (702) 408-3401
Email: mbacon@spencerfane.com

*Attorneys for Defendants Bernard McPheely,*
*Karl Leaverton, Gerald McGuire and Lewis Smoak*

(Additional Counsel on Signature Page)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| THEODURUS STROUS, DERIVATIVELY ON BEHALF OF SCIO DIAMOND TECHNOLOGY CORP., <br><br> Plaintiff, <br><br> v. <br><br> BERNARD MCPHEELY, KARL LEAVERTON, GERALD MCGUIRE, LEWIS SMOAK, ADAMAS ONE CORP. and JOHN G. GRDINA, <br><br> Defendants, <br><br> and <br><br> SCIO DIAMOND TECHNOLOGY CORP., <br><br> Nominal Defendant. | Case No. 22-cv-00256-JCM-EJY <br><br><br><br><br><br> **MOTION TO DISMISS SECOND AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> *[Filed concurrently with Declaration of John A. Sullivan]* |

Individual Defendants Bernard McPheely, Karl Leaverton, Gerald McGuire and Lewis Smoak ("Individual Defendants" and collectively with Scio, "Scio Defendants") respectfully submit this Motion to Dismiss Theodorus Strous's ("Plaintiff") Verified Second Amended Stockholder Derivative Complaint and Class Action Complaint ("SAC") as it relates to the Scio Defendants under Federal Rules of Civil Procedure 8, 12(b)(6), and 23.1.

This Motion is based on the files and pleadings in this matter, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of John A. Sullivan, and any such oral argument as the Court may permit.

Respectfully submitted this 17th day of February, 2023.

**SPENCER FANE LLP**

Mary E. Bacon (NV Bar No. 12686)
300 S. Fourth Street, Suite 950
Las Vegas, NV 89101

and

**BEST & FLANAGAN LLP**

By:   */s/ John A. Sullivan*
Amy S. Conners
John A. Sullivan
Brian Linnerooth
60 South Sixth Street, Suite 2700
Minneapolis, Minnesota 55402
Telephone: (612) 339-7121
Facsimile: (612) 339-5897

*Attorneys for Defendants Bernard
McPheely, Karl Leaverton, Gerald
McGuire and Lewis Smoak*

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

## MEMORANDUM AND POINTS OF AUTHORITIES

## INTRODUCTION

This is a derivative action brought by shareholder Plaintiff on behalf of Scio Diamond Technology Corp. ("Scio"). Defendants Bernard McPheely, Karl Leaverton, Lewis Smoak, and Gerald McGuire (collectively, the "Scio Defendants") are former directors and officers of the Scio. The SAC alleges claims for breach of fiduciary duty and unjust enrichment against the Scio Defendants. But as explained fully below, the action should be dismissed because: 1) Plaintiff has not pled a legally sufficient excuse for failing to make a pre-suit demand on the Scio Defendants (the board of directors); and 2) the SAC fails to allege facts that would support any reasonable inference that any of the Scio Defendants' conduct involved "intentional misconduct, fraud or a knowing violation of law"—an appreciably higher standard than gross negligence.

In short, this action rises out of a shareholder's dissatisfaction with an asset purchase agreement that was fully disclosed to all Scio Shareholders and approved by a quorum of Scio shareholders. But Plaintiff fails to claim—much less identify any supporting facts—that Scio Defendants' actions are a "product of fraud or self-interest" or that the Scio Defendants "failed to exercise due care in reaching the decision" in order to rebut the business judgment rule. *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark,* 133 Nev. 369, 377, 399 P.3d 334, 343 (2017) (citing Joseph F. Troy & William D. Gould, *Advising & Defending Corporate Directors and Officers* § 3.15 (Cal CEB rev. ed. 2007)).

Plaintiff's claims related to the transaction are without basis and fail for three reasons.

*First*, Plaintiff fails to adequately plead demand futility, which is required for his derivative claims.

*Second*, Plaintiffs fails to rebut the business judgment rule, which inoculates the Scio Defendants from the alleged breaches of fiduciary duty. Nevada law is clear that in order to state a

claim for breach of fiduciary duty, Plaintiff is required to allege the Scio Defendants actions violated NRS § 78.138(7). Plaintiff's failure to do so requires the dismissal his breach of fiduciary duty claim.

Rather than allege Scio Defendants violated NRS § 78.138(7), Plaintiff takes a "kitchen sink" approach and alleges more than a dozen actions and inactions by Scio that "were not a good-faith exercise of prudent business judgment and/or inaction" ranging from "breaching their fiduciary duties" to "engaging in related party transactions by buying diamonds from [Scio]." (SAC at ¶ 119.) However, none of the actions and inactions Plaintiff alleges is sufficient to make out a claim for breach of fiduciary duty. Specifically, as to each alleged action and inaction, Plaintiff failed to allege facts sufficient to show, that (1) the business judgment rule is rebutted; (2) that the Scio Defendants breached their fiduciary duties; and that (3) the breach involved "intentional misconduct, fraud or a knowing violation of law." NRS § 78.138(7). Further, Plaintiff fails to identify actual *knowledge* by the Scio Defendants for the wrongdoings—a requirement that is a now cornerstone of Nevada breach of fiduciary duty case law following *Chur v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*. 136 Nev. 68, 458 P.3d 336 (2020).

