MARTIN A. MUCKLEROY, ESQ.
Nevada Bar No. 009634
MUCKLEROY LUNT, LLC
6077 S. Fort Apache, Ste 140F
Las Vegas, NV 89148
Phone: (702) 907-0097
Direct: (702) 534-6272
Fax: (702) 938-4065
martin@muckleroylunt.com

*Attorneys for Plaintiff*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| THEODORUS STROUS, in his capacity as a shareholder of SCIO DIAMOND TECHNOLOGY CORP. brings this action derivatively on behalf of SCIO DIAMOND TECHNOLOGY CORP., and as a Class Action on behalf of himself and all other Adamas shareholders who are similarly situated | Case No.: 22-cv-00256-JCM-EJY |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ADAMAS ONE CORP.'S AND GRDINA'S JOINDER IN MOTION TO DISMISS AND SEPARATE MOTION TO DISMISS** |
| v. | |
| BERNARD MCPHEELY, KARL LEAVERTON, GERALD MCGUIRE, LEWIS SMOAK, ADAMAS ONE CORP. and JOHN G. GRDINA | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| SCIO DIAMOND TECHNOLOGY CORP., | |
| Nominal Defendant. | |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ADAMAS ONE CORP.'S AND GRDINA'S JOINDER IN MOTION TO DISMISS AND SEPARATE MOTION TO DISMISS

**INTRODUCTION**

With respect to his claims against the Adamas Defendants, Plaintiff brings a derivative action in his capacity as a shareholder of Scio Diamond Technology Corp ("Scio" or the "Company"), for the benefit of Nominal Defendant Scio against Adamas One Corp. ("Adamas"), John Grdina, and Gerald McGuire ("Adamas Defendants") for their misconduct that has harmed Scio.  In addition, in his capacity as a purported shareholder of Adamas (beneficially owned shares), Plaintiff asserts a direct class action on behalf of himself, and all others similarly situated, against the Adamas Defendants for breaches of their fiduciary duties and other misconduct. Adamas and Grdina move to dismiss Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, while Defendant McGuire apparently does not.

In their motion to dismiss, Adamas and Grdina simply join in sections I and II of the Scio Individual Defendants' brief in support of their motion to dismiss regarding the applicable demand futility standard and the Scio Individual Defendants' assertion that Plaintiff failed to make an adequate pre-suit demand under Fed. R. Civ. P. 23.1(b)(3). As addressed below, this argument fails for the same reasons that the Scio Individual Defendants' arguments fail.

Adamas and Grdina argue that the Court does not have diversity jurisdiction because Scio should be reclassified as a party plaintiff.  In support, they argue that the Plaintiff fails to allege that the Scio Individual Defendants' actions were antagonistic to Scio and that the only reason Scio is a named defendant is because Plaintiff manipulated Scio's status to confer jurisdiction. Longstanding derivative litigation precedent and the extensive detailed allegations in the Second Amended Complaint (ECF No. 7, the "SAC") show otherwise.

Finally, Plaintiff addresses Defendant Adamas' and Grdina's arguments that Plaintiff fails to adequately allege his claims against them for:  breach of fiduciary duty (count III), conspiracy and

breach of contract (count IV) and unjust enrichment (count V).  As shown below, Plaintiff has met the pleading burden with respect to these claims.

Accordingly, Plaintiff respectfully requests that the Court deny Defendant Adamas' and Grdina's motion to dismiss in its entirety.

## STATEMENT OF THE CASE

On November 30, 2018, Scio and Adamas executed an Asset Purchase Agreement, whereby Adamas agreed to purchase all of Scio's assets in exchange for: (i) satisfaction of Scio secured debt of $3.3 million over 18 months following closing; (ii) 350,000 shares of Adamas common stock, with a guaranteed resale price of $2.00 per share, to be used to settle Scio's unsecured debt-in excess of $3 million; and (iii) 900,000 shares of Adamas common stock to be distributed to Scio shareholders upon liquidation of Scio and that were to be registered with the Securities & Exchange Commission ("SEC") pursuant to a Registration of Rights Agreement. SAC ¶ 43. Consummation of the transaction and distribution of the Adamas shares were subject to Scio shareholder approval and the "filing and effectiveness of a registration statement for the Adamas shares to be distributed to [Scio] shareholders and other conditions." *Id*. The Asset Purchase Agreement itself has never been disclosed publicly or provided to Scio shareholders. Instead, only its general terms were made public in Scio's December 11, 2018 Form 8-K filing with the SEC. *Id*.

