Mary E. Bacon, Esq.
(NV Bar No. 12686)
SPENCER FANE LLP
300 S. Fourth Street, Suite 950
Las Vegas, NV 89101
Telephone: (702) 408-3400
Facsimile (702) 408-3401
Email: mbacon@spencerfane.com

*Attorneys for Defendants Bernard McPheely,
Karl Leaverton, Gerald McGuire and Lewis Smoak*

(Additional Counsel on Signature Page)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THEODORUS STROUS, DERIVATIVELY ON BEHALF OF SCIO DIAMOND TECHNOLOGY CORP., <br><br> Plaintiff, <br><br> v. <br><br> BERNARD MCPHEELY, KARL LEAVERTON, GERALD MCGUIRE, LEWIS SMOAK, ADAMAS ONE CORP. and JOHN G. GRDINA, <br><br> Defendants, <br><br> and <br><br> SCIO DIAMOND TECHNOLOGY CORP., <br><br> Nominal Defendant. | Case No. 22-cv-00256-JCM-EJY <br><br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF SCIO DEFENDANTS' MOTION TO DISMISS** |

Individual Defendants Bernard McPheely, Karl Leaverton, Gerald McGuire and Lewis Smoak ("Individual Defendants" and collectively with Scio, "Scio Defendants") respectfully submit this Reply Brief in response to Plaintiff Theodorus Strous's ("Plaintiff") Opposition Brief and in support of their Motion to Dismiss ("Motion").

# INTRODUCTION

This action rises out of a shareholder's dissatisfaction with an asset purchase agreement that was fully disclosed to all Scio Shareholders and approved by a quorum of Scio shareholders. Plaintiff's Opposition Brief confirms Scio Defendants' argument that Plaintiff fails to satisfy Federal Rules of Civil Procedure 12(b)(6) and 23.1 by reiterating the same deficiently pled facts in his Second Amended Complaint ("SAC"). The Opposition Brief is littered with factual falsehoods, misstatements and contradictions, demonstrating Plaintiff's inability (or unwillingness) to review and analyze the incorporated Scio SEC filings.[1] Plaintiff's Brief confirms that his claims related to the transaction are without basis and fail for three reasons.

*First*, Plaintiff fails to adequately plead demand futility, which is required for his derivative claims. Plaintiff wholly distorts the non-controlling Delaware case he primarily relies on with

---

[1] As an example, Plaintiff alleges that "[t]he Asset Purchase Agreement itself has never been disclosed publicly or provided to Scio shareholders." (ECF No. 36, Opposition Brief, at p. 3, hereinafter ECF No. 36 at ___). In fact, the Asset Purchase Agreement was made publicly available as Appendix A to Scio's May 17, 2019, Definitive Proxy Statement, Schedule 14A. (*See* ECF No. 29-4, Sullivan Decl. Ex. D; *see also* ECF No. 29-7, Sullivan Decl. Ex G; *see also* ECF No. 29-8, Sullivan Decl. Ex. H). Plaintiff also alleges that Bruce Likly and Ben Wolkowitz "immediately resigned on February 7, 2019," due to "[apparent concerns] with the serious implications to Scio's shareholders resulting from the changes to the Asset Purchase Agreement and the Individual Defendants' intentions…" (ECF No. 36 at 4-5). In reality, Mr. Wolkowitz resigned for health reasons (and has subsequently passed away) and Mr. Likly resigned for personal reasons, as disclosed in an 8-K filed on February 13, 2019. (*See* Sullivan Addendum Decl. Ex. I (Scio, Current Report (Form 8-K) (Feb. 13, 2019)).) As outlined in the 8-K, both Mr. Wolkowitz and Mr. Likly were in "full support of the Board's decisions and their resignations are not the result of any disagreement or conflict." *Id.* Jonathan Pfohl's resignation was announced in an 8-K filed on May 31, 2019, in which he was thanked for "his service through numerous transitions in business, most notably and most recently through the Asset Purchase Agreement with Adamas." (*See* Sullivan Addendum Decl. Ex. J (Scio, Current Report (Form 8-K) (May 31, 2019)).) Plaintiff also alleges that the May 17, 2019 Final Proxy Statement was the first time it was "revealed" that the four Scio Defendants had secured debt that would be satisfied per the terms of the Adamas transaction. (ECF No. 36 at 5). In fact, this was disclosed in February of 2019 in the PRE 14A that five directors and officers of the Company held $165,000 of secured debt, and that they would receive "Payment in full of this debt from Adamas." (ECF No. 29-3, Sullivan Decl. Ex. C, at 14). Additionally, the names of the five directors and officers, including the four Scio Defendants, were listed in the PRE 14A. (*Id.* at 19). The May 17, 2019, Final Proxy Statement provided the exact amounts of Add-On Notes obtained by each director. (ECF No. 29-4, Sullivan Decl. Ex D, at 34).

