Ryan J. Lorenz, NBN 8165
Nicholas M. Wieczorek, NBN 006170
**CLARK HILL PLC**
1700 Pavilion Center Dr., Ste. 500
Las Vegas, NV 89135
Telephone:  (480) 684-1107
Facsimile:  (480) 684-1167
Telephone: (702) 697-7543
Facsimile: (702) 862-8400
Email:  rlorenz@clarkhill.com
            nwieczorek@clarkhill.com

*Attorneys for Defendants Adamas One Corp. and John G. Grdina*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THEODORUS STROUS, in his capacity as a shareholder of SCIO DIAMOND TECHNOLOGY CORP. brings this action derivatively on behalf of SCIO DIAMOND TECHNOLOGY CORP., and as a Class Action on behalf of himself and all other Adamas shareholders who are similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BERNARD MCPHEELY, KARL LEAVERTON, GERALD MCGUIRE, LEWIS SMOAK, ADAMAS ONE CORP. and JOHN G. GRDINA,<br><br>Defendants,<br><br>And<br><br>SCIO DIAMOND TECHNOLOGY CORP.,<br><br>Nominal Defendant. | Case No. 2:22-CV-00256-JCM-EJY<br><br>**DEFENDANTS ADAMAS ONE CORP.'S AND GRDINA'S JOINDER IN REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**AND**<br><br>**REPLY IN SUPPORT OF SEPARATE MOTION TO DISMISS** |

L6671\457646\271671511.v1-5/19/23

1

Defendants Adamas One Corp. ("Adamas") and John Grdina ("Grdina") hereby submit their joinder in the reply [dkt. 38, 39] in support of the motion to dismiss [dkt. 28, 29] filed by Defendants McPheely, Leaverton, McGuire and Smoak (collectively, "Scio Defendants"). Specifically, Adamas and Grdina join in section I of the Scio Defendants' reply, pertaining to demand futility, section II of the Scio Defendants' reply, concerning failure to plead a claim for breach of fiduciary duty, section III, concerning failure to plead an unjust enrichment claim, and section IV, opposing a stay for further curative amendments or pre-suit demand.

Defendants Adamas and Grdina hereby submit their reply in support of their separate motion to dismiss for failure to state a claim upon which relief can be granted [dkt. 30]. The Plaintiff's claims against Adamas and Grdina are, to be candid, premised on disappointment in the outcome of an arm's length negotiated acquisition of Scio's assets. In other words, the Plaintiff has contrived legal claims based on a perceived losing deal. Being disappointed in a stock or commercial transaction is not a cause of action. Otherwise, the courts would be flooded with half of every stock transaction. To make matters worse, the Plaintiff here sued purporting to magnify inexistent claims by seeking class action certification. But zero times a hundred, is still zero. And that should be the result.

The Plaintiff pleads three causes of action against Adamas and Grdina for: breach of fiduciary duty (count III), conspiracy and breach of contract (count IV) and unjust enrichment (count V). But the second amended complaint ("SAC") [dkt. 26] is devoid of sufficient allegations to make out such claims. The back-pedaling explanation in the response [dkt. 37] concocts wholly new pathways that were not pled.

The court lacks diversity subject matter jurisdiction, because Scio, a nominal defendant, is substantively adverse to Adamas, Grdina, and the Scio Defendants. The destroys diversity because Scio and Adamas are citizens of Nevada on opposite

sides. The pled facts, under which the Plaintiff suggests Scio should be on the defense side make no sense, since there are allegations suggesting adversity between buyer and seller, Adamas and Scio, which is what destroys diversity. The joinder and reply are supported by the attached memorandum of points and authorities.