*Third*, Plaintiff fails to plead an actionable claim for unjust enrichment.

There is no reason for this litigation to move forward. The Complaint should be dismissed because Plaintiff fails to adequately plead—and altogether lacks a claim as a matter of law for—demand futility, breach of fiduciary duty, and unjust enrichment, Plaintiff's SAC should be dismissed under Rule 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Scio is a Nevada Corporation that was previously involved in manufacturing high quality, lab-grown diamonds. (SAC ¶ 21.) Scio's board of directors consisted of Bernard McPheely, Karl Leaverton, Lewis Smoak, and Gerald McGuire (collectively, the "Scio Defendants"). (SAC ¶ 22-

25.) For reasons unrelated to this action, Scio ceased active production of lab-grown diamonds around October of 2017. (SAC ¶¶ 39, 51.) After ceasing production, Scio Defendants looked for different avenues of funding. From the fall of 2017 and into early 2018, Scio engaged a boutique investment firm to help develop and shop a special investment vehicle (Special Purpose Vehicle, SPV) and consider various license agreements; considered a strategic licensing deal with a diamond producer; and considered debt restructuring. (SAC ¶¶ 40-41; Sullivan Decl. Ex. C (Scio, Proxy Statement (Form PRE 14A), at 8 (Feb. 8, 2019)).)[1] During late 2017 and 2018, Scio had strategic discussions with six separate groups, but eventually struck a deal with Adamas One Corp. ("Adamas"), a Nevada entity created to acquire Scio's technology for creating high quality, lab-grown diamonds. (SAC ¶¶ 2, 21, 26, 42-43; Sullivan Decl. Ex. C.)

Primarily at issue in Plaintiff's SAC is whether the Scio Defendants acted within their fiduciary duties relating to the asset sale of Scio to Adamas in connection with a November 30, 2018 Asset Purchase Agreement that was fully disclosed in a December 11, 2018 Form 8-K and subsequent Amended Asset Purchase Agreement ("Adamas Transaction") and the February 8, 2019 Preliminary Proxy Statement.

A quorum of shareholders voted on and approved the Adamas Transaction on August 6, 2019, at a special meeting. (Sullivan Decl. Ex. F (Adamas, Preliminary Prospectus (Form S-1), at F-22, (May 31, 2022).) Plaintiff does not allege that the Adamas Transaction was not approved by a majority of the shareholders.

On December 11, 2018, Scio filed a Form 8-K with the SEC announcing a November 30, 2018 Asset Purchase Agreement with Adamas (SAC ¶ 44; Sullivan Decl. Ex. A (Scio, Current Report (Form 8-K) (Dec. 11, 2018)).) Scio filed another Form 8-K on February 7, 2019, which

---

[1] Scio and Adamas SEC filings are attached to the Declaration of John A. Sullivan ("Sullivan Decl."). "SEC filings are judicially noticeable documents which may be considered on a motion to dismiss." *Richardson v. Oppenheimer & Co. Inc.*, No. 2:11-cv-02078-GMN, 2014 WL 1304343, at *3 (D. Nev. Mar. 31, 2014) (internal citations omitted).

disclosed the terms of an Amended Asset Purchase Agreement Scio entered into with Adamas on February 4, 2019, the consummation of which required shareholder approval. (SAC ¶ 47; Sullivan Decl. Ex. B (Scio, Current Report (Form 8-K) (Feb. 7, 2019)).) Contrary to Plaintiff's assertion, the public SEC filings never included stock valued at $5.8 million as part of the agreement; rather, the filings describe satisfaction of secured debt in the amount of $3.3 million, issuance of 350,000 shares, and 900,000 shares to be distributed to the shareholders. (SAC ¶ 44; *but see* Sullivan Decl. Ex. A (Scio, Current Report (Form 8-K) (Dec. 11, 2018)); Sullivan Decl. Ex. B (Scio, Current Report (Form 8-K), at 2 (Feb. 7, 2019)).)

The following day, on February 8, 2019, Scio filed a Preliminary Proxy Statement with the SEC detailing the terms of the Adamas Transaction. (Sullivan Decl. Ex. C). The Preliminary Proxy Statement disclosed that the five directors and officers (which included the Individual Defendants) held a total of $165,000.00 of secured debt of Scio, and would receive payment in full from Adamas. (*Id.* at 7). Scio outlined other details of the Amended Asset Purchase Agreement in the Preliminary Proxy Statement, including issuance of 1,250,000 shares of Adamas common stock, 350,000 of which were to be used to generate cash to settle unsecured debt and 900,000 of which were expected "to be held by the Company indefinitely, and are subject to the terms of a Registration Rights Agreement…" (*Id.* at 1, 6). The Preliminary Proxy Statement also outlined that registration of the 900,000 shares was to be done in stages by Adamas and provided Lock-Up/Leak Out Provisions. (*Id.* at 3).

A Final Proxy Statement was filed on May 17, 2019, which accurately disclosed that due to Scio's financial position, diamond materials were purchased by a group including three of the Individual Defendants, and that cash advances and Add-On Notes were provided by all four Individuals Defendants. (Sullivan Decl. Ex. D (Scio, Definitive Proxy Statement (Form DEF 14A), at 25-26 (May 17, 2019)).) Additionally, the Final Proxy Statement disclosed that the 900,000

Adamas shares would be held by Scio, at Scio's Board of Directors' discretion, and it provided a schedule under which Adamas, at Scio's request, would file registration statements with the SEC to permit the resale or distribution of the Adamas shares after the closing. (*Id.* at 7, B-2). The Final Proxy Statement again advised that the sale transaction was contingent on a majority approval of the shareholders. (*Id.* at 2 of Stockholder Letter).