On February 7, 2019, Scio filed a Form 8-K with the SEC revealing that the Asset Purchase Agreement had been materially amended by, among other things, removing the requirement that the 900,000 shares of Adamas stock would be distributed to Scio shareholders and instead would be "held by [Scio] for an undetermined time in the discretion of the [Scio] Board." *Id*. ¶ 46. The Preliminary Proxy Statement filed with the SEC by Scio the next day, February 8, 2019, added

that "the [Scio] Board intends to hold [the] Adamas shares indefinitely in order to permit the stockholders to benefit from the business going forward" and that "[t]he Board intends to consider all options available to [Scio] regarding its future business, including engaging in active business activities." *Id*. ¶ 50. In addition, the Preliminary Proxy Statement also contained an Amended Registration Rights Agreement (dated January 31, 2019) that provided Scio with certain rights concerning the registration of the Adamas shares including:

- the right to request Adamas to register 300,000 of the 900,000 Adamas shares immediately after the Adamas Transaction closed and Adamas had 90 days to file a registration statement. *Id*. ¶ 49;

- subjecting the remaining 600,000 Adamas shares to new registration statements in tranches of 300,000 shares each, no less than 9 months and 15 months, respectively, from the date of the first registration statement. *Id*.; and

- Giving Scio in the accompanying registration of rights agreement the right to provide comments to all 3 anticipated registration statements and the Final Prospectus prior to filing. *See Id*. ¶¶43, 44, 46.

On August 9, 2019, the SEC revoked Scio's registration of its common stock for the Company's failure to timely file numerous periodic filings over a two-year period pursuant to a settlement agreement between the SEC and the Company. *Id*. ¶ 57. The SEC's deregistration of Scio's stock meant that the Scio Individual Defendants no longer needed to make any public disclosure of their activities to Scio's shareholders; thus, the Scio Individual Defendants went dark and the final tally of the purported shareholder vote has never been publicly reported. The filing of the SEC's August 9, 2019, Order revoking the registration of Scio's shares was the last communication Scio's shareholders received from Scio and the Scio Individual Defendants. *Id*. ¶ 51.

Adamas purportedly distributed its 900,000 shares of stock to Scio (part of the consideration for the Asset Purchase Agreement) on September 17, 2019, *Id*. ¶ 59, but this fact also was

concealed from Scio's shareholders and the investing public.   The Adamas Transaction purportedly closed on October 17, 2019, again without any disclosure to Scio's shareholders. *Id*. ¶ 3. Indeed, to this day the Scio shareholders have never been told that they received a pro rata distribution of Adamas shares, thereby depriving them of having any input into either the Adamas Registration Statement or Final Prospectus, as was Scio's right pursuant to the Amended Registration of Rights Agreement *Id*. ¶¶ 60-61.   Also unbeknownst to Scio shareholders, the Individual Defendants caused Scio's corporate status in Nevada to be revoked for failure to file Scio's annual registration on September 30, 2019. *Id*. ¶ 68.

On February 3, 2020, about four months after the transaction had closed, Scio and Adamas executed a "Second Addendum" to the Asset Purchase Agreement that, retroactive to the original January 2019 Amended Asset Purchase Agreement date, reduced the 900,000 share consideration Adamas had already paid to Scio to 800,000 shares. *Id*. ¶ 62. This 100,000 share reduction was worth a minimum of $200,000 to Scio at the guaranteed $2 per share minimum price and at least approximately $450,000 based on Adamas' $4.50 per share IPO stock price.  *Id*. ¶ 43.  The Second Addendum was executed by Defendant Grdina on behalf of Adamas and by Defendant McGuire on behalf of Scio, which was then a revoked company where Defendant McGuire had ceased being Scio's CEO and had become Adamas' COO in connection with the Asset Purchase Agreement transaction. *Id*. ¶ 7. Thus, the Second Addendum effectively rewrote the deal that the Scio shareholders had purportedly approved in August 2019, had already closed in October 2019, and had no Scio shareholder approval or knowledge whatsoever. *Id*. ¶ 67. The 100,000 share reduction, which was plainly material to the transaction representing 11.1% of 900,000 Adamas shares that were supposed to be paid to Scio, *Id*. ¶ 10, was never revealed until May 31, 2022 when Adamas filed its Registration Statement/Preliminary Prospectus for its own public stock offering.