respect to demand futility, namely *In re Puda Coal, Inc. S'holders Litig.*, C.A. No. 6476–CS (Del. Ch. Feb. 6, 2013) (*See* ECF No, 36-1, Muckleroy Decl., Ex. 1).

*Second*, even if Plaintiff's demand was adequate, none of the actions and inactions Plaintiff alleges are sufficient to make out a claim for breach of fiduciary duty. Beside conclusory and embroidered statements like "the Individual Defendants' conduct is beyond the pale of bad faith," they participated in "contumacious conduct" and their "violations were egregious," Plaintiff fails to cite or identify any supporting facts or case law that Scio Defendants' actions are a "product of fraud or self-interest" or that the Scio Defendants "failed to exercise due care in reaching the decision" in order to rebut the business judgment rule.

*Third*, Plaintiff himself demonstrates the SAC's shortcomings by making a last ditch—and futile—effort to cure the deficiencies by requesting a stay to permit the appointment of a Scio Receiver and to—yet again—amend his Complaint.

There is no reason for this litigation to move forward. Plaintiff's SAC should be dismissed with prejudice under Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure because Plaintiff fails to adequately plead—and altogether lacks a claim as a matter of law for—demand futility, breach of fiduciary duty, and unjust enrichment.

## ARGUMENT

### I. Plaintiff wholly failed to establish that a Pre-Suit Demand was futile.

Where, as here, a plaintiff fails to make a pre-suit demand, Federal Rule of Civil Procedure 23.1(b)(3) directs the plaintiff to "state with particularity . . . the reasons for not obtaining the action or not making the effort." (emphasis added). In other words, Plaintiff must allege sufficient facts to show a demand would have been futile. *Arduini v. Hart,* 774 F.3d 622, 628 (9th Cir. 2014). Plaintiff failed to do so in his SAC, as well as in his Opposition Brief.

*First*, Plaintiff alleges for the first time in his Opposition Brief that a pre-suit demand was

futile "as the Individual Defendants had secretly abandoned the company. . . ." (ECF No. 36 at 8.) But Plaintiff did not raise this allegation in his SAC as required by Rule 23.1(b). Moreover, Scio Defendants did not resign until March of 2020, well after the Adamas Transaction was finalized in October 17, 2019.[2] (ECF No. 29-6, Sullivan Decl. Ex. F, at 75). Plaintiff had approximately five months to make a pre-suit demand and failed to do so.

*Second*, Plaintiff argues in circular fashion that the Scio Defendants' actions fail the first prong of *Aronson*—requiring that the directors are disinterested and independent—because the actions "were clearly self-interested, were illegal, and could not have been the product of any valid business judgment." (ECF No. 36 at 9). In support of his circular reasoning, Plaintiff relies almost exclusively on Judge Strine's oral order *In re Puda Coal, Inc. S'holders Litig*. (ECF No. 36 at 10-14; *See also* ECF No. 36-1, Muckleroy Decl., Ex. 1). But this reliance is wholly misplaced as *Puda Coal*—an unpublished Delaware case that does not interpret Nevada law—is neither controlling nor persuasive. Nor does *Puda Coal* stand for the proposition Plaintiff advances: that a bare description that directors are "clearly self-interested" or lacked independence is sufficient to meet the particularity pleading standard.