**DATED** this 21 day of June 2023.

**CLARK HILL PLC**

By: /s/ Ryan J. Lorenz
Ryan J. Lorenz
Nicholas Wieczorek
1700 Pavilion Center Dr., Ste. 500
Las Vegas, NV 89135
Telephone:  (480) 684-1100
Facsimile:  (480) 684-1167
Telephone: (702) 697-7543
Facsimile: (702) 862-8400
Email: rlorenz@clarkhill.com
          nwieczorek@clarkhill.com
*Attorneys for Defendants Adamas One Corp. and John G. Grdina.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

Adamas purchased the assets of Scio. The Plaintiff is unhappy with the terms of the Asset Purchase Agreement, as amended, claiming that Scio executives breached their duties to Scio's shareholders by entering into the transaction. Adamas, the buyer, has nothing to do with internal squabbles by an unhappy Scio shareholder. The Plaintiff is trying to shoehorn Adamas and one of its officers, John Grdina, into this lawsuit with sparse factual allegations and a questionable pleading tactic to manipulate diversity subject matter jurisdiction.

In the Plaintiff's response, the Plaintiff does not dispute that the allegations directed at Adamas are limited to:

- Adamas did not tell Scio shareholders that they would become or had become shareholders of Adamas. SAC ¶ 130.

- Adamas should not have entered into the Second Addendum – Adamas One Corp/Scio Diamond Technology Corporation Asset Purchase Agreement ("Second Addendum") on February 3, 2020. *Id.*

- Adamas should have told the Scio shareholders about the Second Addendum. *Id.* Adamas failed to provide information to the Plaintiff concerning Adamas' performance (without reference to whether the Plaintiff means "performance of the Second Addendum" or "financial performance of the business"). *Id.*

- Adamas is liable for civil conspiracy (which requires an underlying or target tort agreed to be committed by someone) and breach of contract because the Amended Asset Purchase Agreement contained an integration clause (e.g., "this agreement is the entire agreement between the parties") and such language bars modification, in spite of the existence of a modification clause (e.g., "this agreement may only be modified in writing"). SAC ¶ 133.

What is not clearly pled, but is attempted to be explained in the response, is whether this is a derivative or direct action against Adamas. The Plaintiff's answer leaves the Plaintiff's feet in both realms but does not really explain how it is so. Plaintiff claims that the conspiracy claim is supported by the participation of Defendant McGuire as a "double agent", signing the Second Addendum for Scio after becoming COO of Adamas. Of course, nothing is pled as to how the ministerial act of signing the Second Addendum would be substantively different if signed by a different Scio officer or principal.

The Plaintiff tries to claim that Adamas behaved improperly by reducing the stock consideration in the Second Addendum, because Scio shareholders became Adamas shareholders. But there is nothing pled to suggest that Scio shareholders were already issued stock, and had such stock pulled back. Since the Scio

shareholders' Adamas stock never became owned or vested, the fiduciary duty could not arise. And the Plaintiff has no answer for the catch 22 of the breach of fiduciary duty that would be committed by Adamas to its legacy shareholders if it overpaid for Scio's assets. These fringe allegations are misrepresented to be the smoking gun facts against Adamas. In reality, Adamas is the buyer. Scio is the seller. The Plaintiff is a disgruntled Scio shareholder with no factual basis to sue Adamas.

## II.  THERE IS NO CLAIM FOR BREACH OF CONTRACT

There is no dispute that the Plaintiff must plead: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865). The claim of breach is premised on the allegation that the Second Addendum damaged Scio shareholders. But the Scio shareholders are not parties to the contract, nor can they derivatively claim that Adamas breached a contract, that was modified for recited and confirmed consideration. The Plaintiff fails to refute the premise that, provided additional consideration is furnished, parties are free to modify a contract. *Wells Fargo Bank, N.A. v. Windows USA, LLC*, 484 F. Supp. 3d 645, 653 (S.D. Iowa 2020) (applying Nevada law), citing *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 703 (Nev. 2006) (en banc). A modification is not a *per se* or *per quod* breach. Adherence to the original contract is not required. In commercial contexts, there are any number of reasons parties would modify contracts. An ongoing contract for the sale of goods could be modified to change the price, to reflect changes in supply and demand. Here, the court does not have to guess whether additional consideration was furnished. The Second Addendum says that it was:

> **AGREEMENT**
>
> **NOW THEREFORE,** in consideration of the foregoing recitals and the mutual covenants and representations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:
>
> 1. Recitals. The foregoing recitals are true and correct in all material respects and are hereby incorporated herein as a material part of this Second Addendum.
>
> 2. Amendment to Recitals of the APA. Recitals of the APA currently provides:
>
> > "Section 2.06 Purchase Price. The aggregate purchase price for the Purchased Assets shall be (i) the cancellation of the Secured Debt, plus (ii) the issuance of one million two hundred fifty thousand (1,250,000) shares of Buyer's common stock (the "Shares") to Seller, with nine hundred thousand (900,000) of such Shares subject to the terms of the Registration Rights Agreement attached hereto as Exhibit C, plus (Hi) the assumption of the Assumed Liabilities ((i), (ii), and (iii) collectively, the "Purchase Price")."
>
> The specific Recitals of the APA are hereby revoked, repealed, and replaced in its entirety with the following:
>
> "Section 2.06 Purchase Price. The aggregate purchase price for the Purchased Assets shall be (i) the cancellation of the Secured Debt, plus (ii) the issuance of one million two hundred fifty thousand (1,250,000) shares of Buyer's common stock (the "Shares") to Seller, with eight hundred thousand (800,000) of such Shares subject to the terms of the Registration Rights Agreement attached hereto as Exhibit C, plus (iii) the assumption of the Assumed Liabilities ((i), (ii), and (iii) collectively, the "Purchase Price")."

But just in case the court thinks this is irrelevant boilerplate, Adamas assumed a paid delinquent rent for Scio's lease of property at 411 University Ridge, Greenville, South Carolina 29601 ("Greenville Plant"). This is reflected on archived SEC filings of Scio, specifically, its Annual Report, Form 10-K, from 2016. Scio disclosed its lease of the Greenville Plant:

> **ITEM 2. PROPERTIES.**
>
> Our corporate headquarters and production facility are located at 411 University Ridge, Greenville, South Carolina. The production facility includes approximately 3,200 square feet adjoining our headquarters office, and the facility overall has 9,470 square feet of space. We have three years remaining on the lease for this facility.
>
> Annual rental payments for the next five fiscal years for these facilities are as follows:
>
> | | | |
> |---|---|---|
> | 2017 | $ | 224,410 |
> | 2018 | | 224,410 |
> | 2019 | | 224,410 |
> | 2020 | | — |
> | 2021 | | — |
> | 2022 and thereafter | $ | — |

This was necessary to permit Adamas' new lease of the same property starting January 1, 2020. Adamas' lease of Greenville Plant was included in its SEC filing on May 31, 2022:

> 1.1 Abstract of Lease Terms: For purposes of this Lease, the following terms shall have the following meanings:
>
> | | | |
> |---|---|---|
> | 1.1.1 | Landlord: | Innovation Center, LLC |
> | 1.1.2 | Landlord's Address: | P.O. Drawer 2567, Greenville SC 29602-2567 |
> | 1.1.3 | Tenant: | Adamas One Corp. |
> | 1.1.4 | Tenant's Address: | 411 University Ridge, Suite 110, Greenville SC 29601 |
> | 1.1.5 | Building Address: | 411 University Ridge, Greenville SC 29601 |
> | 1.1.6 | Suite Number: | 110 and B18 |
> | 1.1.7 | Rentable Floor Area of Premises: | Approximately 6,475 square feet. |
> | 1.1.8 | Rentable Floor Area of Building: | 56,234 square feet. |
> | 1.1.9 | Lease Term: | Twelve (12) months, as further defined in Section 1.3 below. |
> | 1.1.10 | Base Rent: | $115,000 |
> | 1.1.11 | Rent Commencement Date: | January 1, 2020 |
> | 1.1.12 | Tenant Improvement Allowance: | N/A |
> | 1.1.13 | Initial Rent Deposit: | $115,000 |
> | 1.1.14 | Permitted Use: | Executive, general administrative, light manufacturing and office space purposes. |

To sum up, neither Scio shareholders, nor Scio have a breach of contract claim. The Second Addendum was done for consideration. The specific consideration was payment of Scio's delinquent rent. These types of issues come up in mergers and acquisitions all the time and smart parties make good faith decisions to change their agreement to accommodate one another. The Plaintiff is fabricating a lawsuit out of a failure to educate himself on the terms of the agreements, or worse, intentional blindness to such terms.