The shareholder vote was scheduled for June 7, 2019, but then rescheduled for August 6, 2019, at which time the sale was approved by a quorum of the shareholders. (*See* SAC ¶ 52; Sullivan Decl. Ex. F (Adamas, Preliminary Prospectus (Form S-1), at 1, (May 31, 2022)).) On August 8, 2019, following the shareholder vote, Scio and the SEC entered into a settlement agreement, under which the registration of Scio's securities was revoked. (SAC ¶ 58; Sullivan Decl. Ex. E (Scio, Order Pursuant to Section 12(j) (Revocation Order) (Aug. 9, 2019)).)

The Adamas shares were issued to Scio on September 17, 2019, and the Adamas Transaction closed on October 17, 2019. (Sullivan Decl. Ex. F (Adamas, Preliminary Prospectus (Form S-1), at 1, II-2 (May 31, 2022)).) Plaintiff admits that the Adamas shares "had been distributed sometime in September of 2019." (SAC ¶ 61.) Scio's corporate status was revoked in October of 2019. (SAC ¶ 69.) However by this time, the Scio asset sale had already been approved by the shareholders, and the Adamas shares had been issued.

On February 3, 2020, Scio and Adamas executed a Second Addendum to the Asset Purchase Agreement, maintaining the same number of shares of Adamas stock (1,250,000) but reducing the number of shares subject to the Registration Rights Agreement from 900,000 to 800,000. (SAC ¶¶ 62-63; Sullivan Decl. Ex. G (Adamas, Preliminary Prospectus (Form S-1), at Exhibit 1.2 (b), Second Addendum (May 31, 2022)).) The shares were reduced from 900,000 to 800,000 because the property owner Hughes Development had taken Scio to court to collect past due rent and had placed a lien on all of the assets. Scio was responsible for 50 percent of the past due rent (Adamas

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

was liable for the other 50 percent). In an effort to prevent everything from unraveling, Scio forfeited a 100,000 shares to cover its portion of past due rent and Adamas paid Hughes Development for its share and it removed the lien from the assets.  On March 31, 2020, the Scio defendants resigned from the board.

Plaintiff's recitation of these facts wholly fails to include any facts that rebut the business judgment rule or the requirements set out by *Chur* and NRS § 78.135(7).

## ARGUMENT

### I.   Legal Standard

Defendants seek dismissal of Plaintiff's SAC pursuant to Fed. R. Civ. P. 23.1, and alternatively, under Fed. R. Civ. P. 12(b)(6).

Under Federal Rule of Civil Procedure 23.1(b)(3), a shareholder asserting a derivative claim must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." (Emphasis added.) Where, as here, a shareholder fails to make a pre-suit demand, the shareholder must allege sufficient facts to show a demand would have been futile. *Arduini v. Hart,* 774 F.3d 622, 628 (9th Cir. 2014).

Dismissal is also appropriate under Rule 12(b)(6) where a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard

"asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And although the Court must take all factual allegations as true at the motion to dismiss stage, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555.

Because Plaintiff fails to meet the heightened pleading standard for demand futility and fails to state cognizable claims for breach of fiduciary duty and unjust enrichment, his claims should be dismissed.

## II.   Plaintiff fails to satisfy Nevada's heightened pleading standard for demand futility that would give rise to a reasonable doubt that a majority of the Board could respond independently to a demand.

A shareholder seeking to sue derivatively on behalf of a corporation must demand action from the corporation's directors or plead with particularity why a demand was futile. *See Shoen v. SAC Holding Corp.,* 122 Nev. 621, 641, 137 P.3d 1171, 1179 (2006), *abrogated on other grounds by Chur,* 458 P.3d at 336. The pre-suit-demand requirement is only excused if the plaintiff demonstrates in his complaint that the demand would have been futile. *Id.* at 1184.

Plaintiff admits they made no pre-suit demand on the Scio board. (SAC ¶ 90.) Therefore, Plaintiff must plead particular facts that substantiate why the board in place when Plaintiff filed could not independently assess a demand that the Company file suit. Plaintiff's main theory—that the directors were too conflicted to exercise independent judgment—is not supported by Plaintiff's own allegations.

Federal Rule of Civil Procedure 23.1 provides a "heightened pleading standard," for federal derivative actions. This heightened pleading burden "is . . . more onerous than that required to withstand a Rule 12(b)(6) motion." *Jacobi v. Ergen,* No. 212CV02075JADGWF, 2016 WL 1089232, at *3 (D. Nev. Mar. 17, 2016) (internal citation omitted). Because Plaintiff admits he did not make a demand, he needed to "plead with particularity the reasons why such demand would have been futile." *Arduini v. Hart,* 774 F.3d 622, 628 (9th Cir. 2014). He failed.