On March 31, 2020, just after causing Scio to enter into the Second Addendum, the Individual Defendants resigned from Scio, abandoning the company and its shareholders for good. See Scio Individual Defendants' Brief In Support of Motion to Dismiss at p. 8. This was never disclosed to Scio's shareholders, or to anyone for that matter, until the Individual Defendants filed their motion to dismiss papers on February 17, 2023. seeking to invoke the procedural protections of a Rule 23.1 demand requirement.

Section 10.10 of the Amended Agreement between Adamas and Scio contained an express choice of law and forum selection clauses that, respectively, mandate the application of Nevada law and provide for exclusive personal jurisdiction and venue in Nevada federal district court or Nevada state court for any action "arising out of or based upon" the Amended Agreement. (*Id.*, ¶ 18).

## **ARGUMENT**

**I.   The Adamas Defendants' Joinder Fails For The Same Reasons Plaintiff Addressed In Its Opposition To The Scio Individual Defendants' Motion To Dismiss.**

Plaintiff has sued the Adamas Defendants in two distinct capacities. First, Plaintiff sued the Adamas Defendants directly on behalf of himself and similarly situated Scio shareholders who have been deprived of their ownership interest in Adamas resulting from Adamas' purchase of Scio's assets. In that capacity, Plaintiff asserts claims on a class action basis for the Adamas Defendants' breach of the fiduciary duties of loyalty and candor. Since those claims are brought directly by Plaintiff against the Adamas Defendants, and not derivatively, demand futility is entirely irrelevant. Accordingly, the only relevant inquiry on the Adamas Defendants' motion to dismiss those direct claims is whether the SAC adequately pleads the causes of action pursuant to

Fed. R. Civ. P 12(b)(6). Plaintiff submits that it does. *See infra* Section III.[1]

Secondly, Plaintiff sues the Adamas Defendants derivatively through Scio with respect to Plaintiff's breach of contract, unjust enrichment and civil conspiracy claims.  Thus, Plaintiff is derivatively asserting claims against the Adamas Defendants that Scio – if it was a viable entity with an active board that was not involved in the malfeasance committed by the Scio Individual Defendants – would be obligated to consider in light of the alleged civil conspiracy between the Scio Individual Defendants and the Adamas Defendants that harmed Scio, Plaintiff and Scio's other shareholders. The Adamas Defendants' demand futility arguments are only relevant with respect to these claims.

Rather than regurgitate Plaintiff's entire response to the Scio Individual Defendants' motion to dismiss, which the Adamas Defendants join in, Plaintiff incorporates sections I-III of his brief in opposition to the Scio Individual Defendants' Motion to Dismiss, pages 8-23, as if fully set forth herein.  In short, however, the facts alleged in the SAC establish that Plaintiff has met the requirements of demand futility with respect to his standing as a derivative plaintiff on behalf of Scio and further established that the Individual Defendants' actions are not subject to the protections of Nevada's business judgment rule, NRS 78.138(7)(a); *see In re Puda Coal, Inc. S'holders Litig.*, C.A. No. 6476–CS (Del. Ch. Feb. 6, 2013) (denying demand requirement and entering default judgment) (Tr. Op.) (Declaration of Martin Muckleroy filed as exhibit A to Plaintiff's Memorandum Of Law In Opposition To The Scio Individual Defendants' Motion To Dismiss ("Muckleroy Decl."), Ex. 1).  Plaintiff also submits that the facts alleged in the SAC, and the reasonable inferences derived therefrom, establish that the Scio Individual Defendants' actions

---

[1] This is a very different inquiry than whether the Court has proper diversity jurisdiction based on the alignment of the parties. *See infra,* Section II.

1    meet, if not far exceed, the "fraud," "knowing violation of law" or "intentional misconduct"

2    standards pursuant to NRS 78.138(7)(b).  *See Chur*, 458 P.3d 342 (Nev. 2020).