In *Puda Coal,* three of the remaining four directors resigned after concluding that company assets were "stolen out from under them," by the fourth director, which left "the principal suspected wrongdoer in control of the company." *Puda Coal,* C.A. No. 6476-CS, Tr. Op. at 4-6. Chancellor Strine described the wrongdoing by the remaining director (and another, already resigned director) as "the most extreme sort of fiduciary violation you could image." *Id.* at 6, 10. Moreover, the defendant directors in *Puda Coal* "conclude[d] that what the plaintiffs are complaining about *they subjectively believe is true . . .* They leave the company under the sole dominion of a person [that

---

[2] Contrary to Plaintiff's assertion otherwise, Scio Defendants did not "immediately" resign. (ECF No. 36 at 19.)

the defendants] *believe* has pervasively breached his fiduciary duty of loyalty." *Id.* at 16 (emphasis added). Chancellor Strine chastised the *Puda Coal* defendants for bringing a motion under Rule 23.1 and for claiming plaintiff's demand would not have been futile where in actuality, what defendants did "*when they concluded there was wrongdoing* was not to bring suit but to quit and leave the company in control of a person that they believed had seriously breached his fiduciary duty of loyalty." *Id.* at 16 (emphasis added).

Here, unlike the allegations in *Puda Coal*, Plaintiff does not allege conduct to meet the heightened pleading requirements of Fed. R. Civ. P. 23.1. Unlike the "most extreme" conduct "you could image" in *Puda Coal*, which the court described as having assets "stolen out from under the company by a director, (*id.* at 4-5, 10), the alleged, innocuous conduct Plaintiff complains about amounts to the Scio Defendants failing to keep Plaintiff informed on a play-by-play basis after the Adamas Transaction shareholder vote. Not one allegation in the SAC rises to the level of rebutting the business judgment rule much less that the Scio Defendants had "knowledge of wrongdoing" in their lack of communication. (*See* ECF No. 28 at 16-21.) At best, the SAC alleges that the Scio Defendants were negligent in post-closing communications, which is insufficient to meet the heightened pleading standard in Rule 23.1. The conduct at issue in *Puda Coal* was described by the Court as having assets "stolen out from under" the company by a director, (*id.* at 4-5), whereas the conduct Plaintiff alleges is that the Scio Defendants failed to communicate beyond the required public disclosures. The attempted conflation of the Scio Defendants and the defendants in *Puda Coal*—to borrow a phrase from Plaintiff—"does not pass the straight-face test." (ECF No. 36 at 17.)

*Third*, Plaintiff astonishingly alleges that the Scio Defendants' alleged actions "are far more egregious than those in *Puda Coal*," and goes on to list these ostensibly "egregious" actions, such as authorizing the Adamas Transaction (after shareholder approval), which resulted in repayment of the Scio Defendants' individual loans to Scio and amending the terms of the Asset Purchase

Agreement such that the Scio Defendants would "control and hold onto the 900,000 Adamas shares." (ECF No. 36 at 12-13). Even more astonishingly, Plaintiff claims Scio Defendants did "all this without notice to Plaintiff and Scio's shareholders." (*Id.* at 13). But these false allegations are contradicted by *Plaintiff's own pleadings* and publically-available SEC filings, as the repayment of the Scio Defendants' loans and the amended terms of the Adamas Transaction were unequivocally disclosed to shareholders before the vote on the Adamas Transaction. (ECF No., 26, SAC ¶¶ 9, 47; ECF 36 at 4; *see also* ECF No. 29-3 at 14; ECF No. 29-4 at 5, 9, 10, 14, 34).

Furthermore, Plaintiff grossly misstates and exaggerates the terms of the repayment of the individual loans. On May 17, 2019, Scio's Final Proxy Statement disclosed that the four Scio Defendants held a total of $160,000[3] of secured debt that would be satisfied through the Adamas Transaction. (ECF No. 29-4 at 34). Yet, Plaintiff argues "the self-dealing aspect of the Adamas transaction that inured to the Individual' Defendants' personal benefit ($3.3 million in cash to repay their own loans to Scio) while retaining 'indefinite' control of the Adamas shares to be distributed." (ECF No. 36 at 24). This is an invented allegation that has no well-founded basis in fact and is contrary to evidentiary support.

The remainder of the claims that Plaintiff argues excused a pre-suit demand, and which Plaintiff inaccurately describes as "far more egregious" than the admitted wrongdoing in *Puda Coal*," include alleged actions by the Scio Defendants in failing to follow certain formalities of NRS § 78.175, settling an outstanding legal bill, paying a landlord for back rent, and resigning from Scio after the transaction was approved. (ECF No. 36 at 12-13). Despite the innocuous nature of these actions, even if true and which are entitled to the business judgment presumption, Plaintiff argues that the "obvious and reasonable inference" of these actions is an intent by the Scio Defendants to

---

[3] An additional $5,000 was held by Jonathan Pfohl. (ECF No. 29-4 at 34.)