### III.   THERE IS NO CLAIM FOR CIVIL CONSPIRACY OR FIDUCIARY BREACH.

To prevail on a breach of fiduciary duty claim, the plaintiff must establish: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages. *Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1162 (D.Nev.2009). The factual predicate for the claim for breach of fiduciary duty and civil conspiracy is the same. The Plaintiff thinks that the reduction of stock consideration by 100,000 shares was done improperly and to the detriment of Scio shareholders. But the Plaintiff concedes a critical point in the timeline of events. The Plaintiff alleged in the SAC ¶ 61, that Scio told its shareholders that "the Board intends to hold [the 900,000 Adamas shares] indefinitely in order to permit the stockholders to benefit from the business going forward". This is corroborated by SEC Form DEF 14A, filed by Scio on May 17, 2019, in an appended letter:

> The proposed transaction is anticipated to produce approximately $4 million in cash for the Company to satisfy outstanding liabilities, including both secured and unsecured debts. In addition, the buyer intends to infuse the business with $5 + million in additional capital and resources to grow the business. And finally, the Company will receive 900,000 shares of the successor entity which the Company intends to hold indefinitely in order to permit the stockholders to benefit from the business going forward. The Company expects that, if ultimately distributed to stockholders, the stock will be in a public traded entity, at some future date.

Scio did not say that shareholders *would be* distributed Adamas stock. Scio said it would hold the stock indefinitely. The Plaintiff alleges, without reference to documentation or facts, that the Adamas stock was distributed to Scio shareholders in September 2019.

For a fiduciary duty to arise between Adamas (and its management) and Scio shareholders, the Scio shareholders would have to become Adamas shareholders. But the Plaintiff cannot and does not affirmatively allege facts that support the notion that the February 2020 Second Addendum, reducing the quantity of Adamas stock deliverable to Scio (not Scio shareholders), was done *after* Scio shareholders received actual physical stock certificates or other evidence of ownership in Adamas. And even if Scio shareholders were distributed Adamas stock, they could not do anything with, because it was unregistered with the SEC and was subject to a transfer restriction under 17 C.F.R. § 230.144 ("Rule 144").

Based upon the allegations pled, particularly the fact that the Scio shareholders were not vested shareholders in Adamas, there was no fiduciary duty to them. The facts pled are that Scio was going to hold the Adamas stock (whether 800,000 or 900,000 shares) and *maybe* distribute the Adamas stock to Scio shareholders. Fiduciary duties are serious undertakings of confidence and trust. They are not and could never be predicated upon "maybe". The undertaking must be certain. It is not pled that it ever happened.

Like a domino, the civil conspiracy claim must also be dismissed, since it is pled as an agreement to commit breach of fiduciary duty. If there was no fiduciary duty to breach, as a matter of law, there could be no agreement to breach such duty. As a procedural matter, a cause of action for civil conspiracy must be pled with particular specificity as to "the manner in which a defendant joined in the conspiracy and how he participated in it." *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D.Nev. 1984).

IV.     **THERE IS NO CLAIM FOR UNJUST ENRICHMENT**

"The essential elements of an unjust enrichment claim are (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit." *Chachas v. City of Ely, Nev.*, 615 F. Supp. 2d 1193, 1208 (D. Nev. 2009) [citations

omitted]. The retention of the benefit must be inequitable. *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). Here, nothing is pled to support a conclusion that the benefits conferred between Scio and Adamas were so disproportionate as to constitute an inequitable, fraudulent or even an unfair exchange of consideration. Adamas paid delinquent rent of Scio and assumed its commercial lease. If anything, Adamas conferred a greater benefit and incurred a larger detriment in the Second Addendum.