Nevada has adopted Delaware's two demand futility tests, namely the *Aronson* test from *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), and the *Rales* test from *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). *See Shoen v. SAC Holding Corp.,* 122 Nev. 621, 641, 137 P.3d 1171, 1184 (2006), *abrogated on other grounds by Chur,* 458 P.3d at 336. Courts use the *Aronson* test when a claimant's allegations relate to a board action to determine if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. In contrast, the *Rales* test is applied when there is an alleged failure to act and instead focuses solely on the issue of conflict. *Rales*, 634 A.2d at 934. Under the *Rales* test, "the *particularized factual allegations* . . . [must] create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.*

Courts have observed, however, that both tests functionally "amount to the same analysis because they both evaluate whether directors are disinterested and independent." *In re Allegiant Travel Co. S'holder Derivative Litig.*, No. 218CV01864APGDJA, 2020 WL 7491073, at *4 (D. Nev. Dec. 18, 2020). Nevada law further explains the difference between the two tests as "interestedness [due to] potential liability can be shown only in those 'rare case[s] . . . where defendants' actions were so egregious that a substantial likelihood of director liability exists.'" *Shoen,* 137 P.3d at 1184 (quoting *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995)). Plaintiff's kitchen-sink allegations fail under either test.

The Nevada Supreme Court's *Chur* decision makes clear that NRS § 138(7) "provides the sole avenue" for assessing director liability. 458 P.3d at 340. Under NRS § 78.138(7), "a director or officer is not individually liable . . . for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless" the claimant rebuts the business judgment rule

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

presumption and proves the act or failure to act was a breach of fiduciary duty that "involved intentional misconduct, fraud or a knowing violation of law." Further, to show "intentional misconduct" or a "knowing violation of law," a "claimant must establish that the director or officer had knowledge that the alleged <u>conduct</u> was wrongful." *Chur,* 458 P.3d at 342 (emphasis added) (dismissing derivative complaint for failing to plead directors knew their conduct was wrongful).

Thus, in order to avoid the pre-suit demand requirement, Plaintiff must rebut of the business judgment rule *and* establish that the Scio Defendants acted with knowledge that the alleged conduct was wrongful—a task the Plaintiff barely attempted and falls far short of achieving. Plaintiff's failure to sufficiently plead compliance with the demand requirement deprives Plaintiff of standing and warrants the dismissal of his SAC. *Shoen,* 137 P.3d at 1180 (2006).

Plaintiff's allegations (SAC ¶¶ 89 through 103) wholly fail to satisfy Nevada's high standard for pleading demand futility. Plaintiff admits that it needs to adequately allege demand futility as to at least two of the four directors on the Board at the time this derivative action was commenced, SAC ¶ 90, but it has failed to even allege demand futility with respect to a single Scio Defendant.

The SAC alleges four reasons for demand futility: 1) Scio Defendants face substantial likelihood of liability as a result of breaching their fiduciary duties to the Company (SAC ¶ 96); 2) Scio Defendants engaged in related party transactions (SAC ¶ 97); 3) Defendant McGuire is the COO of Adamas (*id.*); and 4) Scio Defendants would be unwilling to sue themselves. (SAC ¶¶ 96-102.) Despite the SAC's prolixity and repetition, Plaintiff has not pleaded particularized facts that cause a reasonable doubt regarding the independence of the Scio directors—much less a majority of them.

*First*, Plaintiff's allegations that Scio Defendants face substantial liability as a result of their actions is without merit. Plaintiff's futility demand allegations regarding potential liability mirror

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

Plaintiff's allegations relating to Scio Defendant's breach of fiduciary duties. (*See* SAC ¶¶96, 119.) And as discussed in Section III below, Plaintiff wholly fails to state a cognizable claim for breach of fiduciary duty, so Scio Defendants do not face any liability, let alone substantial liability. For instance, Plaintiff makes identical allegations in the SAC Paragraphs 96 (demand futility) and 119 (breach of fiduciary duty), and makes no effort to rebut the business judgment rule by claiming the allegations were the products of fraud, self-interest, or a failure to exercise due care. Nor does Plaintiff allege that the Scio Defendants had "knowledge of wrongdoing" relating to the allegations, as required under *Chur.* 458 P.3d at 342. Plaintiff's hollow assertion that Scio Defendants' "actions were not a good-faith exercise of prudent business judgment," is insufficient, as is Plaintiff's assertion that Defendants "had actual or constructive knowledge that as a result of their actions in knowingly or recklessly and in bad faith…" (SAC ¶¶ 96, 119); *Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 68 (D.C. Cir. 1988) (Rule 23.1 "requires substantially more than Rule 8(a) notice pleading," and "[m]ere allegations of improper motives are especially inadequate when the challenged action is not *facially* suspect . . . .") In reciting these empty statements, Plaintiff ignores the requirements of Rule 23.1 and NRS § 78.138(7).

 *Second*, Plaintiff's allegations that Scio Defendants engaged in "related party transactions" is not sufficient for demand futility. (SAC ¶ 97.) Specifically, Plaintiff alleges Scio provided Add-On Notes, which the Scio Defendants participated in, resulting in secured debt, which was satisfied in the Adamas Transaction. (*Id.*) But Plaintiff admits these "related party transactions" were disclosed prior to the shareholder vote approving the Adamas Transaction in Scio's Final Proxy Statement in May of 2019, and fails to establish how disclosure of these transactions were the result of wrongful conduct. *Chur*, 458 P.3d at 342); *see also Guzman v. Johnson,* 483 P.3d 531, 538 (2021) (affirming dismissal of breach of fiduciary and rejecting argument that inherent fairness standard can be used to rebut business judgment rule.) The *Guzman* court made clear that allegations that a

director was self-interested in a transaction alone are not sufficient to rebut the business judgment rule's presumption of good faith. *Guzman*, 483 P.3d at 538. Indeed, it is difficult to see how the *disclosure* of these transactions *before to the shareholder vote* could ever be labelled as occurring in bad faith.