3         The demand requirements and factual particularity under Rule 23.1 "exists to preserve the

4    primacy of board decision making regarding legal claims belonging to the corporation." *In re*

5    *Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009) (internal citations

6    omitted).  "This follows from the "cardinal precept of the General Corporation Law of the State of

7    Delaware ... that directors, rather than shareholders, manage the business and affairs of the

8    corporation." *Id*.  As the court in *Reith v. Lichtenstein*, CV 2018-0277-MTZ, 2019 WL 2714065

9
10   (Del. Ch. June 28, 2019), explained in the context of its discussion of *In re Citigroup*, "[t]he

11   demand requirement 'insure[s] that a stockholder exhausts his intracorporate remedies,'

12   'provide[s] a safeguard against strike suits,' and "assure[s] that the stockholder affords the

13
14   corporation the opportunity to address an alleged wrong without litigation and to control any

15   litigation which does occur.'"  *Id*.  at *13 (internal citations omitted).

16        With respect to the Adamas Defendants, none of these concerns exist here because the

17   Adamas Defendants are not Scio directors.  They never had, and never will have, any say in how

18
19   Scio manages its litigation.  And, since the Individual Defendants caused Scio to lose its corporate

20   status and then entirely abandoned the company, Plaintiff is a proper party to derivatively assert

21   Scio's claims against the Adamas Defendants in the absence of a receiver for Scio that could bring

22   them directly.

23
24   **II.    The Court Has Subject Matter Jurisdiction; Nominal Defendant Scio Is Properly
          Aligned as a Party Defendant.**

25        District courts have original jurisdiction over diversity cases in which (1) there is diversity

26   of citizenship between each plaintiff and each defendant and (2) the amount in controversy exceeds

27   $75,000. 28 U.S.C. § 1332(a)(1).  In determining citizenship for purposes of diversity jurisdiction,

28

a court must "look beyond the pleadings" to determine the "nature of the controversy" and realign the parties to ensure an actual "collision of interest." *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008). In other words, courts must arrange the parties according to their actual sides in the dispute because "[t]he ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff, but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights." *Doctor v. Harrington*, 196 U.S. 579, 587, 25 S.Ct. 355, 49 L.Ed. 606 (1905). Further, subject-matter jurisdiction is not destroyed because a corporation is listed on both sides of the caption in a derivative action. *Miesen v. Munding,* 822 Fed. Appx. 546, 548 (9th Cir. 2020) (unpublished).  In derivative actions like this one, the corporation should be aligned as a party defendant – exactly as Scio is named here, where the "corporation's officers or directors are 'antagonistic'" to the plaintiff-shareholder's interests. *See Digimarc*, 549 F.3d at 1234.

Logically, legally and practically, the Adamas Defendants' diversity jurisdiction argument cannot apply to Plaintiff's direct claims – on behalf of himself and others similarly situated – against the Adamas Defendants because Plaintiff is not a Nevada citizen and Adamas is a Nevada corporate citizen.  Thus, there is full diversity between the parties and the Court has diversity subject matter jurisdiction.

Rather, the Adamas Defendants' diversity jurisdiction argument can only apply to Plaintiff's claims brought derivatively through Scio and against the Adamas Defendants.  Here, the Adamas Defendants' theory appears to be that Scio is really a plaintiff in a transaction adverse to Adamas ***because Plaintiff failed to plead that Scio was antagonistic to Plaintiff*** and that Plaintiff's only purpose in adding Scio was to "manipulate jurisdiction." Adamas Def. Br. at 8-9. This is nonsense.

The SAC plainly alleges a multitude of facts that Scio was under the control of the Scio Individual Defendants during the relevant time period of the Adamas transaction, and that the corporate actions taken by Scio – *while under the Individual Defendants' control* – harmed Plaintiff and the other Scio shareholders. Namely, Scio, through the Individual Defendants:

- Amended the Asset Purchase Agreement to permit the Scio board to hold "indefinitely" the 900,000 Adamas shares that were to be provided to Scio as part of the transaction consideration, rather than distribute those shares to Scio's shareholders (SAC, ¶ 60);

- Failed to comply with a settlement agreement with the Securities & Exchange Commission ("SEC") by failing to timely file required quarterly and annual reports, resulting in the Company's stock being delisted by the SEC (SAC, ¶ 57);

- Failed to maintain its corporate status in Nevada (SAC, ¶ 68);

- After the Adamas transaction was closed, failed to preserve its assets for the benefit of Scio's shareholders by allowing the consideration paid to Scio for the Adamas transaction to be reduced by 100,000 shares of Adamas stock (which was for the benefit of Scio's shareholders) (SAC, ¶ 62); and

- Failed to demand that Adamas register the remaining 800,000 shares of Adamas stock, which would inure to the benefit of Scio shareholders (SAC, ¶ 5).