"strip Scio of its assets, conceal their actions from Scio's shareholders, and then abandon the company to try to avoid liability." (*Id.* at 13). If this were so, Plaintiff would not need to rely on invented allegations based in untruths and contradictions.[4]

In contrast to the misleading, incomplete, or plainly false claims by Plaintiff, it is his silence on certain key issues that is the most revealing. While claiming that the vote "purportedly took place" in August, "without shareholder knowledge," and that the vote was "purportedly approved by a (secret)[5] quorum," (ECF No. 36 at 5), Plaintiff never states—nor could he—that he did not receive his proxy vote documentation or that he voted against the asset sale.

## II.  Plaintiff's breach of fiduciary duty allegations fail.

Even if Plaintiff would have made a demand, Plaintiff's failure to state a cognizable breach of fiduciary duty claim provides a separate and distinct basis to dismiss his claims. As thoroughly briefed in the Scio Defendants' Principal Brief, NRS §78.138(7) requires a two-step analysis. Under NRS § 78.138(7), Plaintiff must rebut the business judgment rule presumption *and* prove the act or failure to act by the Scio Defendants was a breach of fiduciary duty that "involved intentional misconduct, fraud or a knowing violation of law." To show "intentional misconduct" or a "knowing violation of law," a "claimant must establish that the director or officer had knowledge that the alleged *conduct* was wrongful." *Chur v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 458 P.3d 336, 342 (2020) (emphasis added) (dismissing derivative complaint for failing to plead directors knew their conduct was wrongful); *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark,*

---

[4] As an example, Plaintiff simultaneously argues both that Scio Defendants failed to preserve Scio's assets in a trust (including 800,000 shares of Adamas stock and cash) and that Scio Defendants "strip[ped] Scio of its assets." (ECF No. 36 at 13). Moreover, § 78.175 involves defaulting corporations, which Scio is not.

[5] Plaintiff's continuous use of the word "secret" holds no legal meaning, and simply refers to Plaintiff's displeasure of Scio Defendants failing to meet Plaintiff's invented standard for communication.

133 Nev. 369, 375, 399 P.3d 334, 343 (2017). In short—and as further demonstrated below—Plaintiff failed either to rebut the business judgment rule or establish Scio Defendants engaged in conduct that they knew to be wrongful. As a result, Plaintiff failed to meet the heightened pleading requirements under Fed. R. Civ. P. 23.1.

Instead of meeting the requirements of *Wynn*, Plaintiff reiterates the same facts he cited to claim demand futility. Specifically, Plaintiff cites the Adamas Agreement, and alleges that Scio's assets were sold to Adamas "in exchange for cash (*in large part* to repay the Individual Defendants' loans to Scio)." (ECF No. 36 at 19 (emphasis added)). In reality, five directors held $165,000 of debt, which was disclosed prior to the vote. (ECF No. 29-3 at 14; ECF No. 29-4 at 5, 9, 10 14, 34). Plaintiff also cites the amended terms of the Adamas Agreement, under which the 900,000 shares would be held rather than distributed. (ECF No. 36 at 19.) However, this was also disclosed to shareholders prior to the vote. (ECF No. 29-3 at 10; ECF No. 29-4 at 5, 10, 14.)

Plaintiff also cites the rescheduled vote, followed by an alleged "secret shareholder meeting," failing to mention that Plaintiff did not even bother to return his own proxy vote. Plaintiff also complains of the revocation of Scio's corporate status, the reduction of 100,000 shares, and the Scio Defendants' resignation, ECF No. 36 at 12-13, as proof that the Scio Defendants are not entitled to the business judgment presumption. But Plaintiff fails to cite a single relevant case or legal analysis to support this proposition. As Scio Defendants have previously stated, the reduction in 100,000 shares was related to debt held by the landlord and required to save the Adamas Transaction, which the Scio Defendants had a mandate to do by virtue of the shareholder vote to approve the transaction. Furthermore, the Scio Defendants' resignation was the natural result of the transaction.

Plaintiff failed to establish that any of the above described innocuous actions were "the product of fraud of self-interest" or that the Scio Defendants "failed to exercise due care in reaching the decision." *Wynn,* 399 P.3d at 343 (internal citations omitted). In short, Plaintiff did not rebut the

business judgment presumption.