Here, the Plaintiff again concedes, "Plaintiff and the other Scio shareholders – have never been told the status or ownership of those shares." Response at 15:18-20. Adamas could not compel Scio to distribute, hold, or light on fire the stock issued to Scio under the Asset Purchase Agreement, as amended. Thus, there is no inequity here to remedy.

## V.     THE COURT LACKS SUBJECT MATTER JURISDICTION

The Plaintiff agrees that the 28 U.S.C. § 1332 diversity analysis in a shareholder derivative case is governed by the interpretation under *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008). "Because a derivative lawsuit brought by a shareholder is 'not his own but the corporation's,' the corporation 'is the real party in interest' and usually properly aligned as a plaintiff.'" *Digimarc, supra*, quoting *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 522-23, 67 S.Ct. 828 (1947). An exception is available when the directors or officers of the corporation are antagonistic to the shareholders. *Smith v. Sperling,* 354 U.S. 91, 95-96 n. 3, 77 S.Ct. 1112 (1957). Antagonism is to be determined from the pleadings and nature of the controversy. *Id.*

In response, the Plaintiff tries to rescue diversity by claiming antagonism exists by reason of the Scio sins of: 1) bilaterally agreeing with Adamas to amend the Asset Purchase Agreement to clear delinquent rent debt of Scio, in exchange for 100,000 fewer shares of Adamas stock; 2) failing to make SEC filings; 3) failing to make Nevada Secretary of State filings; and 3) failing to register the 800,000 shares

of Adamas stock delivered to Scio. Derivatively, the Plaintiff is asking the court to permit the Plaintiff and a class of shareholders to proceed in the stead of Scio's former management. Taking the helm from resigning officers (who went unpaid any compensation for years before their 2019 departures) does not magically create antagonism to put Scio on the side of the Defendants. The transaction on which the Plaintiff premises at least the Plaintiff's claim for breach of contract is the Asset Purchase Agreement with Scio as seller and Adamas as buyer. This reinforces a finding of substantive adversity between Scio and Adamas. How can the Plaintiff sue the buyer, Adamas, on behalf of the seller, Scio, and not claim alignment of Scio against Adamas?

And where is the antagonism between the departed management of Scio and the Plaintiff? At best, the Scio Defendants failed to engage in administrative functions of the corporation on their way out the door. At bottom, the Plaintiff simply does not like the Asset Purchase Agreement. Not liking the deal made by the corporation's management does not make management adverse or antagonistic. The Plaintiff has levelled specious and hyperbolic allegations at the Scio Defendants just to fabricate antagonism, identification of Scio as a nominal defendant, and diversity jurisdiction. But in truth and in fact, the 30,000-foot view of the claims pled puts Scio across the "v." from Adamas, thereby destroying diversity, because a plaintiff and defendant are citizens of Nevada. "When there is no antagonism, the general rule from *Koster* applies, and the corporation should be aligned as a plaintiff." *Motameni v. Adams*, No. 3:21-CV-01184-HZ, 2021 WL 5281035, at *4 (D. Or. Nov. 8, 2021). The court lacks subject matter jurisdiction.

## VI.   DEMAND FUTILITY

Adamas ends where it began. The Plaintiff was a Scio shareholder. That supports the bedrock requirement that the Plaintiff could be a derivative plaintiff. But the pre-suit demand requirement matters. Fed. R. Civ. P. 23.1(b)(3). The Plaintiff's explanation for its derivative claim is stated as this: "Plaintiff sues the

Adamas Defendants derivatively through Scio with respect to Plaintiff's breach of contract, unjust enrichment and civil conspiracy claims. Thus, Plaintiff is derivatively asserting claims against the Adamas Defendants that Scio – if it was a viable entity with an active board that was not involved in the malfeasance committed by the Scio Individual Defendants – would be obligated to consider in light of the alleged civil conspiracy between the Scio Individual Defendants and the Adamas Defendants that harmed Scio, Plaintiff and Scio's other shareholders." Response at 6:2-9.