*Third*, Plaintiff alleges that "[Individual Defendant] McGuire is COO of Adamas leaving no doubt about his lack of independence." (SAC ¶ 97.) But simply including a conclusory allegation regarding an alleged lack of independence is not sufficient. Instead, Nevada law dictates that interest or lack of independence must be established through Plaintiff showing that there is a "substantial likelihood" that the Scio Defendants are liable. *Shoen,* 137 P.3d at 1184. Plaintiff fails to include any allegations that show that any Scio Defendant's present capacity at a new company has any bearing on the likelihood of his liability.

*Fourth*, Plaintiff alleges that the Scio Defendants would be unwilling to sue themselves. (SAC ¶¶ 101, 102.) Plaintiff claims that Scio Defendants *may* be protected against personal liability through D&O insurance and *if* there is D&O insurance *it may* contain an "insured-versus-insured exclusion." (SAC ¶ 101.) These are Plaintiff's speculations, not facts. Without *specific* supporting details supporting a "substantial likelihood of director liability," these allegations are deficient. *See Shoen*, 137 P.3d at 1183 ("Allegations of mere threats of liability . . . do not show sufficient interestedness to excuse the demand requirement."); *In re Sagent Tech.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) ("A plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors . . . would be reluctant to sue themselves.'")

Plaintiff's failure to plead with sufficient particularity facts that show a majority of Individual Defendants lacked the ability to impartially consider his pre-suit demand requires the dismissal of Plaintiff's claims under Fed. R. Civ. P. 23.1.

### III. <u>Plaintiff's breach of fiduciary duty allegations fail as a matter of law.</u>

Plaintiff's failure to state a cognizable breach of fiduciary duty claim provides further basis to dismiss his claims. As discussed above, NRS § 78.138(7) requires a two-step analysis. The first step requires Plaintiff to rebut the business judgment rule, which presumes "directors and officers . . . act in good faith, on an informed basis and with a view to the interests of the corporation" in deciding upon matters of business. NRS § 78.138(3). Should Plaintiff successfully rebut the business judgment rule, the second step requires Plaintiff to show the Individual Defendants' alleged action or inaction constitutes "a breach of his or her fiduciary duties," *and* that breach must further involve "intentional misconduct, fraud or a knowing violation of law." NRS § 78.138(7)(b)(1)-(2).

The business judgment rule provides that, "in deciding upon matters of business," corporate directors "are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." NRS § 78.138(3). This "ensures that courts defer to the business judgment of corporate executives." *Wynn,* 399 P.3d at 344. Further, it prevents a court "from reviewing the substantive reasonableness of a board's business decision." *Id.* at 343. A Nevada court "will not second-guess" corporate directors' decisions. *Id.* at 377 (quotation marks, citation, and brackets omitted). In fact, "even a bad decision is generally protected by the business judgment rule." *Shoen,* 137 P.3d at 1181.

In order to rebut the business judgment rule and before moving to the second step of the analysis, Plaintiff must establish that the Scio Defendants' actions were the "product of fraud or self-interest" or they "failed to exercise due care in reaching the decision." *Wynn,* 399 P.3d at 343 (internal citations and quotations omitted). But even if Plaintiff is able to rebut the business judgment rule, he then must also show that the Scio Defendants breached their fiduciary duties *and* that the breaches involved "intentional misconduct, fraud or a knowing violation of law." NRS § 78.138(7)(b)(1)-(2); *Chur,* 458 P.3d at 338; *Wynn,* 399 P.3d at 342. Gross negligence

and "factual knowledge" are not sufficient to establish liability under NRS § 78.138(7). *Chur*, 458 P.3d at 341-342. Rather, Plaintiff is required to show Scio Defendants had "knowledge of wrongfulness" with regard to their actions or inactions. *Id.* at 342 (citation omitted).

The *Chur* Court noted that "[t]o give the [NRS 8.138(7)] statute a realistic function, it must protect more than just directors (if any) who did not know what their actions were; it should protect directors who knew what they did but not that it was wrong." 458 P.3d at 342 (quoting *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1233 (10th Cir. 2016)). The Court also noted that "knowledge of wrongdoing is "an appreciably higher standard than gross negligence." *Id.* at 342. The SAC comes nowhere close to satisfying this standard. It alleges no particularized facts at all that any individual director had "knowledge of wrongdoing."