None of these well-pled actions were in Plaintiff's interest or the interests of Scio's shareholders; Plaintiff clearly pled facts demonstrating the antagonism between the Scio Individual Defendants' actions and Scio's shareholders, including Plaintiff.

As the Adamas Defendants readily admit with respect to the diversity jurisdiction issue, "[a]n exception is available when the directors or officers of the corporation are antagonistic to the shareholders. *Smith v. Sperling*, 354 U.S. 91, 95-96 n. 3 (1957). Antagonism is to be determined from the pleadings and nature of the controversy. *Id.*" Adamas Def. Br. at 8. In this instance, the normal rule that the corporation – here Scio – is the real party in interest (and therefore should be aligned as a party plaintiff) is abrogated by the exception resulting from the antagonism between

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the actions of the Scio Individual Defendants and Scio's shareholders, like Plaintiff. *Smith*, 354 U.S. at 96-98 (reversing dismissal of derivative complaint for lack of diversity jurisdiction after lower courts wrongly realigned the nominal corporate defendant as a plaintiff where plaintiff had pled facts demonstrating the antagonism between plaintiff and the corporation's board of directors).[2]

### III.    Plaintiff's Claims Against the Adamas Defendants Are Adequately Pled

At the motion to dismiss stage, Plaintiff's claims against Adamas need only constitute "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted). To survive a motion to dismiss, Plaintiff's SAC need not contain "detailed factual allegations," but "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that a court can reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Ninth Circuit has further explained that for a complaint to survive dismissal, a plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Plaintiff has met that burden here

---

[2] Section 10.10 of the Amended Agreement between Adamas and Scio also provides for exclusive personal jurisdiction and venue in Nevada federal district court or Nevada state courts for any action "arising out of or based upon" the Amended Agreement.  (SAC, ¶ 18).

with respect to each of Plaintiff's claims against the Adamas Defendants when examined in their proper context.

### A. Plaintiff Has Adequately Pled Derivative Breach Of Contract And Civil Conspiracy Claims Against The Adamas Defendants (Count IV).

To prevail on a claim for breach of contract, the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). As to damages, a plaintiff must prove both (1) a causal connection between the defendant's breach and the damages asserted, and (2) the amount of those damages. *See Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*, 105 Nev. 855, 857 (1989) ("The party seeking damages has the burden of proving both the fact of damages and the amount thereof."). The burden of proving the amount of damages "need not be met with mathematical exactitude, but there must be an evidentiary basis for determining a reasonably accurate amount of damages." *Mort Wallin*, 105 Nev. at 857.

In Nevada, "civil conspiracy liability may attach where two or more persons undertake some concerted action with the intent to commit an unlawful objective, not necessarily a tort." *Vandalay Enterprises, Inc. v. Herrin*, 133 Nev. 1086 (2017) (unpublished) (*quoting Cadle Co. v. Woods & Erickson, LLP*, 131 Nev., Adv. Op. 15, 345 P.3d 1049, 1052 (2015))[3]. There, the court found that plaintiffs met the pleading requirement by alleging the defendants acted in concert to induce plaintiff to loan money to one defendant based on the other defendant's promise to pay the loan who in fact did not repay.

---

[3] Upon information and belief, Seinfeld characters "Kramer" and "George" did not have an ownership in plaintiff "Vandalay Enterprises," notwithstanding their fictional "public" statements.