But even if Plaintiff were able to rebut the business judgment rule, he must satisfy the second step and demonstrate that the Scio Defendants breached their fiduciary duties *and* that the breaches involved "intentional misconduct, fraud or a knowing violation of law." NRS § 78.138(7)(b)(1)-(2); *Chur*, 458 P.3d at 338; *Wynn,* 399 P.3d at 342. To be clear, gross negligence and "factual knowledge" are not sufficient to establish liability under NRS § 78.138(7). *Chur*, 458 P.3d at 341-342. Instead, the Plaintiff is required to show Scio Defendants had "knowledge of wrongfulness" with regard to their actions or inactions. *Id.* at 342 (citation omitted). The *Chur* Court clarified that "knowledge of wrongdoing is "an appreciably higher standard than gross negligence." *Id.*

In a fruitless attempt to show Scio's Defendants' "intent to harm Scio," Plaintiff again regurgitates the same facts, such as the failure to submit SEC filings resulting in the delisting of Scio stock, delaying the vote and not disclosing the final vote, failure to maintain corporate status, and reducing the Adamas shares by 100,000 (ECF No. 36 at 20-21). What Plaintiff failed to argue is more telling than the conclusory arguments Plaintiff made.

*Frist*, Plaintiff failed to address or counter any case law or statutes raised by the Scio Defendants' in their Principal Brief regarding "intentional misconduct, fraud or a knowing violation of law." Apart from two passing references, Plaintiff provides no analysis of *Chur*, the seminal case.

*Second*, Plaintiff failed to address case law that states that failure to file SEC filings is a matter of negligence and not a breach of fiduciary duty. Directors simply do not have a fiduciary duty to file SEC filings. *Weinfeld v. Minor*, No. 314CV00513RCJWGC, 2016 WL 4487844, at *5 (D. Nev. Aug. 24, 2016) (holding that the failure "to file tax returns or SEC filings" amount to "matters of negligence" and the business judgment rule prevented claims against defendants for "failing to make filings with the IRS, SEC, or other agencies…") Thus, allegations regarding the registration of the Scio shares revoked for failure to file SEC filings and not informing the

shareholders of the same, amounts to *at most* a claim of negligence and is not actionable under the business judgment rule.

*Third*, Plaintiff failed address that while there is a duty to "deal honestly with stockholders," in order to breach a fiduciary duty, "the directors must have knowingly disclosed false information, which "distinguish[s] innocent or negligent disclosure violations from those involving an intent to mislead stockholders." *Dohmen v. Goodman,* 234 A.3d 1161, 1168–69 (Del. 2020). Plaintiff does not dispute that a quorum voted to approve the Adamas Transaction, and fails to make any claim that the Scio Defendants knowingly disclosed false information related to the Adamas Transaction. Plaintiff also fails tie the loss of corporate status to a breach of fiduciary duty on the Scio Defendant" part. The statutes Plaintiff relies on in the SAC—NRS §§ 78.175(5), 78.580(3)—concern dissolved companies or the assets of a defaulting corporation. (SAC ¶¶ 69, 70, 72). Neither apply to Scio.

*Fourth*, Plaintiff fails to cite any case law establishing that forgoing 100,000 shares that would have otherwise been indefinitely withheld, in order satisfy a creditor is a breach of fiduciary duty. Plaintiff's allegation that the Scio Defendants "retroactively reduc[ed] (by 100,000 Adamas shares) the only component of consideration that was to be paid to Scio for the benefit of, and distributed to, Scio's shareholders," (ECF No. 36 at 20-21) is false. The 100,000 shares were to be held "indefinitely in order to permit the stockholders to benefit from the business going forward." (ECF No. 29-4 at 5).

Therefore, even if the Plaintiff were able to rebut the business judgment rule, Nevada law is clear that the actions Plaintiff complains about are, *at most*, matters of negligence, and are insufficient to establish liability under NRS § 78.138(7), which requires more than *gross* negligence and "factual knowledge." *Chur*, 458 P.3d at 341-342.