What action does the Plaintiff—whose status as an individual Adamas shareholder is not established—think that Adamas should take, against whom, and for what cause of action? The quotation above is circular nonsense. Perhaps if the Plaintiff had articulated a pre-suit demand, its pleading and argument could make sense. But it does not. Adamas and the court are left to guess. Litigation is not a guessing game. If the Plaintiff cannot explain what the derivative claim is, it has to be dismissed.

## VII. GRDINA

Last, and probably least, there is nothing pled against Mr. Grdina, the CEO of Adamas. What exactly is his sin in all of this? Nothing is pled against him personally. Nothing is alleged against him individually. There is no contract to which he is a party. There is no duty he has assumed. Rather, Mr.Grdina is joined, for the same reasons Plaintiffs love to join non-liable individual parties—to intimidate them, harass them, scare them, publicize flippant (but inexistent) allegations against them, or other nefarious aims. The Plaintiff here even goes so far as to waste a separate filing arguing that Grdina was served with the complaint, and was the subject of a completely unrelated lawsuit in which service of process was disputed [dkt. 26-2]. Mr. Grdina should be dismissed.

## VIII. CONCLUSION

The Plaintiff has no cognizable legal claims for breach of contract, breach of fiduciary duty, civil conspiracy or unjust enrichment against Adamas and Grdina. There are no derivative claims against Adamas of for Adamas against others. The court lacks subject matter jurisdiction because there is not diversity of citizenship. The SAC should be dismissed.

**DATED** this 21 day of June 2023.

                    **CLARK HILL PLC**

By: /s/ Ryan J. Lorenz
Ryan J. Lorenz
Nicholas Wieczorek
3800 Howard Hughes Parkway, Ste. 500
Las Vegas, NV 89169
Telephone: (480) 684-1100
Facsimile: (480) 684-1167
Telephone: (702) 697-7543
Facsimile: (702) 862-8400
Email: rlorenz@clarkhill.com
      nwieczorek@clarkhill.com
*Attorneys for Defendants Adamas One Corp. and John G. Grdina.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, a copy of the foregoing was served through the court's ECF/CM system to:

Martin A. Muckleroy
MUCKLEROY LUNT, LLC
6077 S. Fort Apache, Ste. 140F
Las Vegas, NV 89148
martin@muckleroylunt.com
*Attorneys for Plaintiff*

James Evangelista
Stuart J. Guber
EVANGELISTA WORLEY, LLC

| | |
|---|---|
| 1 | 500 Sugar Mill Road, Bldg. A, Ste. 245 |
| 2 | Atlanta, GA 30350 |
| | jim@ewlawllc.com |
| 3 | stuart@ewlawllc.com |
| | *Attorneys for Plaintiff* |
| 4 | |
| 5 | Mary Bacon |
| | SPENCER FANE LLP |
| 6 | 300 S. Fourth St., Ste. 950 |
| 7 | Las Vegas, NV 89101 |
| | mbacon@spencerfane.com |
| 8 | *Attorneys for Defendants* |
| | *McPheely, McGuire, Leaverton, and Smoak* |
| 9 | |
| 10 | Amy S. Conners |
| | Brian J. Linnerooth |
| 11 | John A. Sullivan |
| | BEST & FLANAGAN LLP |
| 12 | 60 S. Sixth St., Ste. 2700 |
| 13 | Minneapolis, MN 55402 |
| | aconners@bestlaw.com |
| 14 | blinnerooth@bestlaw.com |
| 15 | johnsullivan@bestlaw.com |
| | *Attorneys for Defendants* |
| 16 | *McPheely, McGuire, Leaverton, and Smoak* |
| 17 | |
| 18 |  /s/ Shonda L. Ordoñez          |