Rather than allege Scio Defendants violated NRS § 78.138(7), Plaintiff takes a "kitchen-sink" approach and alleges more than a dozen actions and inactions by Scio that "were not a good-faith exercise of prudent business judgment and/or inaction" ranging from "breaching their fiduciary duties" to "engaging in related party transactions by buying diamonds from [Scio]." (SAC ¶ 119.) However, none of the actions and inactions Plaintiff alleges is sufficient to make out a claim for breach of fiduciary duty. Plaintiffs' allegations fall into the following categories: 1) alleged failure to communicate with shareholders; 2) alleged failure to file SEC filings; 3) reducing shares in the sale from 900,000 to 800,000; 4) allowing a default judgment to be entered against Scio; 5) alleged statutory violations; and 6) alleged failure to provide comments on the Adamas Registration Statement and Final Prospectus. In each of these categories, Plaintiff failed to allege particularized facts sufficient to show that Scio Defendants' actions involved "intentional misconduct, fraud or a knowing violation of law." NRS § 78.138(7).

**A. Failure to communicate allegations**

The vast majority of the alleged actions/inactions amount to the Scio Defendants not satisfying Plaintiff's invented standard of keeping him informed on a play-by-play basis after the Adamas Transaction shareholder vote. Plaintiff's allegations include the Scio Defendants:

- withheld the results of the shareholder vote (SAC ¶119 (i));

- withheld whether the Adamas Transaction closed (*id.* at ¶119 (ii)) and the corresponding, and in part contradictory, "closing" of the Adamas Transaction without informing Scio shareholders (*id.* at ¶119(iii));

- the alleged distribution of the 900,000 Adamas shares received by Scio shareholders (*id.* at ¶119 (iv)(b));

- not informing Scio shareholders how the Adamas stock was performing (*id.* at ¶119 (v));

- not informing Scio shareholders whether Scio's secured and unsecured debt was satisfied (*id.* at ¶119 (vi) and (vii));

- buying diamonds "for [Scio Defendants'] own use" (*id.* at ¶113 (xiii));

- not communicating "financial information" post-closing of the Adamas Transaction (*id.* at ¶113 (viii)); and

- not contacting shareholders after the registration of shares was revoked "with any plans for the Company going forward." (*id.* at ¶119 (xii)).

As evident from the list of complaints, none of these alleged failures of communication rise to the level of rebutting the business judgment rule much less that the Scio Defendants had "knowledge of wrongdoing" in their lack of communication. *Chur,* 458 P.3d at 342. *See In re Amerco Derivative Litig.*, 127 Nev. 196, 225, 252 P.3d 681, 701 (2011) ("simply alleging . . .[a

disclosure] . . . did not contain enough information . . . does not demonstrate that respondents engaged in intentional misconduct or fraud.")

Moreover, Plaintiff fails to explain how any of the diamond purchases are relevant to any claim for breach of fiduciary duty when these transactions were indisputably disclosed to Scio's shareholders in May of 2019 prior to the shareholder vote. *See Dohmen v. Goodman,* 234 A.3d 1161, 1168 (Del. 2020) (holding that when directors request a discretion shareholder action such as approving a corporate action, the directors must "disclose fully and fairly all material facts within their control bearing on the request.") Thus, shareholders were aware of this fact when they voted on and approved the Adamas Transaction. Further, the May 2019 Final Proxy Statement explains that the purchases were made, along with cash advances, "to pay certain minimal obligations of the Company." (Scio, Definitive Proxy Statement (Form DEF 14A), at 25-26 (May 17, 2019)); *See Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1285 (Del. 1994) (rejecting argument that the director and chairman's abstention should have been disclosed "more emphatically" in the proxy statement where proxy statement disclosed the abstention and reasoning for the same.)

In addition to disclosing the diamond purchases, the fact that the secured and unsecured debt would be satisfied or settled as a result of the Adamas Transaction was also disclosed to shareholders in December 2018, February of 2018, and yet again in May of 2019. (*See* Sullivan Decl. Ex. A (Scio, Current Report (Form 8-K) (Dec. 11, 2018)); Sullivan Decl. Ex. C (Proxy Statement (Form PRE 14A), at 2, 6-7 (Feb. 8, 2019)); Sullivan Decl. Ex. D (Scio, Definitive Proxy Statement (Form DEF 14A), at 2, 6-7 (May 17, 2019)).) These complaints, along with the additional vague allegations that the Scio Defendants failed to update shareholders post-vote, amount to Plaintiff complaining about the Scio Defendants failing to hold Plaintiff's hand throughout the Adamas Transaction—but such "handholding" has no basis in law. In fact, a fiduciary duty to disclose does not require a "needlessly cumulative 'play-by-play'" of negotiations or events leading up to a transaction. *Dent v. Ramtron*

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

*Int'l Corp.,* No. CIV.A. 7950-VCP, 2014 WL 2931180, at *15 (Del. Ch. June 30, 2014); *City of Miami Gen. Emps. v. Comstock*, No. CV 9980-CB, 2016 WL 4464156, at *15 (Del. Ch. Aug. 24, 2016), *aff'd on other grounds sub nom. City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. Comstock*, 158 A.3d 885 (Del. 2017) ("Delaware law does not require disclosure of a play-by-play of negotiations leading to a transaction or of potential offers that a board has determined were not worth pursuing.); *See also Shoen,* 137 P.3d at 1178 1183–84, 1186 (adopting Delaware law regarding demand futility and looking to Delaware case law for definition of fiduciary duties.)

If the Scio Defendants were not required to provide a play-by-play of every action *leading up to* the Adamas Transaction, it necessarily follows that they were not required to provide at play-by-play following an indisputably fully-informed shareholder vote approving the Adamas Transaction, when the Scio Defendants were not requesting any additional stockholder action such as a vote.