Here, Plaintiff alleged the existence of a contract between Adamas and Scio in which Adamas acquired Scio's assets in exchange for cash and Adamas stock and recounted the essential terms of that agreement and the amendments thereto. (*See, e.g.,* SAC, ¶¶ 2, 7, 42-44, 46-47, 50, 52, 63, & 65). Plaintiff also alleged that the transaction contemplated in the Amended Agreement was closed on October 17, 2019. (SAC, ¶¶ 3, 6, & 38). Plaintiff further alleged that, ***after the transaction was closed***, the Adamas Defendants and the Scio Individual Defendants changed the transaction – through the February 3, 2020 Second Addendum – in a way that materially and directly damaged Plaintiff and Scio's other shareholders by reducing the consideration paid to Scio by 100,000 shares of Adamas stock (SAC, ¶¶ 10, 38, 62-65) valued at least between $200,000 based on the minimum $2.00 per share price (SAC, ¶¶ 43, 44 & 46) and $450,000 based on Adamas' initial public offering sale price of $4.50 per share. (*See,* SAC, ¶ 3).[4] This change, which was undisclosed to Scio's shareholders at the time (SAC, ¶ 67) and therefore could not possibly have been authorized by them, was *ultra vires* since Scio had no corporate status in Nevada at that point. Moreover, the Second Addendum, which had to have been authorized by the Individual Scio Defendants, was executed on behalf of Scio by Defendant McGuire, who was then Adamas' Chief Operating Officer and, according to Adamas' Preliminary Prospectus was acting as Scio's CEO (SAC, ¶¶ 24, 38, 62-66) and by Adamas Defendant Grdina, who was Adamas' sole officer and director. (SAC, ¶¶ 26, 62-66). Finally, plaintiff also pled facts reflecting that this scheme could not have been conducted without the participation of the Scio Individual Defendants. (SAC, ¶¶ 86, 89).

---

[4] Adamas' initial public offering sale price is a matter of public record which the Court may take judicial notice of. Adamas' Final Prospectus, Form 424B4 filed with the SEC on December 6, 2022. https://www.sec.gov/Archives/edgar/data/1884072/000119983522000717/form-424b4.htm

Plaintiff submits that he has adequately alleged, derivatively through Scio, his breach of contract and civil conspiracy claims.

**B. Plaintiff Has Adequately Pled A Direct Breach Of Fiduciary Duty Claim Against The Adamas Defendants (Count III).**

To adequately plead his direct breach of fiduciary duty claim, on behalf of himself and on behalf of other similarly situated beneficial Adamas shareholders, Plaintiff need only allege "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009). It cannot reasonably be argued that Adamas Defendants Grdina and McGuire owed fiduciary duties to Adamas' shareholders. *See Fed. Sav. & Loan Ins. Corp. v. Fielding*, 343 F. Supp. 537, 544 (D. Nev. 1972) ("Unquestionably, corporate officers and directors owe a fiduciary duty of utmost confidence and trust to the corporation and its stockholders."). Like the fiduciary duties of loyalty and candor that the Scio Individual Defendants owed to Plaintiff and Scio's other shareholders, Adamas Defendants Grdina and McGuire owed the same fiduciary duties to its own shareholders, including to Plaintiff and the other similarly situated class members who beneficially owned those shares once they were distributed to Scio at the closing of the transaction. *See Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1176 (Del. 1988) (suggesting that a beneficial owner of stock would be owed the same fiduciary duties as a legal owner, but not until the stock was actually distributed in a way that created the beneficial interest).

Plaintiff and the similarly situated class members he seeks to represent are all Scio shareholders who were the direct beneficiaries of the 900,000 shares of Adamas stock that Adamas was obligated to pay to Scio (whether originally for direct distribution to Scio shareholders or later, as amended by the Scio Individual Defendants to be held "for an undetermined time" by Scio, SAC, ¶¶ 46-47). As noted above and alleged in the SAC, after the transaction closed, the Adamas

Defendants conspired with the Scio Individual Defendants to reduce the number of shares of Adamas stock to be paid to Scio as consideration for the transaction, which directly reduced by 11.1% (100,000/900,000) the number of Adamas shares that Plaintiff and similarly situated class members beneficially owned which were valued at least between $200,000 and $450,000.  The Adamas Defendants did not disclose this material change in the terms of the transaction to Plaintiff and class members until over two years later when Adamas filed its Preliminary Prospectus on May 31, 2022.  (SAC, ¶¶ 51, 59, 60, & 67) and therefore could not possibly have been authorized by them, was *ultra vires* since Scio had no corporate status in Nevada at that point.  Finally, notwithstanding that Scio lost its corporate status and that the Scio Individual Defendants resigned from Scio without placing Scio's assets into trust or properly distributing them pursuant to a proper dissolution has not directly distributed the Adamas shares to Plaintiff and the similarly situated class members (*see* SAC, ¶¶5, 60) who, by virtue of their status as Scio shareholders, beneficially owned and were entitled to receive all the rights benefits and privileges associated with those shares.

Plaintiff respectfully submits that he has adequately pled his breach of fiduciary duty claims against the Adamas Defendants.