### III. Plaintiff's unjust enrichment allegations fail.

Plaintiff's unjust enrichment claim is based on the same alleged facts as his breach of

fiduciary duty claim and fails for the same reason. The "indefinite" control over the 800,000 (as later amended) shares was disclosed to the shareholders before the vote, as was Scio's right to obtain registration of the Adamas shares. (ECF No. 29-4 at 5, 10, 122). All shareholders had the ability to vote for or against the Adamas transaction, and the vote was delayed due to discussions with the SEC. Plaintiff chose to abstain from voting. Scio Defendants' did not receive anywhere near the alleged $3.3 million in cash to repay their individual loans. (ECF No. 29-4 at 34). Rather, contrary to Plaintiff's allegations, Scio repaid a total of $160,000 (not $3.3 million) in loans to the Scio Defendants. (*Id.*) Plaintiff's attempt to mislead the Court on the amount of the Scio Defendants' individual loans demonstrates that an honest recitation of the facts is not favorable to Plaintiff. Plaintiff's unjust enrichment allegations fail as a matter of law.

### IV.     Plaintiff fails to show a stay is appropriate.

In a half-hearted attempt to stave off a dismissal, Plaintiff requests a stay of this litigation so a receiver can be appointed. But Plaintiff makes no showing that a receivership is appropriate under Nevada law. The factors to be considered when evaluating a request for a stay are "[a] party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009). Plaintiff fails to establish any of these factors.

The cases cited by Plaintiff—*Nishon's Inc. v. Kendigian*, 538 P.2d 580, 581 (Nev. 1975) and *Peri-Gil Corp. v. Sutton*, 442 P.2d 35, 37 (Nev. 1968)—involved the proper appointment or a receiver under NRS § 78.650, a statute that is absent from Plaintiff's argument that he would succeed on a motion to appoint a receiver. As a threshold requirement, § 78.650(1) requires that the request for appointment of a receiver be made by "any holder or holders of one-tenth of the issued and outstanding stock . . ." Plaintiff does not hold 1/10 issued Scio stock. He does not assert that he does.

On that basis alone, Plaintiff's assertion that he is likely to succeed on the merits of a motion to appoint a receiver fails. Moreover, Plaintiff's claim that he will succeed on the merits of his SAC fail because he has not alleged viable claims against the Scio Defendants. The failure to establish that Plaintiff is likely to succeed on the merits is dispositive. *Humane Soc. of U.S.* 558 F.3d at 897 ("[W]e conclude that appellants have not met their burden of demonstrating a likelihood of success on the merits. They therefore fail to meet the threshold for a stay pending appeal.")

The claimed irreparable harm alleged to be suffered if a stay is not granted and "if the Court were to conclude that the Individual Defendants were entitled to take advantage of a technicality under Rule 23.1"[6] would be a dismissal of the suit. Any harm resulting from the Plaintiff's failure to make a pre-suit demand or otherwise fail to state a claim, is self-imposed. Staying the current litigation in order for a motion or application for a receiver—which has yet to be filed—is against public policy favoring expeditious resolution of litigation and is fundamentally unfair to Scio Defendants, particularly because Plaintiff has presented false allegations which have caused unnecessary delay and that have needlessly increased the cost of litigation. The balance of equities is not in Plaintiff's favor and his request for a stay should be denied.

## CONCLUSION

The Plaintiff fails to satisfy the requirements for pleading demand futility and fails to satisfy the substantive elements of breach of fiduciary duty and unjust enrichment. Plaintiff's presentation of false allegations and failure to address the controlling case law have resulted in needless litigation and unnecessary costs. Plaintiff lacks standing to bring derivative claims, and this case should be dismissed with prejudice.

---

[6] Complying with Rule 23.1, "is not merely a technical or unimportant requirement . . . strict compliance with Rule 23.1 and the applicable substantive law is necessary . . ." *Potter v. Hughes,* 546 F.3d 1051, 1058 (9th Cir. 2008).

Respectfully submitted this 21st day of June, 2023

**SPENCER FANE LLP**

Mary E. Bacon (NV Bar No. 12686)
300 S. Fourth Street, Suite 950
Las Vegas, NV 89101

and

**BEST & FLANAGAN LLP**

By: */s/ John A. Sullivan*
    Amy S. Conners
    John A. Sullivan
    Brian Linnerooth
    60 South Sixth Street, Suite 2700
    Minneapolis, Minnesota 55402
    Telephone: (612) 339-7121
    Facsimile: (612) 339-5897

*Attorneys for Defendants Bernard McPheely, Karl Leaverton, Gerald McGuire and Lewis Smoak*