Delaware's Supreme Court had the opportunity to address communications to shareholders in contexts "not associated with a request for stockholder action." *Dohmen,* 234 A.3d at 1168. The *Dohmen* Court held that in these situations—specifically situations "such as when directors make periodic financial disclosures required by securities laws,"—there was no fiduciary duty of disclosure. *Id.* 1168-69. While, there is a duty to "deal honestly with stockholders," in these contexts, in order to have breached a fiduciary duty, "the directors must have knowingly disclosed false information." *Id.* at 1169. The purpose of requiring this scienter is to "distinguish innocent or negligent disclosure violations from those involving an intent to mislead stockholders." *Id.*

These alleged actions and inactions taken by Scio Defendants are entitled to the business judgment rule as Plaintiff failed to allege facts that these alleged wrongdoings are a "product of fraud or self-interest" or that the Scio Defendants "failed to exercise due care in reaching the

decision." *Wynn*, 399 P.3d at 343. Even if Plaintiff *could* rebut the entitlement to the business judgment rule, Plaintiff plead no allegations that Defendants' alleged failures to communicate involved intentional misconduct, fraud, or a knowing violation of law, thus, there would be no liability under Nev. Rev. Stat. § 78.138(7)(b).

### B. Failure to file SEC filings allegations

Plaintiff makes a number of allegations related to a lack of SEC filings. (SAC ¶ 119 (ix), (xii), (xiv); ¶ 39 (ii).) But failure to file SEC filings are matters of negligence. Directors do not have a fiduciary duty to file SEC filings. *Weinfeld v. Minor*, No. 314CV00513RCJWGC, 2016 WL 4487844, at *5 (D. Nev. Aug. 24, 2016) (holding that the failure "to file tax returns or SEC filings" amount to "matters of negligence" and the business judgment rule prevented claims against Defendants for "failing to make filings with the IRS, SEC, or other agencies…") Thus, having the registration of the Scio shares revoked for failure to file SEC filings and not informing the shareholders of the same, amounts to *at most* a claim of negligence. *See also Stewart v. Kroeker*, No. CV04-2130L, 2006 WL 167938, at *6 (W.D. Wash. Jan. 23, 2006) (holding that failure to file Form TA-1 was not "intentional misconduct, fraud or knowing violation of law" as required by NRS § 78.138.) Therefore, even if the Plaintiff rebutted the business judgment rule—which he did not— Nevada law is clear that this is a matter of negligence, which is insufficient to establish liability under NRS § 78.138(7). *See Chur*, 458 P.3d at 341-342.

### C. Share reduction allegations

Plaintiff alleges that Defendants breached their fiduciary duty by agreeing to and "hiding" the Second Addendum from Scio shareholders which reduced the 900,000 Adamas shares to 800,000, and by failing to request Adamas register the shares "in a timely fashion as part of the Amended Agreement" resulting in the shares being "diluted" (SAC ¶ 119(iv)(a) and (c).) But Plaintiff misstates the facts regarding the reduction in shares. The total shares distributed to Scio

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

shareholders did not reduce to 800,000, rather the amount of shares received in the transaction remained the same: 1,250,000. Scio Defendants only reduced the number of shares *subject to the Registration Rights Agreement* to 800,000. (Sullivan Decl. Exs. G-H (Adamas, Preliminary Prospectus (Form S-1), at Exhibits 1.2 (b) and 4.2, Second Addendum (May 31, 2022)).)

Further, the Registration Rights Agreement does not require Scio to request Adamas register the shares. (See Sullivan Decl. Ex. H (Exhibit 4.2 of the May 31, 2022 S-1).) Plaintiff also claims that the Scio Defendants allowed the Lock-Up/Leak Out Provision to be amended to the detriment of shareholders. (SAC ¶119 (iv)(c).) However, it is telling that Plaintiff makes no effort to explain *how* the Lock-Up/Leak Out amendment resulted in a detriment to the shareholders.

As with the other allegations, the execution and/or approval of the Second Addendum is a decision protected by the business judgment rule. Plaintiff failed to allege facts that the reduction of shares subject to the Registration Rights Agreement, lack of registering the shares, and the changes to the Lock-Up/Leak Out Provision were a "product of fraud or self-interest" or that the Scio Defendants "failed to exercise due care in reaching the decision." *Wynn,* 399 P.3d at 343. Plaintiff additionally fails to allege how these decisions involved intentional misconduct, fraud, or a knowing violation of law, thus, there would be no liability under Nev. Rev. Stat. § 78.138(7)(b). *In re Amerco Deriv. Litig.*, 127 Nev. 196, 224, 252 P.3d 681, 701 (2011).