### C.  Plaintiff Has Adequately Pled Unjust Enrichment Against The Adamas Defendants (Count V).

To plead an unjust enrichment claim in Nevada, Plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Takiguchi v. MRI Intern., Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014) (citing *Unionamerica Mortg. & Equity Trust v. McDonald*, 97 Nev. 210, 626 P.2d 1272, 1273 (1981) ("Unjust enrichment occurs

whenever a person has and retains a benefit which in equity and good conscience belongs to another.")).  Thus, "[u]njust enrichment is 'the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor.'" *Takiguchi*, 47 F. Supp. 3d 1119 (*quoting LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 942 P.2d 182, 187 (1997)).

The SAC alleges the elements of unjust enrichment against the Adamas Defendants.  In its most simple terms, Adamas agreed to compensate Scio for its purchase of Scio's assets with cash and Adamas stock, 900,000 shares of which were for the benefit of Plaintiff and Scio's shareholders.  Then, after the transaction was complete and the shares were purportedly distributed to Scio, the Adamas Defendants and the Scio Individual Defendants retroactively and illegally reduced the consideration Adamas was to pay to Scio by 100,000 shares in the Second Addendum. Although the shares were purportedly distributed to Scio at the closing, by virtue of the fact that the Individual Defendants allowed Scio's Nevada corporate status to be revoked, resigned from the board and then illegally failed to place Scio's assets into trust or distribute them pursuant to a proper dissolution of Scio, direct legal ownership of the shares themselves remain in limbo because the recipients of those shares – Plaintiff and the other Scio shareholders – have never been told the status or ownership of those shares. (SAC, ¶¶ 5, 60).  However, as a practical matter, Plaintiff and the other Scio shareholders do not have any benefits of those shares – e.g., the ownership rights in Adamas with their attendant voting rights on Adamas matters requiring a shareholder vote, the right to receive distributions, the ability to demand SEC registration of those shares, and the ability to sell those shares as registered shares on a public exchange.  Instead, all of those benefits remain, as a practical matter, with Adamas because there currently is no valid Scio corporation, board membership or even management to enforce those rights or to actually distribute them to Plaintiff

1  and Scio's shareholders.

2         Plaintiff respectfully submits that he has adequately pled his unjust enrichment claims

3  against the Adamas Defendants.

4      **D.  To The Extent The Could Finds That Plaintiff Has Not Adequately Pled Any Of
5          His Claims Against the Adamas Defendants, Leave To Amend Should Be
6          Granted.**

7         Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave

8  [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that

9  in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to

10 amend even if no request to amend the pleading was made, unless it determines that the pleading

11 could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127

12 (9th Cir. 2000) (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

13

14        Plaintiff respectfully submits that, in the event the Court finds any of Plaintiff's claims to

15 be inadequately pled under the circumstances, the Court should permit Plaintiff the opportunity to

16 amend the SAC in the interest of justice, including to add or revise claims by a court appointed

17 receiver of Scio, if need be.

18                                **<u>CONCLUSION</u>**

19

20        For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Adamas

21 Defendants' motion to dismiss and permit Plaintiff's claims against them to move forward.

22 Dated: May 15, 2023                          Respectfully submitted,

23

24                                              */s/ Martin A Muckleroy*
                                                Martin A. Muckleroy
25                                              State Bar #9634
                                                **MUCKLEROY LUNT, LLC**
26                                              6077 S. Fort Apache Rd., Ste 140
                                                Las Vegas, NV 89148
27                                              Telephone: 702-907-0097
                                                Facsimile: 702-938-4065
28                                              Email: martin@muckleroylunt.com

**EVANGELISTA WORLEY, LLC**
James M. Evangelista
Stuart J. Guber
500 Sugar Mill Rd, Bldg. A, Ste. 245
Atlanta, GA 30350
Telephone: 404-205-8400
Facsimile: 404-205-8395
jim@ewlawllc.com
stuart@ewlawllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of May, 2023, I personally served a true and correct copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ADAMAS ONE CORP.'S AND GRDINA'S JOINDER IN MOTION TO DISMISS AND SEPARATE MOTION TO DISMISS on all parties by causing a true and correct copy to be filed with the court's CM/ECF system, which should automatically send a copy to all counsel of record.

Dated: May 15, 2023

/s/ Martin A Muckleroy
Martin A. Muckleroy
State Bar #9634
**MUCKLEROY LUNT, LLC**
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Telephone: 702-907-0097
Facsimile: 702-938-4065
Email: martin@muckleroylunt.com