**D. Default judgment allegations**

Plaintiff allege that the Defendants caused Scio to have a default judgment entered against it in the amount of over $60,000. (SAC ¶ 119(xiii).) But Plaintiff also acknowledges that Scio had a balance of over $700,000 with Best & Flanagan, and resolved the same for $133,000 (which included the default judgment). (SAC ¶¶ 77-79.) Taking on debt is not a breach of fiduciary duty, even where the company is insolvent. *In re Fedders N. Am., Inc.,* 405 B.R. 527, 541 (Bankr. D. Del. 2009). It is impossible to imagine how reducing a $700,000 debt to just over $133,000 and ultimately

satisfying the same is the "product of fraud or self-interest" by the Scio Defendants, or that they "failed to exercise due care in reaching [their] decision," in order to rebut the business judgment rule as required by *Wynn.* 399 P.3d at 343. Further, Plaintiff cannot even make a colorable argument that settling a debt at a significant reduction, even if by way of a default judgment, amounts to "intentional misconduct, fraud or a knowing violation of law." NRS § 78.138(7)(b)(1)-(2).

### E.  Statutory violation allegations

Finally, Plaintiff alleges that failing to place Scio assets in a trust and act as trustees or dissolving Scio without a vote or notice to shareholders after Scio's corporate status was revoked amounts to a breach of fiduciary duty. (SAC 119(x); ¶ 38 (x).) Plaintiff alleges this occurred when Scio "failed to file its annual filing on September 30, 2019," and that the revocation "most likely" happened in October of 2019. (SAC ¶ 8.) Plaintiff cites NRS § 78.175(5) and § 78.580(3) in support of his contentions. (SAC ¶¶ 69, 70, 72.) NRS § 78.175(5) requires that where a corporate charter is revoked, the property and assets in the defaulting corporation "must be held in a trust by the directors of the corporation." But by October of 2019, the Adamas Transaction, which resulted in a sale of "substantially all of [Scio's] assets" to Adamas, had been finalized. (*See* Scio, Definitive Proxy Statement (Form DEF 14A), at 1 (May 17, 2019)). Further, § 78.580(3) applies to dissolved companies, which Scio is not.

Plaintiff fails to allege any facts that show the alleged actions and inactions were product of fraud and self-interest or that the Scio Defendants failed to exercise due care. *Wynn,* 399 P.3d at 343. As such, Plaintiff has failed to rebut the business judgment rule and therefore does not have any claim against the Scio Defendants.

## IV.   <u>Plaintiff's unjust enrichment allegations also fail.</u>

Under Nevada law, the required elements for an unjust enrichment claim are: (1) a benefit conferred on a defendant by the claimant; (2) the defendant's appreciation of the benefit; and (3)

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

acceptance and retention of said benefit (4) in circumstances where it would be inequitable to retain the benefit without payment for the same. *Weinfeld v. Minor*, No. 314CV00513RCJWGC, 2016 WL 4487844, at *6 (D. Nev. Aug. 24, 2016). Plaintiff's unjust enrichment count merely reiterates "each and every allegation set for above," and recites that the Scio Defendants "were unjustly enriched at the expense of, and to the detriment of Scio" (SAC ¶ 122-123.) Plaintiff makes no attempt to satisfy the four-part requirement of unjust enrichment under Nevada law and provides no specific factual allegations in support of this count. "[M]erely vague, conclusory and general allegations, however, will not overcome a Rule 12(b) motion." *Bank of New York Mellon v. Moussaoui,* 2016 WL 9504295, at *1 (Nev. Dist. Ct. Apr. 4, 2016). Even read as a whole, the SAC fails to state a claim for unjust enrichment because the transaction was fully disclosed to and approved by a quorum of shareholders. The allegations, even accepted as true, do not show that Scio Defendants received an improper personal benefit. The only allegation that approaches a benefit received is the allegation that certain Individual Defendants bought diamonds from Scio for their own use. (SAC ¶¶ 96, 119.) But the purchase of diamonds alone is insufficient to state a claim for unjust enrichment, particularly when these purchases were disclosed to shareholders. *See Weinfeld v. Minor*, No. 314CV00513RCJWGC, 2016 WL 4487844, at *6 (D. Nev. Aug. 24, 2016) (dismissing unjust enrichment claim due to plaintiff's failure to allege a "willfully conferred benefit upon Defendants that in equity must be returned or paid for.").

## CONCLUSION

The Plaintiff's SAC fails to satisfy the requirements for pleading demand futility and fails to satisfy the substantive elements of breach of fiduciary duty and unjust enrichment. Fundamentally, Plaintiff misunderstands the requirements of FRCP 23.1, and wholly fails to show that the Scio Defendants' "actions were so egregious that a substantial likelihood of director liability

1  exists." *Shoen*, 137 P.3d at 1184. As such, Plaintiff lacks standing to bring derivative claims, and

2  this case should be dismissed with prejudice.

3

4

      Respectfully submitted this 17th day of February, 2023.

5

6

7                                        **SPENCER FANE LLP**

8                                        Mary E. Bacon (NV Bar No. 12686)

9                                        300 S. Fourth Street, Suite 950
                                         Las Vegas, NV 89101

10                                       and

11                                       **BEST & FLANAGAN LLP**

12
                                  By:    */s/ John A. Sullivan*
13                                       Amy S. Conners
                                         John A. Sullivan
14                                       Brian Linnerooth
                                         60 South Sixth Street, Suite 2700
15                                       Minneapolis, Minnesota 55402
                                         Telephone: (612) 339-7121
16                                       Facsimile: (612) 339-5897

17
                                         *Attorneys for Defendants Bernard*
18                                       *McPheely, Karl Leaverton, Gerald*
                                         *McGuire and Lewis Smoak*
19

20

21

22

23

24

25

26

27

28

SCIO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS